# UNITED STATES DISTRICT COURT

for the

Southern District of Illinois

| | |
|---|---|
| Charles A. Wolfe II | ) Case Number 3:21-cv-01471-SPM |
| _____ | ) _____ |
| _____ | ) *(Clerk's Office will provide)* |
| _____ | ) |
| *Plaintiff(s)/Petitioner(s)* | ) |
| v. | ) ☐ CIVIL RIGHTS COMPLAINT |
| | ) pursuant to 42 U.S.C. §1983 (State Prisoner) |
| Dan Sproul | ) ☐ CIVIL RIGHTS COMPLAINT |
| Elizabeth Harbison | ) pursuant to 28 U.S.C. §1331 (Federal Prisoner) |
| Randall Pass | ) ☐ CIVIL COMPLAINT |
| Josh Richardson | ) pursuant to the Federal Tort Claims Act, 28 U.S.C. |
| Officer Schneider *Defendant(s)/Respondent(s)* | ) §§1346, 2671-2680, or other law |

Officer Huckleberry, Captain Morehead, Officer Lance, Officer Bradley, Jeremy Downen, Officer G. Williams, Lt C. Brooks, E. Keller, Mrs Daun

I.    **JURISDICTION** June 11, 2021 through October 04, 2022, I was at the Federal Prison Camp-USP Marion, P.O. Box 2000, Marion, IL 62959

**Plaintiff:**

A.    Plaintiff's mailing address, register number, and present place of confinement. October 20, 2022 to current:
Charles A. Wolfe II,  41808-044
Federal Medical Center
P.O. Box 15330
Fort Worth, TX 76119

**Defendant #1:**

B.    Defendant __Dan Sproul_____ is employed as
                        (a)    (Name of First Defendant)
            Warden
_____
                        (b)        (Position/Title)
      with __USP Marion and Federal Prison Camp Marion_____
                        (c)        (Employer's Name and Address)

4500 Prison Road, Marion, Il 62959    ; P.O. Box 2000

At the time the claim(s) alleged this complaint arose, was Defendant #1 employed by the state, local, or _federal government?_    ☒ Yes    ☐ No

If your answer is YES, briefly explain:
Warden USP Marion and the Federal Prison Camp Marion

Rev. 10/3/19

**Defendant #2:**

C.   Defendant _Elizabeth Harbison_ is employed as

(Name of Second Defendant)

_Health Services Administrator_
(Position/Title)

with _USP Marion and FPC Marion_
(Employer's Name and Address)

_4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000_

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government?   ☒ Yes   ☐ No

If you answer is YES, briefly explain:
Health Services Administrator - USP & FPC Marion, IL

**Additional Defendant(s) (if any):**

D.   Using the outline set forth above, identify any additional Defendant(s).

#3- Defendant:   Randall Pass   is employed as

Acting Clinical Director

with   USP and FPC Marion

4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000

At the time the claim(s) alleged in this complaint arose, Defendant #3 was employed by the federal government. YES

Randall Pass was the Clinical Director USP & FPC Marion

**Defendant #4:**

E.   Defendant   Josh Richardson   is employed as a

Family Nurse Practitioner  /  Healthcare provider

with USP and FPC Marion

Rev. 10/3/19

2

4500 Prison Road, Marion, IL 62959  ;  P.O. Box 2000

At the time the claim(s) alleged in this complaint arose, Defendant #4 was employed by the federal government. YES

FNP Josh Richardson is a Healthcare provider / mid-level practitioner with USP and FPC Marion, IL

Defendant #5:

F.    Defendant    Officer Schneider    is employed as a

Special Investigative Services Officer

with USP Marion and FPC Marion

4500 Prison Road, Marion, Il 62959 ;  P.O. Box 2000

At the time the claim(s) alleged in this complaint arose,

Defendant #5 was employed by the federal government. YES

Officer Schneider was a Special Services Investigator with

USP and FPC Marion,  IL

Defendant #6:

G.    Defendant    Officer Huckleberry    is employed as a

Special Investigative Services Officer

with USP and FPC Marion, IL

4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000

At the time the claim(s) alleged in this complaint arose,

Defendant #6 was employed by the federal government. YES

Officer Huckleberry was a Special Services Investigator

with USP and FPC Marion, IL

Defendant #7:

H.    Defendant    Captain Morehead    is employed as a
         Captain  with USP and FPC Marion, IL

4500 Prison Road, Marion, IL 62959 ;  P.O. Box 2000

At the time the claim(s) alleged in this complaint arose,

Defendant #7 was employed by the federal government. YES

3

Captain Morehead was a Captain and in charge of transporting patients at the USP and FPC Marion, IL

Defendant #8:

I.  Defendant  Officer Lance is employed as lead supervisor at the Food Service facility at FPC Marion, IL

4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000

At the time the claim(s) alleged in this complaint arose, Defendant #8 was employed by the federal government. YES

Officer Lance was lead staff supervisor at FPC Marion, IL

Defendant #9:

J.  Defendant  Officer Bradley   is employed as a supervisor at the Food Service facility at FPC Marion, IL

4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000

At the time the claim(s) alleged in this complaint arose, Defendant #9 was employed by the federal government. YES

Officer Bradley was a staff Food Service supervisor at FPC Marion, IL

Defendant #10:

K.  Defendant  Jeremy Downen is employed as an Education supervisor and GED teacher at the Federal Prison Camp Marion, IL

4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000

At the time the claim(s) alleged in this complaint arose, Defendant #10 was employed by the federal government. YES

Jeremy Downen was the Education supervisor at FPC Marion, IL

Defendant #11:

L.  Defendant  Officer G. Williams is employed as the Federal Prison Camp daytime Unit Officer - Marion, IL

4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000

4

At the time the claim(s) alleged in this complaint arose, Defendant #11 was employed by the federal government. YES

Officer G. Williams was the FPC daytime Unit Officer, Marion

Defendant #12:

M.   Defendant Lt C. Brooks  is employed as the Special Housing Unit Lieutenant at USP Marion, IL

4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000

At the time the claim(s) alleged in this complaint arose, Defendant #12 was employed by the federal government. YES

Lt C. Brooks was the Special Housing Unit Lieutenant, Marion, IL

Defendant #13:

N.   Defendant  E. Keller is employed as the Disciplinary Hearing Officer at the North Central Region Bureau of Prisons

400 State Ave 8th Floor, Gateway Complex Tower II,  Kansas City, KS 66101-2492

At the time the claim(s) alleged in this complaint arose, Defendant #13 was employed by the federal government.  YES

E. Keller was the Disciplinary Hearing Presiding Official for the USP & FPC Marion, IL

Defendant # 14:

O.   Defendant  Mrs Daun is employed as the Case Management Coordinator With USP and FPC Marion, IL

4500 Prison Road , Marion, IL 62959 ; P.O. Box 2000

At the time the claim(s) alleged in this complaint arose, Defendant #14 was employed by the federal government. YES

Mrs Daun was the Case Manager Coordinator(CMC), USP Marion, IL

## II.   PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?   ☐Yes ☒No

B.   If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline. **List ALL lawsuits in any jurisdiction and indicate the court where they were filed to the best of your ability**, including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)). FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

1.   Parties to previous lawsuits:
Plaintiff(s):


Defendant(s):


2.   Court (if federal court, name of the district; if state court, name of the county):

3.   Docket number:

4.   Name of Judge to whom case was assigned:

5.   Type of case (for example: Was it a habeas corpus or civil rights action?):

6.   Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?):

7.    Approximate date of filing lawsuit:

8.    Approximate date of disposition:

9.    Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?"

III.   **GRIEVANCE PROCEDURE**

A.    Is there a prisoner grievance procedure in the institution?  ☒ Yes    ☐ No

B.    Did you present the facts relating to your complaint in the prisoner grievance procedure?                                    ☒ Yes    ☐ No

C.    If your answer is YES,
      1.    What steps did you take?   When available, I utilized the Marion's Administrative Remedy Program in good faith with do diligence

      2.    What was the result?   VARIED. The majority of the good faith attempts were either unanswered or otherwise unsuccessful

D.    If your answer is NO, explain why not.

E.    If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?                      ☐ Yes    ☐ No

F.    If your answer is YES,
      1.    What steps did you take?

Rev. 10/3/19                                    7

2.      What was the result?

G.      If your answer is NO, explain why not.

H.      Attach copies of your request for an administrative remedy and any response you received.  If you cannot do so, explain why not:

On August 10, 2022, the substantial majority of my Administrative Remedy filings were confiscated in a retaliatory action designed to impede and limit this Civil Rights Action and to deny access to the courts in all other pending matters.

When available a conservative total of 40 grievances were pursued over an 18 month period. These included Marion's Health Services; retaliation; and the conditions of confinement.

Marion's Administrative Remedy procedure does not adhere to the Purpose and Scope of the FBOP Admin Remedy Program, P1330.18, and was challenged and exhausted in a detailed Administrative Remedy filing. Access to Marion's grievance process limits inmates to one outstanding complaint at a time, delaying the ability to seek Formal Admin Remedy. Marion frequently fails to respond timely, offers extraneous responses, rejects submission without proper cause and sometimes refuses to respond alltogether in an effort to stifle or deter inmates, making the Admin Remedy process unavailable. However, I improvised, was resourceful and undeterred in the filing of numerous attempts that apply to the claims raised in this action.

Rev. 10/3/19                                     8

## IV.   STATEMENT OF CLAIM

A.   State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated. Do not include legal arguments or citations. If you wish to present legal arguments or citations, file a separate memorandum of law. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

CLAIM ONE:   June 11, 2021 through October 04, 2022, by Dan Sproul and Marion's Health Services Team (Elizabeth Harbison, Randall Pass and Josh Richardson.

Deliberate Indifference to their patient's Medically Necessary Healthcare and numerous medical complexities contravenes with the Eighth Amendment.

A) Marion Health Services gross negligence and deliberate indifference was raised in countless verbal and electronic "requests to staff" and in numerous good faith Administrative Remedy(grievances) attempts to be provided acknowledged Medically Necessary Healthcare. Marion's Health Services Team's reckless control and callous disregard for their patient's frequent, sometimes unbearable acute pains, chronic care Medically Necessary Healthcare and numerous medical complexities was cruel and unusual punishment, violating their patient's Eighth Amendment Rights. Elementary principles of the cruel and unusual punishment clause establish the BOP's obligation to provide Medically Necessary Healthcare.

1) On June 11, 2021, FNP Josh Richardson acknowledged Medically Necessary Healthcare, diagnoses, tests, treatments and surgical procedures that were overdue, but advised due to staff shortages and financial constraints the Medically Necessary Healthcare would be provided when time and resources permitted.

2) On June 23, 2021, Dr. Pass acknowledged the Medically Necessary Healthcare issues were issues way before my arrival and that the Medical Care would be provided when time and resources permit.

3) June 11, 2021 to June 25, 2021, Marion's Health Services Team and Warden Sproul refused to provide chronic care colostomy pouches and refused to authorize my family member to provide the daily,24/7 use, necessary chronic care colostomy medical supplies.

4) Warden Dan Sproul and HSA Elizabeth Harbison continually wrote that care would be provided when time and resources permit.

Rev. 10/3/19

9

B) Warden Dan Sproul, HSA Harbison, CD Pass and FNP Richardson's refusals to place a Medical Hold on their chronic care patient with surgical procedures, tests, treatments and follow-up consults was deliberate indifference and retaliation for good faith attempts to receive Medically Necessary Healthcare and the pursuit of a Civil Rights Action Claim, resulting in an involuntary transfer on October 04, 2022. Marion's transfer referral left several Medically Necessary Healthcare issues unresolved. These actions violated First and Eighth Amendment Rights.

REQUEST FOR RELIEF

I am seeking $3,500,000 in damages for Marion's violations of my First and Eighth Amendment Rights, cruel and unusual punishment, refusals to conform to concepts of dignity, civilized standards of care, humanity and decency and for the frequent, sometimes unbearable pain and sufferings.

MEDICAL BACKGROUND HISTORY

From 2012 - 2016: I received extensive interventional therapy at Barnes-Jewish-Children's (BJC) Hospital for Stage IV-B metastatic Colorectal Cancer that involved my local lymph nodes, liver and both lungs.

A) This included four years of chemotherapy, 30 radiation treatments, clinical trials, multiple surgeries, including the resection of the lower 18" of my colon and rectum resulting in a permanent colostomy.

B) Medically Necessary Healthcare with timely diagnoses, tests, and treatment courses remain critical to my survival and long-term health maintenance.

C) Other documented Healthcare needs include:

 1) Gastrointestinal: Acute abdominal pains since February 28, 2020, abdominal hernia mesh failure, umbilical hernia, a parastomal herniation into the ostomy site causing periodic severe constipation and collapsed small bowel.

 2) Urology and Nephrology: Acute Urological pains, radiation induced stricture in the right-sided ureter, hydronephrosis, caliecstasis, renal insufficiencies, Stage 3 kidney disease and bladder abnormalities.

 3) Chronic sinusitis: Acute ear pains, frequent middle ear infections, faulty eustachian tubes, vertigo and equilibrium losses, opacification of the mastoid process, multiple well circumscribed cysts in the right maxillary, all causing increased hearing losses.

 4) Orthopedic: Acute chronic pain right knee, 2014 right knee meniscus surgery, unstable joint, joint space narrowing, multi-level spine disease-lumbosacral and thoracolumbar disc disorders.

 5) Immunocompromised: Frequent staphylococcus and severe cellulitis, fungal infections.

10

6) Neuropathy: Acute Nerve pains lower legs and feet associated to chemotherapy and Diabetes, diminished blood flow

7) Diabetes Mellitus

8) Iron Deficiency Anemia

9) Left Anterior Descending Coronary Artery Disease

10) Thyroid Stimulating Hormone and T4 insufficiencies

CLAIM TWO:June 11, 2021 to August 09 , 2022, by Warden Dan Sproul

Conditions of Confinement: A) 06/11/21 - 06/28/21

A) Heat index exceeded 100° without minimum ventilation rates, locked behind a door without duress/panic buttons, without an officer stationed on the floor/range, without consistent supervision, with two people placed in a 7' x 9' cell that is architecturally designed for one(with one bed), with one person forced to live on the floor next to the integrated commode/sink, impeding a chronic care patient's access to the facilities.

B)June 28, 2021 - August 09, 2022: The long-time, well chronicled, porous roof that jeopardizes health, safety and security affecting the entirety of the living and sleeping quarters.

C) June 28, 2021 - August 09, 2022: Forced to live with raccoons,skunks, bobcats and undomesticated felines that are allowed to roam the walkways, recreation areas, living quarters and food service area, completely unchecked.

Both (B) & (C) jeopardize the Health, Safety and Security of inmates, staff and all others that visit Marion's Federal Prison Camp.

(A), (B) & (C) all were cruel and unusual punishment and violated the Eighth Amendment.

I am seeking $75,000 for the cruel and unusual punishment violating my Eighth Amendment Rights.

CLAIM THREE: November 04, 2021 through November 24, 2021

Warden Sproul, HSA Harbison, CD Pass, FNP Richardson & Lt. Hendricksen: Orchestrated by Marion's Health Services Team and executed by Warden Sproul and Lt. Hendricksen; An undocumented, unwarranted, 20-day placement in the "hole" in retaliation for:

A) Exercising my First Amendment rights to receive Medically Necessary Healthcare.

B) The utilization of the Federal Bureau of Prisons(FBOP) Administrative Remedy Program - 1330.18

C) Filing two BP-A0291 applications (08/12/21 & 09/19/21) for an inmate Furlough to receive Medical Emergency(FURL MED E) Healthcare.

This undocumented, unwarranted action accelerated documented acute pains & exacerbated acknowledged chronic care medical complexities. The conditions of confinement and the

11

facilities were not conducive for providing self-care and was cruel and unusual punishment violating my Eighth Amendment Rights.

I am seeking $75,000 in damages for the physical, mental and emotional harm that violated my constitutional rights.

CLAIM FOUR:  Officer Schneider and Officer Huckleberry:

A) The entirety of my Inmate contacts were purged precludingthe ability to communicate with family, friends, attorneys and all others by telephone, electronic messaging or mail for weeks. SIS refused to approve any contacts for weeks, although requested by myself and Correctional Counselor J. Jarrett, preventing communications with my wife, family members and all others. This was clear retaliation and not the normal process. A thorough investigation concluded this action was executed at the Federal Prison Camp-Marion, IL, on only this inmate. This was cruel and unusual punishment and free speech retaliatory action. The action inflicted emotional and mental harm on my family and friends, violating my Eighth Amendment and First Amendment Rights.

B) On 03/16/22 until current: SIS blocked communication with Senator Tammy Duckworth, IL, in an attempt to stifle the ability to expose Marion's refusals to adhere to the First Step Act statutory language and Congressional Intent related to implementation of FTC(Time Credits), CARES Act and exposing Marion's deliberate indifference to provide Medically Necessary Healthcare. This was Free Speech retaliatory action violating my First Amendment Rights.

I am seeking $50,000 in damages for violation of my Constitutional Rights.

CLAIM FIVE:  Warden Sproul and Captain Morehead:

A) June 13, 2022: For pre-meditated retaliatory action placing a Camper with chronic care medical complexities in ankle, belly and hand restraints, with a martin box, causing increased pain and suffering, additional damage to a compromised knee, exacerbating an acknowledged Gastrointestinal medical issue. This is NOT protocol for an OUT CUSTODY Camper, was not utilized in any other prior medical escorted trips and was never done to another camper during this patient's 16 monthstay at FPC Marion. This cruel and unusual retaliation violated the Eighth Amendment and jeopardized safety and security causing physical harm.

B) August 02 and August 03, 2022; Warden Sproul and Captain Morehead; Retaliation: Improper Use of the "Hole"; at 1400hrs, 08/02/22, I was placed in the hole for a next day afternoon medical procedure at the local hospital. The next day I was placed in full restraints for transport. Placing an OUT CUSTODY Camper, with a minimum/minimum recidivism FSA risk and Custody Classification is not protocol. This retaliatory process exacerbated known chronic care medical complexities. This retaliation was

12

cruel and unusual punishment violating my Eighth Amendment Rights.

I am seeking $50,000 in damages for violating my Constitutional Rights.

CLAIM SIX: August 09, 2022; Officer Lance, Officer Bradley and Jeremy Downen and Warden Sproul:  A collaborative retaliatory action, fabricating or planting a cell phone that was orchestrated and designed to justify a transfer, by hook or by crook, by any means necessary, prompted by exercising my First Amendment Rights by filing numerous good faith Administrative Remedy grievances and the pursuit of a Civil Rights Action Claim. This caused physical, mental and emotional harm and violated my First and Eighth Amendment Constitutional Rights.

I am seeking $150,000 in damages.

CLAIM SEVEN: August 10, 2022 by Unit Officer G. Williams, Officer Schneider and Officer Huckleberry.

OBSTRUCTION OF JUSTICE and denying access to the courts. On August 10, 2022, with malice of forethought, Officers Williams, Schneider and Huckleberry confiscated my legal property to deny my access to the courts. This was a targeted retaliatory action that was specifically intended to prevent pursuit of my Civil Rights Action Claim and all other legal efforts. All parties are individually and collectively liable for violating my Constitutional Rights.

I am seeking $400,000 in damages.

CLAIM EIGHT: September 22, 2022 and October 04, 2022; Warden Sproul & Mrs Daun, Case Management Coordinator intentionally referred a transfer to the FTC-OKC work cadre program in Oklahoma City, OK, over 500 miles from my home in retaliation. After the Air Marshals denied the custody transfer at Mid-America Airport due to unstable, chronic care medical complexities, I was returned to Marion, IL the same day, 09/22/22. On 10/04/22 a second referral and second transfer to the FTC-OKC cadre program transpired. This was continued Retaliation, filing succesive documentation referrals, designating and elderly chronic care patient to the FTC-OKC work cadre program over 500 miles from home, knowing the Air Marshals advised the transfer was not aligned with my medical history. These referrals were promulgated to cause emotional, mental and physical harm. After the 09/22/22 Air Marshal Custody transfer non-acceptance, Warden Sproul and CMC Daun were deliberately indifferent as they knew that facility was unable to provide for their patient's chronic care Medically Necessary Healthcare and did not adhere to the statutory language or Congressional Intent of the 500 drive miles from home outlined in the First Step Act.

I am seeking $150,000 in damages and compensation for violating my Constitutional Rights.

CLAIM NINE: August 09, 2022 to current; Lt. C. Brooks- SHU Lieutenant.

13

Lieutenant Brooks took custody of my property and obtained a written report that I completed with the assistance of his underling staff members. The property consisted of my gray mesh gym bag, legal portfolio containg invaluable, irreplaceable research and documents, 4-1.00 stamps, 12-.60 Forever stamps, 16 - .24 Forever-extra ounce stamps and 12-.03 stamps, Thesaurus, ID Card holder with a new $5.85 copy card, gray cotton shorts, gray long sleeve 2X shirt and my personal Offloader knee brace. On 11/18/22 & 12/19/22 I received my knee brace,but all other listed items were not included. This property was sent UPS directly from USP Marion to FMC Fort Worth. This was retaliation designed to deny access to the courts, impede the pursuit of my Civil Rights Action and cause additional harm, violating my Eighth Amendment Rights.

I am seeking $50,000 in damages.

CLAIM TEN: August 24, 2022 by E. Keller, Disciplinary Hearing Official: My Fifth and Fourteenth Amendment substantive and procedural Due Process of Law Constitutional Rights were violated.

DHO Keller refused: continuance requests; to call requested staff witnesses to corroborative facts; to allow the presentation of my complete defense including factual supporting eveidence; failed to conduct forensics or a complete investigation; Deprivation of a Liberty Interest-Good Time Credit and FSA Time Credits. DHO Keller intentionally delayed the DHO report for 60 days, well beyond the 10 day normal time frame and failed to document the continuance requests or protests.

These Constitutional Rights violations violated my First and Eighth Amendment Constitutional Rights causing cruel and unusual punishment, physical, emotional, and mental harm.

I am seeking $250,000 in damages for the harm and violations of my Constitutional Rights.

14

## V.    REQUEST FOR RELIEF

State exactly what you want this court to do for you.  If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255.  Copies of these forms are available from the clerk's office.

| | | Summary | |
|---|---|---|---|
| CLAIM ONE: | $3,500,000 | CLAIM TEN: | $250,000 |
| CLAIM TWO: | $75,000 | | |
| CLAIM THREE: | $75,000 | | |
| CLAIM FOUR: | $50,000 | | |
| CLAIM FIVE: | $50,000 | | |
| CLAIM SIX: | $150,000 | | |
| CLAIM SEVEN: | $400,000 | | |
| CLAIM EIGHT: | $150,000 | | |
| CLAIM NINE: | $50,000 | | |

## VI.    JURY DEMAND (check one box below)

The plaintiff ☒ does  ☐ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with  Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on:   JANUARY 12, 2023
_____
(date)

_Charles Wolfe II_
_____
Signature of Plaintiff

3150 Horton Road
_____
Street Address

Charles A. Wolfe II
_____
Printed Name

Fort Worth, TX 76119
_____
City, State, Zip

41808-044
_____
Prisoner Register Number

_____
Signature of Attorney (if any)

Rev. 10/3/19                    15

## CERTIFICATE OF COMPLIANCE

I, Charles A. Wolfe II, certify that a true and correct copy is mailed this 12th day of January, 2023, utilizing Fort Worth's institutional legal mail system and Certified Mail-Receipt: 7020 3160 0001 1693 3242, with postage and fees prepaid and properly addressed.

Respectfully submitted this 12 th day of January 2023.

Charles A. Wolfe II
41808-044
Federal Medical Center
P.O.Box 15330
Fort Worth, TX 76119

16

U.S. Department of Justice

Federal Bureau of Prisons

REMEDY ID# UNKNOWN

Regional Administrative Remedy Appeal

B. Morris
12/14/??

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: Wolfe II, Charles A.    41808-044    San Antonio    FMC Fort Worth
　　　LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A—REASON FOR APPEAL This Regional Appeal is proper pursuant to P1330.18§542.18, If the IM does not receive a response within the time allotted for reply, including extension, the IM may consider the absence a denial... This Regional Appeal is focused on Marion H.S.' deliberate indifference in their refusals to place a MEDICAL HOLD on their chronic care patient with multiple chronic care tests, treatments and surgeries that were pending.
1) On 06/13/22, Dr Sara Holden, Barnes/Wash U. recommended a minimally invasive, possibly open, parastomal hernia repair with mesh and excision of the previous mesh failure. The 06/29/22-Admin Notes list as ROUTINE with Sched Target Date 08/31/22. ROUTINE conflicts with minimally invasive, possible open.
2) On 06/22/22, Mercy Urological requested a CT scan and labs, STAT, with a follow-up in 2 weeks. Ten weeks later, on 08/30/22, the follow-up transpired and the past due surgical procedure was scheduled for 3 weeks.
3) On 08/03/22, after a partial procedure only was approved by Marion, Dr Rosenblum requested a follow-up and another surgical procedure for the right-side.
4) On 08/05/22, Dr Pass scheduled an Orthopedic consult with Dr Koth for an MRI and surgical evaluation. On 09/20/22, Dr Pass canceled all tests, treatments and surgeries. The ortho consult was scheduled for 08/15/22-in house. HOWEVER, due to Marion Health Services deliberate indifference, I was transferred on 10/04/22 without the above Medically Necessary Healthcare.
So, I am requesting Warden Sproul, Dr Pass, HSA Harbison and FNP Richardson, be counseled for their reckless control and deliberate indifference in their refusals to place a MEDICAL HOLD on their chronic care patient.

DECEMBER 19, 2022    RESPECTFULLY,    Charles Wolfe II
　　　　　　　　　　　　　　　　　　　　SIGNATURE OF REQUESTER

Part B—RESPONSE

Exhibit: Claim ONE (B) -1

---

_____    _____
DATE    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _____

Part C—RECEIPT

CASE NUMBER: _____

Return to: _____
　　　　　　LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____    _____    BP-230(13)
USP LVN    DATE    SIGNATURE RECIPIENT OF REGIONAL APPEAL    APRIL 1982

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Wolfe II, Charles A.     41808-044     G/San Antonio     FMC Fort Worth
      LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

Part A- INMATE REQUEST This Admin Remedy is focused on Marion H.S. deliberate indifference and their refusals to place a MEDICAL HOLD on their chronic care patient with multiple chronic care tests, treatments and surgeries, that were issues way before my arrival at Marion.
1) On 06/13/22, Dr Sara Holden, Barnes/Wash U. recommended a minimally invasive, possibly open, parastomal hernia repair with mesh and excision of the previous mesh failure. The 06/29/22-Admin Notes list as ROUTINE with sched Target Date 08/31/22. ROUTINE conflicts with minimally invasive, possible open. 2) On 08/03/22, after a partial procedure only was approved by Marion, Dr. Rosenblum requested a follow-up and another surgical procedure on the right-side. 3) On 06/22/22, Mercy Urological requested a CT scan and labs, STAT, and a follow-up within 2 weeks. Ten weeks later, on 08/30/22 the follow-up transpired and a surgical procedure was scheduled a few weeks ahead. On 09/06/22-Clin Notes confirm the past due procedure was scheduled for 09/20/22. 4) On 08/05/22, CD Pass scheduled an Orthopedic consult with Dr. Koth for an MRI and surgical evaluation. On 09/20/22, CD Pass canceled all tests, treatments and surgeries. Ortho consult was 08/15/22, but on 10/04/22, I was transferred to FTC-OKC, without any of the above medical care.
I am requesting Marion H.S. Admin Team be counseled on their reckless control and deliberate indifference in their refusals to place a MEDICAL HOLD on their chronic care patient.

‾ 11/03/22 ‾       Respectfully,        Charles Wolfe II ‾
     DATE                                          SIGNATURE OF REQUESTER

Part B- RESPONSE

Exhibit: CLAIM ONE (B) - 2

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
     DATE                                            WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                        CASE NUMBER: _____

                                               CASE NUMBER: _____

Part C- RECEIPT

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
    DATE                                       RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

SENSITIVE

DUPLICATE

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: Wolfe II, Charles A. | 41808-044 | Z03-213 | FPC MARION |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST:** This Administrative Remedy is filed as SENSITIVE due to a half dozen prior documented retaliatory actions, and more significantly, the current retaliatory action that is the centralized focus of the complaint herein.

On 08/15/22, 34 days ago, a UDC report was filed. Multiple requests to my team and other staff members to receive a copy of this report, have failed to date. This CANNOT be construed as a rebuke of my counselor as he recently endured a surgical procedure and has always been a consummate professional. On 08/24/22, 25 days ago, after refusals for a continuance and under my objections, a partial one-sided DHO transpired. Multiple requests to receive the Report have failed.

These intentional delays impede my ability to file a Regional Appeal. Staff advised I would have to obtain after my transfer. On 09/13/22 a note was mailed to NC Regional Director Andre Matevousian informing him of Marion's efforts to stifle the availabilty of the Appeal process.

It is with great hope the Regional Director will direct Marion to release and provide the UDC and DHO reports that are limiting my ability to seek review and reversals of all associated consequences of this fabricated or planted alleged cell phone.

SEPTEMBER 18, 2022      ;    RESPECTFULLY,              *Charles Wolfe II*

DATE                                                                 SIGNATURE OF REQUESTER

**Part B- RESPONSE**

Exhibit : CLAIM TEN - 1

| DATE | WARDEN OR REGIONAL DIRECTOR |
|---|---|

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                                   CASE NUMBER: _____

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

DATE                                        RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR         PRINTED ON RECYCLED PAPER

BP-229(13)
APRIL 1982

U.S. Department of Justice

Federal Bureau of Prisons

*X. Carre 1-1-23* RE: 114281

**Central Office Administrative Remedy Appeal**

PAGE 1 of 2

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: **Wolfe II, Charles A.**       **41808-044**       **San Antonio**       **FMC Fort Worth**
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A—REASON FOR APPEAL** This Central Office Appeal is properly filed as the Central Office retains jurisdiction over the entire FROP. Following directions from my FPC Marion Unit Team and the DHO presiding official from the NC Regional Office in K.C., KS, my Regional Appeal was filed on 11/08/22 to the NC Regional Office following a lengthy, 58 day delay in receiving the attached DHO Report on 10/21/22. On 12/29/22, 1500hrs, 51 days after filing, the Regional Appeal was returned citing the NC Regional Office lacked jurisdiction, although the false allegation transpired at FPC Marion, IL and DHO E. Keller works within the NC Regional Office.

This Central Office Appeal is centered on the false allegation of a cell phone, Incident Report #3660689, FPC Marion. If I were allowed to present my Defense, it would have displayed clear and convincing evidence with corroborative facts to reveal the factual truths of my actual innocence.

My Fifth and Fourteenth Amendment substantive and procedural Due Process of Law Constitutional Rights were violated. The DHO process was conducted in the SHU Lt's (Brooks) office over a voice only speaker phone, with the DHO in K.C., KS. After introductions, I requested a continuance for the staff witnesses to corroborative facts contained in my defense, to be present, as previously requested. I informed the DHO presiding official that I requested Camp Counselor Jarrett, CM Polley, Lt Johns and Chaplains Holem or Harmon to be present. She asked Lt Brooks if they were available, but then said, "unless they can tell me how a phone got in your locker", their presence is inconsequential to her determination. I repeated my request for a continuance, but was denied. Therefore, I stated that I objected and would begin my Defense under protest! The DHO said, "Noted", but did not include the continuance requests or protest anywhere in the Report received 10/21/22, 2 months after the hearing. I mailed a SENSITIVE BP-9 to the NC Regional Office on 09/05/22, requesting the DHO Report, so that I could file the appeal I had already prepared. I made numerous requests verbally and written to Marion staff to receive the DHO Report, all without success. My FIRST sentence began with the factual truth that "I did NOT and have NOT had a cell phone at any point during my incarceration, including AUG 9th, the alleged date". EVERYONE IS ENTITLED TO HIS OWN OPINION, BUT NOT HIS OWN FACTS! by THE HONORABLE DANIEL PATRICK MOYNIHAN

DATE JANUARY 04, 2023      RESPECTFULLY,      *Charles Wolfe II*      SIGNATURE OF REQUESTER

---

**Part B—RESPONSE**

<br><br><br>

DATE                         GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE           CASE NUMBER: _____

---

**Part C—RECEIPT**                 CASE NUMBER: _____

Return to: _____
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

DATE             SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL      BP-231(13)
                                                APRIL 1982

USP LVN

However, after my first 5 words the DHO Official stopped me advising she was not fully prepared and would have to manually write down my words. I again requested a continuance for her to be better equipped and for me to write my defense in a cognizable format that could be forwarded electronically to assist. The DHO Official again denied the continuance. After continuing the DHO presiding official stopped me again advising she may have to start typing my defense as it was untenable to keep up manually writing. I advised I had 3 1/2 pages of notes for my defense and again requested a continuance, but was denied. The DHO Official said, "Unless you can provide someone that visualized the cell phone being placed in your locker, nothing else matters." My Defense included a request for an FBI-Internal Affairs and/or an Attorney General-Office of the Inspector General, forensics investigation, to include finger prints, phone usage and contact tracing, as well as payment and phone activation tracing. Zero numbers would have matched mine, as I have never possessed a cell phone at any point during my incarceration.

When the Deprivation of Good Time, a Liberty Interest, is at risk, an inmate should be presumed innocent and allowed to present a defense, with a complete investigation conducted before being found guilty. However, the DHO Official stated, unless someone visualized the alleged phone being placed, she was going to find me guilty without a complete investigation, advising I would have to file an appeal to the Regional Office. This DHO Official was desensitized to the factual truth that I did not and have not had a cell phone at any point during my incarceration.

After 08/24/22, I recognized that Camp Unit Officer Williams had at least two major conflicts of interest whereby he should have recused himself from my staff representative. (SEE Exhibits ONE, A & B; TWO, A & B). These conflicts of interest were compensable, substantive and procedural Due Process Of Law Constitutional Rights violations.

When retaliatory actions are allowed to stand, staff is emboldened to take further actions.
PROVERBS 29:12 - If rulers listen to lying words, their servants/officials all become wicked.

Those charged with ensuring safety and security frequently go unchecked and unchallenged. They are willfully allowed to perpetrate retaliatory actions under the color of law, without fear of apprisal. Inmates should be free and clear from retaliation from those assigned to protect safety and security. Staff that participate in detrimental conduct towards inmates are encouraged by the tolerance and lack of enforcement under the color of law.

The DHO presiding official was overtly desensitized to staff's retaliatory actions and any possibilty an IM was truthful. As evidenced within this appeal, I did Not and have NOT had a cell phone at any point during my incarceration including August 09, 2022, the alleged date.

When the Deprivation of Good Time is at risk, an inmate should be presumed innocent and allowed to present a defense, with a complete investigation conducted before being found guilty. If my Defense was presented and the associated investigations were conducted, clear and convincing evidence would have overwhelmingly displayed my actual innocence.

As a critical component of my Defense I stated, "This was retaliatory action for my good faith efforts to receive Medically Necessary Healthcare, my extensive utilization of the FBOP Admin Remedy Program and my filing of the Civil Rights Action Claim against Marion staff that began 11/16/21, with the initial PLRA installment of $68.91 debited to my inmate account on December 20, 2021.

BACKGROUND: I am 61 1/2 years old and a Stage IV-B metastatic colorectal cancer survivor, with a permanent colostomy and numerous medical complexities. So, I look at the fragility and sanctity of life through a different lens. I hold myself and others to higher standards than to violate prohibited acts. My wife and I have been together for 33 years. We have two daughters and four grandchildren. I would not and did not create additional hardships for my family by violating prohibited acts. As an inmate who has studied the law for the last four years, counseled and guided other inmates to refrain from "baby games", it is widely known of the penalties for an inmate and additional hardships for their families, for a violation of a prohibited act.

100% of my daily activities were consistent with not having or using a cell phone. Counselor Jarrett assisted in several unmonitored legal calls to my attorneys and the courts that would not have been necessary if I had a cell phone. Unit Secretary Fields assisted in checking the USPS website for postal rates and called the courts on my behalf that would not have been requested if I had a cell phone. Known as the Camp's legal scholar, I respect authority and the law too much to violate rules or prohibited acts.

If I were allowed to present my defense to the DHO presiding official it would have included Exhibit DEFENSE A & B. On a daily basis I assisted others with typing, legal direction and counseling, which is why Dr. Bobby Rouse Sr, PhD Psychology(84 years old) was supportive in offering his knowledge that I did not and would not possess a cell phone. Almost everyone was aware I had been a target prior and expected future retaliations. James Moore's letter of support was requested because he lived in the same cubicle for 6 months and would have visual and audio knowledge if I had a phone. I have known Michael Lentsch since 2010 in the private business sector and had discussions disavowing the use or possession of cell phones, which are the reasons he felt comfortable writing the letter of support. Most of the campers that possess cell phones participate in social media platforms or payment apps. I have never participated in social media platforms or cash payment apps. Investigations will confirm this truth.

I am requesting the full investigation be conducted and that the code violation, associated penalties and sanctions be removed or reversed.

U.S. Department of Justice

Federal Bureau of Prisons

B. Hayes 12/14/2022

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

| From: | Wolfe II, Charles A. | 41808-044 | San Antonio | FMC Fort Worth |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL:** This Regional Appeal is proper pursuant to P1330.18 § 542.18. If the IM does not receive a response within the time allotted for reply, including extension, the IM may consider the absence a denial at that level. This Regional Appeal is focused on ~~the deliberate indifference in their conduct~~ the OBSTRUCTION OF JUSTICE perpetrated by Camp Unit Officer G. Williams and SIS Officers Schneider & Huckleberry on 08/10/22.

Between 1500-1530 hrs, Williams, Schneider & Huckleberry, directed all inmates to clear out the North End of the TV, Hobbycraft, Truline and designated Modified Law Library areas in preparation for their covert operation. After they thought all witnesses were removed, all 3 entered the designated Modified Law Library with malice of forethought, accessing my secured legal locker, removing 3 well organized Accordion LEGAL Files, that were well marked and easily identifiable as critical components of my 4 years of legal documents pertaining to my 3 active cases. Officer Williams was keenly aware of the specific location and critical nature of this legal property as during routine walk throughs he had accessed in my presence. This was targeted action with the specific intent, designed to prevent my access to the Courts, prevent my pursuit of the Civil Rights Action Claim and retaliation for the good faith utilization of the FBOP Admin Remedy Program. Unbeknownst to the 3 perpetrators initially, food service workers were in the dining facility in clear sight of the table used for this action. After Williams recognized the workers were watching, he waved them out of the windows, but the covert action was already exposed. During Schneider & Huckleberry's rummaging through my legal property, CM Rushing entered the area. Shortly, another inmate entered the side door by the loading dock and witnessed Schneider & Huckleberry rifling through my legal property as Williams and Rushing stood by watching. After completion of their nefarious activities, my legal property was placed in trash bags and hauled away by the SIS Officers in their Government truck. Weeks later, my Unit Team advised that SIS disposed of this legal property.

Over the last 4 years, in excess of 4000 hrs were constructively utilized on legal research in accumulating the contents of this confiscated legal property. These documents were invaluable and either costly to re-create or otherwise irreplaceable.

I am requesting that Williams, Schneider & Huckleberry be advised they are individually and collectively liable for violating my Constitutional Rights and will be held responsible until all of the confiscated legal property is returned.

| DECEMBER 19, 2022 | RESPECTFULLY, | Charles Wolfe II |
|---|---|---|
| DATE | | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**

Exhibit ONE A

| DATE | REGIONAL DIRECTOR |
|---|---|

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____  _____  _____  _____

LAST NAME, FIRST, MIDDLE INITIAL            REG. NO.      UNIT         INSTITUTION

SUBJECT: _____

USP LVN     DATE          Previous editions not usable        SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
APRIL 1982

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Wolfe II, Charles A. | 41808-044 | San Antonio | FMC Fort Worth |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST:** This grievance is focused on the OBSTRUCTION OF JUSTICE perpetrated by Camp Unit Officer G. Williams and SIS Officers Schneider & Huckleberry on 08/10/22. Between 1500-1530 hrs, Williams, Schneider and Huckleberry, directed all inmates to clear out the North End of the TV, Hobbycraft, Trulinc and designated Modified Law Library areas in preparation for their covert operation. After they thought all witnesses were removed, all 3 entered the designated Modified Law Library with malice of forethought, accessing my secured legal locker, removing 3 well organized Accordion Legal files, that were well marked and easily identifiable as critical components of my 4 years of legal documents pertaining to my 3 active cases. Officer Williams was keenly aware of the specific location and critical nature of this legal property as during routine walk throughs he had accessed in my presence. This was targeted action with the specific intent, designed to prevent my access to the Courts, prevent my pursuit of the Civil Rights Action Claim and retaliation for the good faith utilization of the FBOP Admin Remedy Program. Unbeknownst to the 3 perpetrators initially, food service workers were in the dining facility in clear sight of the table used for this action. After Williams recognized the workers were watching, he waved them out of the windows, but the covert action was already exposed. During Schneider & Huckleberry's rummaging through my legal property, CM Rushing entered the area. Shortly, another inmate entered the side door by the loading dock and witnessed Schneider and Huckleberry rifling through my legal property as Williams and Rushing stood by watching. After completion of their nefarious activities, my legal property was placed in trash bags and hauled away by the SIS Officers in their Government truck. Weeks later, my Unit Team advised that SIS disposed of this legal property. Over the last 4 years, in excess of 4000 hours were constructively utilized on legal research in accumulating the contents of this confiscated legal property. These documents were invaluable and either costly to re-create or otherwise irreplaceable.

I am requesting that Williams, Schneider & Huckleberry be advised they are individually and collectively liable for violating my Constitutional Rights and will be held responsible until all of the confiscated legal property is returned.

| 10/26/22 | Respectfully, | Charles A. Wolfe II | |
|---|---|---|---|
| DATE | | SIGNATURE OF REQUESTER | |

**Part B- RESPONSE**

Exhibit ONE B

| | |
|---|---|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**THIRD COPY: RETURN TO INMATE**                   CASE NUMBER: _____

                                                   CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT: _____

| | |
|---|---|
| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |

USP LVN

BP-229(13)
APRIL 1982

To whom it may concern:

On Wednesday, August 10, 2022, approximately 1500 hrs, I, Lawrence Lacey, Reg. No. 49577-044, observed the Camp Unit Officer G. Williams, CM Rushing and 2 other officers, in the Law Library area, going through a large amount of documents. They were working on the table in front of the windows in front of the loading dock and across from the dining facility as I was entering the side door next to the loading dock.

DATE: 10-3-22

10-3-22

49572-044

9-28-22

I Marlon Brown 14624-025 declare I was a witness to officer Williams and (sis) officers Packing up charles wolfe's stored legal Property the law library on 08/10/2022 during the 1600 count. At the present time i was a kitchen employee and i watched from the dinning area windows when i saw (sis) and williams Packing up his legal Property

Exhibit ONE C

U.S. Department of Justice

Federal Bureau of Prisons

B. Harris 12/14/2022

*REMEDY ID# UNKNOWN*

**Regional Administrative Remedy Appeal**

PAGE 1 of 2

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: Wolfe II, Charles A.      41808-044      San Antonio      FMC Fort Worth

       LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A—REASON FOR APPEAL:** This Regional Appeal is proper pursuant to P1330.18 § 542.18, If the IM does not receive a response within the time allotted for reply, including extension. the IM may consider the absence a denial at that level. This Regional Appeal is focused on Food Service Officers Lance, Bradley and their team's refusals to adhere to the National menu mandates, recipe preparations and delivery guidance, their theft of Government assets and the Food Service staff and team's corrupt activities.

Twice daily, before lunch and before dinner services, stolen food from the Camp's inventory and stolen directly from the warehouse, are used by Lance, Bradley and their team to prepare approximately 30 meals that are sold for an average of $5.00 each or bartered for with their accomplices, openly in the presence of Lance, Bradley and all others. Additionally, Lance and Bradley participate or willfully ignore that an abundance of stolen food items are sold or bartered for, to inmates that prepare food items in the housing unit. In early 2022, FSA Travis visited the Camp to investigate why Lance's warehouse food order quantities were more consistent with a 250 inmate census rather than the 150 actual census, but Lance, Bradley and their team told lies to cover their thievery and corrupt activities.

On 08/05/22, 1030 hrs, cook "Big E" defiantly refused to provide the Heart Healthy - Federally mandated, Baked Fish, advising he followed Lance and Bradley's directive not to prepare. However, in the presence of Lance and Bradley, he advised he was authorized to prepare the Baked Fish separately for a fee. Having just left my yearly chronic care checkup with the Clinical Director, I immediately returned to H.S. informing of this event. Following this blatant disregard for the National Menu mandate, I informed Officer Williams on Saturday 08/06, Counselor Jarrett on Monday 08/08, FS inmate workers and other inmates on the intent to expose Lance, Bradley and their team's theft of Government assets and corrupt activities. Following the 08/05/22 event, Officer Lance, Bradley and Camp Education Supervisor Jeremy Downen were overheard plotting to fabricate or plant a cell phone to justify my transfer. In August 2021, after Lance's direct

DECEMBER 19 DATE 2022      Respectfully,      SIGNATURE OF REQUESTER

**Part B—RESPONSE**

Exhibit TWO A-1

DATE                    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE      CASE NUMBER: 1135742

**Part C—RECEIPT**

     CASE NUMBER: _____

Return to: _____

     LAST NAME, FIRST, MIDDLE INITIAL      REG. NO      UNIT      INSTITUTION

SUBJECT: _____

BP-230(13)

REMEDY ID: 1135749R       PAGE 2 of 2

refusals to offer Baked Potatoes as a Heart Healthy menu item, I sent electronic messages to FSA Travis, who forced Lance, Bradley and their team to prepare when listed on the menus. In October 2021, FS Lance informed me that he unsuccessfully attempted to have me transferred due to the Low Fiber diet the National Dietician and H.S. had prescribed. In late May 2022, I directly discussed with FS Lance of the deficiencies with FS preparation anddelivery, including the mandated Heart Healthy Baked Fish, informing I was scheduled for a consult with a National Dietician. On 06/07/22, Lance's refusals to adhere to the National Menus were raised with Ms DiStefano, National Dietician - Wash D.C., who committed to ensuring changes, including the Baked Fish. A couple weeks later, warehouse staff informed me that 1500 lbs were ordered.

On 08/09/22, Lance, Bradley and Downen, orchestrated a collaborative retaliatory action, fabricating or planting a cell phone, designed to justify a transfer.

I am requesting and FBI - Internal Affairs and Attorney General - Office of the Inspector General investigative probe into Federal Prison Camp Food Service's Lance and Bradley's theft of government assets and associated corruption, as well as a Forensics invest igation of the alleged cell phone, including finger prints, contact tracing and phone usage, that will all clear my name of this false allegation.

DATED: 12/19/22,                                    Respectfully, Charles W. Wolfe II
                                                    Charles A. Wolfe II, 41808-044

Exhibit TWO A-2

U.S. DEPARTMENT OF JUSTICE                    REQUEST FOR ADMINISTRATIVE REMEDY

Federal Bureau of Prisons

*This is a re-write — PAGE ONE OF TWO*

Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

From: **Wolfe II, Charles A.**          **41808-044**          **G/San Antonio**    **FMC Fort Worth**

LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A– INMATE REQUEST** This Admin Remedy is focused on Food Service Officers Lance, Bradley and their team's refusals to adhere to the National menu mandates, recipe preparations and delivery guidance, their theft of Government assets and the Food Service staff and team's corrupt activities.

Twice daily, before lunch and before dinner services, stolen food from the Camp's inventory and stolen directly from the warehouse, are used by Lance, Bradley and their team to prepare approximately 30 meals that are sold for an average of 5.⁰⁰ each or bartered for with their accomplices, openly in the presence of Lance, Bradley and all others. Additionally, Lance and Bradley participate or willfully ignore that an abundance of stolen food items are sold or bartered for, to inmates that prepare food items in the housing unit. In early 2022, FSA Travis visited the Camp to investigate why Lance's warehouse food order quantities were more consistent with a 250 inmate census rather than the 150 actual census, but Lance, Bradley and their team told lies to cover their thievery and corrupt activities.

On 08/05/22, 1030 hrs, cook "Big E" defiantly refused to provide the Heart Healthy-Federally mandated Baked Fish, advising he followed Lance and Bradley's directive not to prepare. However, in the presence of Lance and Bradley, he advised he was authorized to prepare the Baked Fish separately for a fee. Having just left my yearly chronic care check-up with the Clinical Director, I immediately returned to HS informing of this event. Following this blatant disregard for the National Menu mandate, I informed Officer Williams on Saturday 08/06, Counselor Jarrett on Monday, 08/08, FS inmate workers and other inmates on the intent to expose Lance, Bradley and their team's theft of Government assets and corrupt activities. Following the 08/05/22 event, Officer Lance, Officer Bradley and

11-03-22 DATE                    RESPECTFULLY,          SIGNATURE OF REQUESTER

**Part B– RESPONSE**

Exhibit TWO B-1

_____          _____
DATE                              WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

CASE NUMBER: _____

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____          _____
DATE                              RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP–229(13)

PAGE TWO OF TWO

Camp Education Supervisor Jeremy Downen were overheard plotting to fabricate or plant a cell phone to justify my transfer. In August 2021, after Lance's direct refusals to offer Baked Potatoes as a Heart Healthy menu item, I sent electronic messages to FSA Travis, who forced Lance, Bradley and their team to prepare when listed on the menus. In October 2021, FS Lance informed me that he unsuccessfully attempted to have me transferred due to the Low Fiber diet the National Dietician and H.S. had prescribed. In late MAY 2022, I directly discussed with FS Lance of the deficiencies with FS preparation and delivery, including the mandated Heart Healthy Baked Fish, informing I was scheduled for a consult with a National Dietician. On 06/07/22, Lance's refusals to adhere to the National Menus were raised with Ms DiStefano, National Dietician - Wash D.C., who committed to ensuring changes, including the Baked Fish. A couple weeks later, warehouse staff informed me that 1500 lbs were ordered.

On 08/09/22, Lance, Bradley and Downen, orchestrated a collaborative retaliatory action, fabricating or planting a cell phone, designed to justify a transfer.

I am requesting an FBI - Internal Affairs and Attorney General - Office of the Inspector General investigative probe into Federal Prison Camp Food Service's Lance and Bradley's theft of government assets and associated corruption, as well as a Forensics investigation of the alleged cell phone, including finger prints, contact tracing and phone usage, that will all clear my name of this false allegation.

DATED: 11/03/22                Respectfully, Charles Wolfe II

Charles A. Wolfe II, 41808-044

Chuck, The Whole World Know You d.
Wot Hole A Cell phone. Rick Moved up
When He do Not Write up Lt. John's For
Plant.ng The phone They Claim Lt. John
Wouts to be A Captain Someday.
IF I do Go Back, I Will Tell Rawling
And Mrs. Daw, C.m.c. To Trawter me.
I Feel Ove Think, They Would do Me Ed
Like You The Wext Time

MARK LANE

(2)

Exhibit Two B-3

## DEFENSE

Marion staff had the Opportunity and Motive, as well as a Precedent and Pattern of RETALIATION.

A) OPPORTUNITY: On the morning of 08/09/22, I checked my Trulincs account and went to breakfast, before returning to the housing unit. Upon my return, I placed leftover sugar substitutes, not used for breakfast, in my wheat thin box on the top shelf of my locker, where I routinely store them. There was NOt any contraband planted in the box. I prepped my legal portfolio, placing in my gray mesh gym bag with other items I would need for my days work in the Law Library. At 0730hrs, officers were heard saying "Get the F... Out!" Giving direct orders to leave the unit. The unit contains cubicles, all without doors. I am severely hearing impaired and may not have heard the first announcement, so I believe I was the last inmate to vacate my floor. From 0735hrs to 1205hrs, the access and chain of custody of my cubicle was available to numerous staff members during this mass search.

B) The warden and other staff members had the MOTIVE to force my transfer due to my numerous good faith attempts to receive Medically Necessary Healthcare, my extensive utilization of the Admin Remedy Program and pursuit of a Civil Rights Action Claim in the Southern District of Illinois.

C) PRECEDENT: Four months prior, the planting of an alleged cell phone was orchestrated in an SIS retaliation towards Richard Gross. Earlier that day, SIS was upset that Gross had returned to his warehouse job to assist with the semi-annual inventory. Richard (Ricky) Gross is the son of a long-time family friend of my wife and I. At about 1700hrs that day I had a conversation with Ricky to watch his back as I had experienced retaliatory actions in NOV' 21, FEB and Mar'22, that included SIS Schneider and Huckleberry. So, Ricky was on high alert to stay clear from those that may participate in "baby games." At about 2100hrs, Officer (Now Lt) Johns searched 4 inmates property con- tending a cell phone was found in Ricky's property. Days later, I approached Johns requesting to speak privately. He directed me to return to the horseshoe (officer's station) after 2200hrs count. After 2200hrs, I began by saying, 'My wife and I have a long-time familyfriend named Pamela Tabatt. Her son is not here tonight due to an alleged cell phone. His name is Richard Gross. I am 100% certain Ricky did not have the alleged cell phone. When an individual is asked to participate in nefarious activities, the weak individual is <u>NOT</u> the one who declines, but the one that participates. I am aware you are up for promotion to Lt. I am not suggesting you reverse what is done, but to consider these words moving forward." Lt Johns may have been taken back by my direct approach, but was professional and open to listening. On 08/09/22, 1800hrs, after the day's earlier event, Lt Johns was walking the range in the SHU when I stopped him. I said, "Do you remember our conversation months ago? Man to Man, I never had a cell phone." Lt Johns responded, "It is under SIS investigation." After the Richard Gross alleged cell phone incident, Camp Counselor J. Jarrett advised Ricky requested his cubicle cellie Fred, Dennis Pashia and I write letters of support on his behalf. Fred and I wrote letters, but Pashia declined informing Jarrett, myself and others he was fearful of SIS retaliation. I wrote a detailed letter of support and informed Jarrett that I may expect additional retaliations, as he was aware I had filed prior retaliation complaints against SIS. I told Jarrett, if anyone ever alleges I had a cell phone it was a false allegation or fabricated, planted evidence. Also, I informed Jarrett that there may be 70 phones at the Camp, but I have never and will never have a phone. He advised he checked my TruPhone usage and recognized I use the majority of my allotted minutes. I advised I used Trulincs messaging as well, both in an open, transparent fashion. On 08/15/22, Counselor Jarrett advised me that he knew I did not have a cell phone and that Lt Hendricksen falsely told Jarrett that I accused Jarrett of planting. I strenuously told Jarrett that was a lie!

D) PATTERN: 1) On 11/04/21, 1300hrs, an undocumented, unwarranted retaliatory action transpired, placing me in the 'hole" for 20 days, for the good faith attempts to receive Medically Necessary Healthcare, for the exercise of my First Amendment-Freedom of Speech right, and the utilization of the FBOP Administrative Remedy Program, P1330.18. 2) On 02/24/22, SIS purged the entirety of my Trulinc contacts precluding communications with my family, friends, attorneys, members of U.S. Congress and all others, by phone, Trulinc messaging, mail, essentially all communications. 3) On 03/16/22, SIS blocked all communications with U.S. Senator Tammy Duckworth from IL. Senator Duckworth's office was communicating with Marion inmates in regards to Marion's failures to adhere to the statutory language of the FSA regarding Time Credits and the CARES Act, in direct conflict with Congressional Intent. Following these two SIS retaliations, I discussed the details with CM Polley who suggested, "You may expect future actions when they feel they can get by with it."
4) On 06/13/22, I was placed in ankle, belly and wrist shackles, with a martin box, as another retaliatory action. OUT CUSTODY CAMPERS with a minimum/minimum recidivism and custody classification, (00) Criminal History Score, 1 point and NO PUBLIC SAFETY FACTOR are never transported to a medical trip this way.
5) On 08/02/22, 1400hrs, I was placed in the SHU for a next afternoon medical procedure. The next morning I was placed in full shackles. These are NOT protocol for Campers with my age and characteristics, but another retaliation. CONFLICTS/CHARACTERISTICS: I have consistently utilized the substantial majority of my 510 allotted free minutes along with utilizing the Trulinc electronic messaging and the institutional mail system. I advised the DHO Official

EXHIBIT DEFENSE A-1

that listening to recorded phone calls and reviewing electronic messaging would contradict the false allegation of an alleged cell phone. Specifically, 08/02-08/04/22 messages from Freddy, electronic messages from sister Karen on 08/05/22-with listening to the recorded completed call following, phone calls to my wife 08/07 & 08/08/22, calls to my surrogate father, 84 year old Tom Bryan, and all other communications were not consistent with an individual that utilized another source of communications. My writings and all communications display complete transparency and are uncensored, without hidden agendas. My filings of 40 Admin Remedy grievances centered on my constitutional right to receive medical and dental healthcare, retaliatory actions and the conditions of confinement, made me a known target for more retaliation. The NOV'21-APR'22 filing and payment of fees for my Civil Rights Action Claim made me a known target.

In SEP'21 I spoke to Chaplain Harmon, NOV'21 I spoke to Chaplain Holem, and assorted other times in the past year, I spoke with either on the difficult decision to aggressively pursue a Civil Rights Action Claim under the color of law. We determined that maybe God's purpose was for me to effect change within the BOP.

I had countless discussions with the Camp daytime Unit Officer G. Williams in regards to the cell phone Black Market at the Camp where dozens of phones are present. We discussed the selective enforcement that favored those that participate in corrupt activities and the enforcement against those that refuse to "play ball." I asked how long does it take a BOP staff member that becomes corrupt to become that way. He responded, "3 to 5 years." Williams is an army vet that spent time in Fort Campbell, KY. As a civilian, I had the pleasure of working and fellowshipping with active members at Fort Campbell, sporadically from 1984-2005, so we had some common grounds to broaden our conversations. After the Richard Gross incident, I mentioned my conversation with Officer Johns, reminding him I have never and will never have a cell phone while incarcerated. Williams acknowledged he knew I have never and would not ever have a phone. On 01/07/22, Williams escorted me to an unsuccessful medical trip to Urologist Dr. Hatchett, but the office was closed and the contract with his office expired. On 06/22/22, Williams escorted me on a 6 hour medical trip to Mercy Urological-Paducah, KY. Williams allowed me to carry my medical records. Upon arrival, the receptionist informed us the first appointment on 05/04/22 was canceled for failure to provide medical history records and now todays was canceled for the same reason. I advised that I carried my personal records to ensure they had some medical background history. With my records, they put us on the day's schedule as a walk-in. During the consult, FNP Christina Thweatt advised these records got the process started, but the doctor would require an updated CT scan and labs. I suggested the order be STAT and for Williams to call for approval. Williams agreed and gained approvals. Later he informed me he was reprimanded by Warden Sproul and Health Services for forcing their hand, allowing me to receive the consult and updated tests. FNP Thweatt requested a follow-up within 2 weeks, July 06 if possible, but Marion refused to provide until AUG. 30th, ten weeks later. On 08/30/22, the 2 year overdue procedure was scheduled for an unknown date within 3 weeks. Marion refused, canceling before the 10/04/22 transfer. So, with the numerous discussions with Williams, our mutual connections to Fort Campbell and his valuable assistance at Mercy Urological, I requested that Williams, the Camp Unit Officer, that I had known for a year, represent me at DHO. However, on 08/17/22, he advised he had never acted as a staff rep. I requested he advise the DHO Official of our extensive communications and his reasoning to believe I did not and would not have a cell phone. However, on 08/24/22, he was silent at DHO, advising me that he "could not risk his paycheck", citing the warden's displeasure with his unauthorized use of white decorative rock in the camp's landscaped beds, the assistance at Mercy Urological and other unknown prior circumstances. I told the DHO Official that he told me he would confirm his belief that I did not have a phone and that I did not possess the characteristics to violate the prohibited act. The DHO Official said unless he can tell me he visualized the phone being placed in my locker, his beliefs do not matter to her ultimate conclusions. Coincidentally, Tuesday 08/09/22 was a scheduled work day for Williams, but he took the day off and was not present for the day's activities. RETALIATION: This was a collaborative retaliatory action. EXHIBITS ONE and TWO. The warden decided to get rid of me by hook or by crook, any means necessary, evidenced by the successive transfer referrals to the FTC-OKC work cadre program, after the Air Marshals advised the BUS LT at Mid-America Airport they could not accept my custody transfer due to my complex medical history.

Incident report delays were raised in my prepared defense, but I was precluded from delivering the substantial majority of my defense. The first incident report received was 08/10/22, 1230hrs, so should have been dismissed as untimely. This report was noted as a Re-write and included sentences saying "the phone could not be accessed or powered on." This suggests the phone was old and non-functional, consistent with the characteristics of an unused, planted phone that had been laying around somewhere else. Also, the report stated he "found a pair of white ear buds in the light fixture", inferring it was for a phone. However, the ear buds came with the Sargean Radio kit purchased at Marion in JUNE 2021 and was solely used for late night radio usage. The report did not include the recovery of a charger which would have been required for cell phone usage. The 2nd Re-write the DHO Official referenced removed those two sentences. Downen is the sole Camp Education staff member and the GED teacher. So, it is highly suspect that it was necessary to write the single paragraph, incident report, 3 times, unless it was an attempt to cover-up nefarious activities.

So, I am requesting the full investigation be conducted and the code violation, associated penalties and sanctions be reversed.        Respectfully submitted this 4th day of January 2023.

EXHIBIT DEFENSE A-2

Charles A. Wolfe II
41808-044
Federal Medical Center
P.O. Box 15330
Fort Worth, TX 76119

I, Charles A. Wolfe II, 41808-044, am submitting this supplemental addendum to the Regional Appeal filed on 11/08/22. Included herein are are Exhibits A; B; C1 & C2, which were referenced at DHO during the partial defense I was allowed to present. They are all consistent with not having or using a cell phone and further support my actual innocence.

Exhibit A: After an unsuccessful attempt to call my sister Karen on 08/05/22, she sent this electronic message: "I am so sorry. when I tried to push 5 my finger also hit 6 so it hung up. I hope I did not block you and please call back. I am home at my desk." Listening to the completed 08/05/22 recorded conversation will reveal a conversation about my daughter Jessica's birthday travels as well as a summary of my yearly chronic care consult with Dr. Pass.

Exhibit B: This message thread with a long-time family friend is consistent with not having a cell phone.

Exhibit C: This 07/15/22 electronic message to a friend of 40 years, along with the response is consistent with not having a phone.

The Appeal's reference to calls to Tom Bryan and a review of all other calls will support the factual truth that I did not have or use a cell phone.

Not stated in the Regional Appeal: 1) the recovery of 20 plus cell phones at the FPC Marion on 08/09/22. However, only a couple resulted in Prohibited Act violations due to their common area locations. It is common knowledge that those that utilize cell phones store them in "common areas" and would never place them in personal lockers. So, the majority that used cell phones on August 09, 2022, did not receive a prohibited act violation, but I, an individual that never possessed a cell phone received a code violation for a false allegation.

This was retaliation for my good faith efforts to receive Medically Necessary Healthcare, my extensive utilization of the FBOP Admin Remedy Program and my filing of the Civil Rights Action claim against Warden Dan Sproul and other staff members.

2) Also, I was forewarned by inmate Mark Lane at approximately 1400 hrs on 08/02/22, from his shower location in the SHU, of an upcoming mass search when I was placed in the SHU as a retaliatory action for a next afternoon, 08/03/22, procedure.

When the deprivation of Good Time is at risk, an inmate should be presumed innocent and allowed to present a defense, with a complete investigation conducted before being found guilty. I should have been allowed to take a polygraph as additional support to my actual innocence, but the DHO was de-sensitized to any possibilty that I did not and have not had a cell phone at any point during my incarceration, foreclosing the factual

EXHIBIT DEFENSE B-1

truth from being presented.

A review of conversations with my wife Avelina following the false cell phone allegation of a cell phone against Richard Gross will reveal inquiries from his mom passed on to my wife about Ricky's welfare. The conversations were transparent and strenuously called out the action as retaliation. Also, the recorded calls will reveal no hidden agendas or communications and the knowledge I may face similar retaliatory action. These transpired in Late March - May 2022.

All of my writings and communications display complete transparency and are un-censored, without hidden agendas. My filings of 40 Admin Remedy grievances centered on my constitutional right to receive Medically Necessary Healthcare, retaliatory actions and the conditions of confinement, as well as the NOV'21 - APR'22 filing and payment of fees for my Civil Rights Action Claim made me a known target.

Additionally, I wrote the Associated Press, Accredidation for Ambulatory Healthcare and 16 members of the United States Congress on the state of and lack of Healthcare within the BOP, all making me a known target as well.

When retaliatory actions are allowed to stand, staff is emboldened to take further actions. PROVERBS 29:12 - If rulers listen to lying words, their servants/officials all become wicked. Those charged with ensuring safety and security frequently go unchecked and unchallenged. They are willfully allowed to perpretrtate retaliatory actions under the color of law, without fear of reprisals. Inmates should be free and clear from retaliatory actions from those assigned to protect their safety and security. Staff that participate in detrimental conduct towards inmates are encouraged by the <u>tolerance and lack of enforcement</u> under the color of law.

The DHO presiding official was overtly de-sensitized to staff's retaliatory actions and of any possibility an inmate was truthful.

As evidenced with this Appeal and supplemental addendum, I did not and have not had a cell phone at any point during my incarceration, including August 09, the alleged date.

When the deprivation of Good Time is at risk, an inmate should be presumed innocent and allowed to present a defense with a complete investigation conducted.

If my defense was presented with a thorough investigation conducted, clear and convincing evidence would have overwhelmingly displayed my actual innocence.

I am requesting the code violation and associated penalties and sanctions be removed and/or reversed, after the full investigation confirming my actual innocence.

Respectfully submitted this 5th day of December 2022.
FYI, I was in the hospital 11/21/22 - 11/30/22 for a severe case of cellulitis.

*Charles Wolfe II*

Charles A. Wolfe II, 41808-044

EXHIBIT DEFENSE B-2

TRULINCS  41808044 - WOLFE, CHARLES - Unit: FTW-S-A

------------------------------------------------------------------------------------------------

FROM: 41808044
TO: Wolfe-Kerker, Karen
SUBJECT: RE: yuo called today please call back
DATE: 08/05/2022 03:22:45 PM

K, message came thru at 151pm, we spoke before then
-----Wolfe-Kerker, Karen on 8/5/2022 1:51 PM wrote:

>

I am so sorry. when I tried to push 5 my finger also hit 6 so it hung up.  I hope I did not block you and please call back. I am home at my desk.

Exhibits A

TRULINCS  41808044 - WOLFE, CHARLES - Unit: FTW-S-A

-------------------------------------------------------------------------------------------

FROM: 41808044
TO: Bahhur, Freddy
SUBJECT: RE: RE: Nic
DATE: 08/04/2022 02:02:29 PM

Yes they implemented retaliatory action 08/02/22, 1400 hrs and placed me in the "hole" for a 08/03/22 sinus surgery. from the camp this is not the protocol. When I returned my phones were shut down
-----Bahhur, Freddy on 8/4/2022 10:36 AM wrote:

>

Didn't here from you thought maybe u were in medical so I did some math and I was spot on.

CHARLES WOLFE on 8/3/2022 10:36:44 PM wrote
8 - 15 - 12 - 8 - 8 - 6 = 57gal

Vg = 40 gals + top-off 1/2 gal

NIC = 19,205 mls = 5.073gal - order 5 gals

Pg = 12 gals ---GOOD
-----Bahhur, Freddy on 8/2/2022 12:21 PM wrote:

>

0mg x8
3mg x15
6mg x12
12mg x8
18mg x8
24mg x6

Exhibit B

TRULINCS 41808044 - WOLFE, CHARLES - Unit: FTW-S-A

------------------------------------------------------------------------------------------------

FROM: Klutho, Anthony
TO: 41808044
SUBJECT: RE: Congress
DATE: 07/21/2022 09:06:11 AM

Chuck,

I hope this is what you want.

Tony


Judiciary        Durbin, Richard J. (D-IL)        Grassley, Chuck (R-IA)

Durbin mailing addresses:
Washington, D.C.
711 Hart Senate Building
Washington, D.C. 20510
p: 202.224.2152
9:00 am to 6:00 pm

Chicago
230 S. Dearborn Street
Suite 3892
Chicago, IL 60604
p: 312.353.4952
8:30 am to 5:00 pm

Springfield
525 S. 8th Street
Springfield, IL 62703
p: 217.492.4062
8:30 am to 5:00 pm

Carbondale
250 W. Cherry Street
Suite 115-D
Carbondale, IL 62901
p: 618.351.1122
8:30 am to 5:00 pm

Rock Island
1504 Third Avenue
Suite 227
Rock Island, IL 61201
p: 309.786.5173
8:30 am to 4:30 pm

Grassley mailing addresses

WASHINGTON D.C.

135 Hart Senate Office Building
Washington, D.C. 20510
PHONE: (202) 224-3744

Exhibit C1

FAX: (202) 224-6020

House Committee on Judiciary

TRULINCS  41808044 - WOLFE, CHARLES - Unit: FTW-S-A

--------------------------------------------------------------------------------

Jerry Nadler

Brooklyn Office

6605 Fort Hamilton Parkway
Brooklyn, NY 11219
Phone: 718-373-3198

Manhattan Office

201 Varick Street, Suite 669
New York, NY 10014
Phone: 212-367-7350

Washington, DC Office

2132 Rayburn HOB
Washington, DC 20515
Phone: 202-225-5635

Jim Jordan

Washington DC Office

2056 Rayburn House Office Building
Washington, DC  20515
Phone: (202) 225-2676
Fax: (202) 226-0577

Lima District Office

3121 West Elm Plaza
Lima, OH  45805
Phone: (419) 999-6455
Fax: (419) 999-4238

Norwalk District Office

13 B East Main Street
Norwalk, OH  44857
Phone: (419) 663-1426
Fax: (419) 668-3015

Bucyrus District Office

500 South Sandusky Ave
Bucyrus, OH  44820
Phone: (419) 663-1426


CHARLES WOLFE on 7/15/2022 12:49:46 PM wrote
Tony, if and when you have time, can you research the Congressional Oversight and Judiciary Committees, Chairmen and
ranking members. Senate and House. I believe Durbin and Grassley are on one or both Senate committees? Also Jerry Nadler
and Jim Jordan in the House? I have those 4 addresses, but I am trying to obtain the others. All addresses are very similar.
Senate zips are all 20510 & House zips are 20515.
   I summation, I am only trying to obtain the Democrat(Chairman) & Republican(ranking member) leaders for both committees
in the Senate & House.                              Exhibit C2

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

PAGE ONE OF NINE

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Wolfe II , Charles A.     41809-044    San Antonio    FMC Fort Worth
     LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A - REASON FOR APPEAL False allegation of a cell phone. If I were allowed to present my defense it would have displayed clear and convincing evidence and corroborative facts to reveal the factual truths of my actual innocence. I. My Fifth and Fourteenth Amendment substantive and procedural due process of law rights were violated. The DHO process was conducted in the SHU Lt (Brooks) office over a voice only speaker phone, with the DHO in KC, KS. After introductions, I requested a continuance for the staff witnesses to corroborative facts contained in my defense to be present, as previously requested. I informed the DHO presiding official that I requested Camp Counselor Jarrett, CM Pelley, Lt Johns and Chaplains Helem or Harmon to be present. She asked Lt Brooks if they were available, but then said "unless they can tell me how a phone got in your locker" their presence is inconsequential to her determination. I repeated my request for a continuance but was denied. Therefore, I stated that I objected and would begin my defense under protest! The DHO said, "Noted", but did not include the continuance requests or protest anywhere in the report received 10/21/22 from DHO Mata, 2 months after the hearing. My first sentence began with the factual truth that "I did not and have not had a cell phone at any point during my incarceration, including AUG 9th, the alleged date." However, after my first 5 words the DHO stopped me advising she was not fully prepared and would have to manually write down my words. I again requested a continuance for her to be better equipped and for me to write my defense in a cognizable format that could be forwarded electronically to assist. The DHO again denied the continuance. I stated, "this was a retaliatory action for my good faith efforts to receive Medically Necessary Healthcare; my extensive utilization of the FBOP Admin Remedy Program and my filing of the Civil Rights Action Claim against Marion Staff, that began 11-16-21, with the initial PLRA payment of $68.91 debited to my TM account on DEC. 20, 2021. DATED: 11-09-22    RESPECTFULLY SIGNATURE OF REQUESTER Charles Wolfe II

Part B - RESPONSE

_____      _____
     DATE                        REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                  CASE NUMBER: _____

Part _____

CASE NUMBER: _____

Return to: _____    _____    _____    _____
     LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____      _____
     DATE                   SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)

The DHO presiding official again stopped me advising she may have to start typing my defense as it was untenable to keep up manually writing. I advised I had 3½ pages in my defense and again requested a continuance, but was denied. Then the DHO asked me about Jeremy Downen who wrote the incident reports. I stated; Mr Downen is a one person Camp Education Department that I have worked directly under for the last 7 months as the sole Library Clerk. I voiced amazement and that it was difficult to believe Downen would participate or condone this nefarious activity, but he is a prime suspect in this orchestrated retaliation. This was directly referenced in my prepared defense, but I was stopped less than 20% of the way through my defense. The DHO said, "unless you can provide someone that visualized the cell phone being placed in your locker, nothing else matters." If my defense was presented and the associated investigations were conducted, clear and convincing evidence would have overwhelmingly displayed my actual innocence. I requested to visualize pictures of the alleged phone, alleged cracker box and the article of mail referenced by the DHO, but was denied, and deprived of this alleged evidence. My defense included a request for an FBI-Internal Affairs and/or an Attorney General-Office of the Inspector General, forensics investigation, to include finger prints, phone usage and contact tracing, as well as payment and phone activation tracing. Zero numbers called could have matched mine, as I have never possessed a cell phone at any point during my incarceration.

When the deprivation of Good Time is at risk, an inmate should be presumed innocent and allowed to present a defense, with a complete investigation conducted before being found guilty. However, stating "unless someone visualized the alleged phone being placed", she was going to find me guilty without a complete investigation, advising I would have to file an appeal to the Regional Office. This DHO was desensitized to the factual truth that I did not and have not had a cell phone at any point during my incarceration.

II. BACKGROUND: I am 61½ years old and a Stage IV-B metastatic colorectal cancer survivor, with a permanent colostomy and numerous medical complexities. So, I look at the fragility and sanctity of life through a different lens. I held myself and others to higher standards than to violate prohibited acts. I would not and did not participate or condone any prohibited acts. My wife and I have been together for 33 years. We

have two daughters and four grandchildren. I would not and did not create additional hardships for my family by violating prohibited acts. As an inmate who has studied the law for the last 4 years, counseled and guided other inmates to refrain from "baby games", it is widely known of the penalties for an inmate and additional hardships for their families, for a violation of a prohibited act.

III) Marion staff had the Opportunity and Motive as well as a Precedent and Pattern of retaliation.

A) OPPORTUNITY: On the morning of 08/09/22, I checked my Trulincs account and went to breakfast, before returning to the housing unit. Upon my return, I placed leftover sugar substitutes, not used for breakfast, in my wheat-thin box on the top shelf of my locker, where I routinely store them I prepped my legal portfolio, placing in my mesh gym bag with other items I would need for my days work in the Law Library. At 0735 hrs, officers were heard saying "Get the F... Out!" Giving direct orders to leave the housing unit. The unit contains open cubicles, all without doors. I am severely hearing impaired and may not have caught the first announcement, so I believe I was the last IM to vacate my floor. From 0735 hrs to 1205 hrs, the access and chain of custody of my cubicle was available to numerous staff members during this mass search.

B) The warden and other staff had the MOTIVE to force my transfer due to my numerous good faith attempts to obtain Medically Necessary Healthcare, my extensive utilization of the Admin Remedy Program and pursuit of a Civil Rights Action Claim in the Southern District of Illinois.

C) PRECEDENT: Four months prior, the planting of an alleged cell phone was orchestrated in an SIS retaliation towards Richard Gross. Earlier that day, SIS was upset that Gross had returned to his warehouse job to assist with the semi-annual inventory. Richard (Ricky) Gross is the son of a long-term family friend of my wife and I. At about 1700 hrs that day I had a conversation with Ricky to watch his back as I had experienced retaliatory actions in Nov'21, FEB and MAR'22, that included SIS Schneider and Huckleberry. So, Ricky was on high alert to stay clear from these that may participate in "baby games". At about 2100 hrs, Officer (Now Lt) Johns searched 4 inmates property contending a cell phone was found in Ricky's property. Days later, I approached Johns requesting to speak privately. He directed me to return to the horse shoe (officers station) after 2200 hrs count. After 2200 hrs, I began by saying, "My wife and I have a long-time family

friend named Pamela Tabatt. Her son is not here tonight due to an alleged cell phone. His name is Richard Gross. I am 100% certain Ricky did not have the alleged cellphone. When an individual is asked to participate in nefarious activities, the weak individual is not the one who declines, but the one that participates. I am aware you are up for promotion to Lt. I am not suggesting you reverse what has been done, but to consider these words moving forward." Lt Johns may have been taken back by my direct approach, but was professional and open to listening. On 08/09/22, 1800 hrs, after the earlier day's event, Lt Johns was walking the range in the SHU when I stopped him. I said, "Do you remember our conversation months ago? Man to man, I never had a cell phone." Lt Johns responded, "It is under SIS investigation." After the Richard Gross alleged cell phone incident, Camp Counselor J. Jarrett advised Ricky requested his cubicle cellie Fred, Dennis Pashia and I write letters of support on his behalf. Fred and I wrote letters, but Pashia declined informing Jarrett, myself and others he was fearful of an SIS retaliation. I wrote a detailed letter of support and informed Jarrett that I may expect additional retaliations, as he was aware I had filed prior retaliation complaints against SIS. I told Jarrett, if anyone ever alleges I had a cell phone it was a false allegation or fabricated, planted evidence. Also, I informed Jarrett that there may be 70 phones at the Camp, but I have never and will never have a phone. He advised he checked my TruPhone usage and recognized I use the majority of the allotted minutes. I advised I utilize Trulincs messaging as well, both in an open, transparent fashion. On 08/15/22, Counselor Jarrett advised me that he knew I did not have a cell phone and that Lt Hendricksen falsely told Jarrett that I accused Jarrett of planting. I strenuously told Jarrett that was a lie!
D) PATTERN: i) On 11/04/21, 1300 hrs, an undocumented, unwarranted retaliatory action transpired, placing me in the "hole" for 30 days, for the good faith attempts to receive Medically Necessary Healthcare, for the exercise of my First Amendment - Freedom of Speech right, and the utilization of the FBOP Administrative Remedy Program, P.1330.18.
2) On 02/24/22, SIS purged the entirety of my Truline contacts precluding communications with my family, friends, attorneys, members of U.S. Congress and all others, by phone, Truline messaging, mail, essentially all outside communications.

Charles A. Wolfe II, 41808-044

PAGE FIVE

3) On 03/16/22, SIS blocked all communication with U.S. Senator Tammy Duckworth from IL. Senator Duckworth's office was communicating with Marion inmates in regards to the failures to adhere to the statutory language of the FSA regarding Time Credits and the CARES ACT, in direct conflict with Congressional Intent. Following these two SIS retaliations, I discussed the details with CM Polley who suggested, "you may expect future actions when they feel they can get by with it."

4) On 06/13/22, I was placed in ankle, belly and wrist shackles, with a martin box, as another retaliatory action. OUT CUSTODY CAMPERS with a minimum/minimum recidivism, (00) Criminal History Score, 1 point and NO PSF are never transported to a medical trip this way.

5) On 08/02/22, 1400 hrs, I was placed in the SHU for a next afternoon medical procedure. The next morning I was placed in full shackles. These are not protocol for Campers with my age and characteristics, but another retaliatory action.

IV) CONFLICTS/CHARACTERISTICS: I consistently have utilized the substantial majority of my 510 allotted free minutes along with utilizing the Trulinc electronic messaging and the institutional mail system. I advised DHO that listening to recorded phone calls and reviewing electronic messaging would contradict the false allegation of an alleged cell phone. Specifically, 08/02-08/04/22 messages from and to Freddy B., electronic messages from sister Karen on 08/05/22, phone calls to my wife 08/07 & 08/08/22, calls to my surrogate, 84 yr old Father, Tom Bryan, and all other communications were not consistent with an individual that utilized another source of communications. My writings and all communications display complete transparency and are uncensored, without hidden agendas. My filings of 40 Admin Remedy grievances centered on my constitutional right to receive medical and dental healthcare, retaliatory actions and the conditions of confinement, made me a known target for more retaliation. The NOV'21 - APR'22 filing and payment of fees for my Civil Rights Action Claim made me a known target.

In SEP'21, I spoke to Chaplain Harmon, NOV'21 I spoke to Chaplain Holem, and asserted other times in the past year, I spoke with either on the difficult decision to aggressively pursue a Civil Rights Action Claim under the color of law.

We determined that maybe God's purpose was for me to affect changes within the BOP.

I had countless discussions with the Camp daytime Unit Officer G. Williams in regards to the cell phone Black Market at the camp where dozens of phones are present. We discussed the selective enforcement that favored those that participate in corrupt activities and the enforcement against those that refuse to "play ball". I asked how long does it take a BOP staff member that becomes corrupt to become that way. He responded, "3 to 5 years." Williams is an army vet that spent time in Ft Campbell, KY. As a civilian, I had the pleasure of working and fellowshipping with active duty members at Fort Campbell, sporadically from 1984-2005, so we had some common grounds to broaden our conversations. After the Richard Gross incident, I mentioned my conversation with Officer Johns, reminding him I have never and will never have a cell phone while incarcerated. Williams acknowledged he knew I did not and would not ever have a phone. On 01/07/22, Williams escorted me to an unsuccessful medical trip to Urologist, Dr Hatchett, but the office was closed and the contract expired. On 06/22/22, Williams escorted me on a 6 hour medical trip to Mercy Urological-Paducah, KY. Williams allowed me to carry my medical records. Upon arrival, the receptionist informed us the 1st appointment, 05/04/22, was canceled for failure to provide medical history records and now todays was canceled for the same reason. I advised that I carried my personal records to ensure they had some medical history. With my records, they put us on the day's schedule as a walk-in. During the consult, FNP Christina Thweatt advised these records got the process started, but the Dr would require an updated CT scan and labs. I suggested the order be STAT and for Williams to call for approval. Williams agreed and gained approvals. Later Williams informed me he was reprimanded by Warden Sproul and HS for forcing their hand, allowing me to receive the consult and updated tests. FNP Thweatt requested a follow-up within 2 weeks, July 06 if possible, but Marion refused to provide until AUG 30th, ten weeks later. On 08/30/22, the 2 year overdue procedure was scheduled for an unknown date within 3 weeks. Marion refused, canceling before the 10/04/22 transfer. So, with the numerous discussions with Williams, our mutual connections to Ft Campbell

and his valuable assistance at Mercy Urological, I requested that Williams, the Camp Unit Officer that I had Known for a year, represent me at DHO. However, on 08/17/22, Williams advised he had never acted as a staff rep. I requested he advise the DHO of our extensive communications and his reasoning to believe I did not and would not have a cell phone. However, on 08/24/22, he was silent at DHO, advising me that he "could not risk his paycheck", citing the warden's displeasure for his unauthorized use of white decorative rock in the camp's landscaped beds, the assistance at Mercy Urological and other unknown prior circumstances. I told the DHO that he told me he would confirm his belief that I did not have a phone and that I did not possess the characteristics to violate the prohibited act. The DHO said unless he can tell me he visualized the phone being placed in my locker, his beliefs do not matter to her ultimate conclusions. Coincidentally, Tuesday 08/09 was a scheduled work day for Williams, but he took the day off and was not present for the day's activities. After 08/24/22, I recognized that Williams had at least two major conflicts of interest whereby he should have recused himself from my staff representative. FIRST: I informed Williams on 08/06/22, Saturday, on the intent to expose FS Lance, Bradley and their team's corruption. Williams has full Knowledge of Food Services activities and receives benefits for his willful ignorance of his smoking buddy Lance's corruption and theft of government assets. SEE EXHIBIT ONE. SECOND: Williams was a participant and bears responsibility for the confiscation of my legal property. SEE EXHIBIT TWO. These conflicts of interest were a compensable, substantive and procedural due process of law violation.

100% of my daily activities are consistent with not having or using a cell phone. Counselor Jarrett assisted in several unmonitored legal calls to my attorneys and the courts that would not have been necessary if I had a cell phone. Unit Secretary Fields assisted in checking the USPS website for postal rate info and called the courts on my behalf that would not have been requested if I had a cell phone. Known as the Camp's legal scholar, I respect authority and the law too much to violate rules or prohibited acts.

On a daily basis, I assisted others with typing, legal direction and counseling,

which is why Dr Bobby Rouse Sr, Ph.D.- Psychology (84 yrs old), was supportive in offering his Knowledge that I did not and would not possess a cell phone. Almost everyone was aware I had been a target prior and expected future retaliations. James Moore's letter of support was requested because he lived in the same cubicle for 6 months with me and would have had visual and audio Knowledge if I had a phone. I have known Michael Lentsch since 2010 in the private business sector and had discussions disavowing the use or possession of cell phones, which are the reasons he felt comfortable writing the letter of support.

Most of the campers that possess cell phones participate in social media or cash pay apps. I have never participated in social media platforms or payment apps. Investigations will confirm.

X) RETALIATION: This was a collaborative retaliatory action. EXHIBITS ONE and TWO. The warden decided to get rid of me by hook or by crook, any means necessary, evidenced by the successive transfer referrals to the FTC-OKC work cadre program, after the Air Marshals advised the Bus Lt at Mid-America Airport they could not accept my custody transfer due to my complex medical history.

Incident report delays were raised in my prepared defense, but I was precluded from delivering the substantial majority of my defense. The first incident report I received was 08/10/22, 1230 hrs; so should have been dismissed as untimely. This report was noted as a Re-write and included sentences saying "the phone could not be accessed or powered on." This suggests the phone was old and non-functional, consistent with the characteristics of an unused, planted phone that had been laying around somewhere else. Also, the report stated he "found a pair of white ear buds in the light fixture," inferring it was for a phone. However, the ear buds came with the Sangean Radio Kit purchased at Marion in JUNE 2021 and was solely used for late night radio. The report did not include the recovery of a charger which would have been required for cell phone usage. The 2nd Re-write the DHO referenced removed those two sentences. Downen is the sole Camp Education staff member and the GED teacher. So, it is highly suspect that it was necessary to write the single paragraph, incident report, 3 times; unless it was an attempt to cover-up nefarious activities.

When retaliatory actions are allowed to stand, staff is emboldened to take further actions.
PROVERBS 29:12—If rulers listen to lying words, their servants/officials all become wicked.

Those charged with ensuring safety and security frequently go unchecked and unchallenged. They are willfully allowed to perpretrate retaliatory actions under the color of law, without fear of reprisal. Inmates should be free and clear from retaliation from those assigned to protect safety and security. Staff that participate in detrimental conduct towards inmates are encouraged by the tolerance and lack of enforcement under the color of law.

The DHO presiding official was overtly de-sensitized to staff's retaliatory actions and any possibility an inmate was truthful.

As evidenced within this appeal, I did NOT and have NOT had a cell phone at any point during my incarceration, including AUG 9th, the alleged date.

When I accessed my wheat thin box with the sugar substitutes the morning of 08/09/22, there was not any contraband present.

When the deprivation of Good Time is at risk, an inmate should be presumed innocent and allowed to present a defense, with a complete investigation conducted before being found guilty.

If my defense was presented and the associated investigations were conducted, clear and convincing evidence would have overwhelmingly displayed my actual innocence.

So, I am requesting the full investigation be conducted and that the code violation and associated penalties and sanctions be removed or reversed.

Respectfully submitted this 8th day of November, 2022.

DATED: 11/08/22

Charles Wolfe II
Charles A. Wolfe II
41808044

C 12

| BP-A0288 | **INCIDENT REPORT** |
| Dept. of Justice / Federal Bureau of Prisons | |

**Part I - Incident Report**

| 1. Institution: **MARION USP** | | Incident Report Number: **3660689** | |
|---|---|---|---|
| 2. Inmate's Name **WOLFE, CHARLES** | 3. Register Number **41808-044** | 4. Date of Incident **08-09-2022** | 5. Time **1205 hrs** |
| 6. Place of Incident **J05-025L** | 7. Assignment **CAMP EDUC** | 8. Unit **J05-025L** | |
| 9. Incident **108 -- POSSESSING A HAZARDOUS TOOL.** | | 10. Prohibited Act Code(s) **108** | |

11. Description Of Incident
    (Date: **08-09-2022**    Time: **1205 hrs**    staff became aware of incident)

**This is a Re-Write.**
**On 08-09-2022 at 1205 pm while conducting a mass search of the camp a cell phone was found in the personal locker of inmate Wolfe, Charles # 41808-044. Specifically a silver Apple I Phone was found in a cracker box on the top shelf of the secure locker belonging to inmate Wolfe. The I phone was in a black protective case and unable to be accessed or powered on. A white pair of ear buds was also located in the light above inmate Wolfe's bed.**

| 12. Typed Name/Signature of Reporting Employee **Jeremy Downen** | | 13. Date And Time **08-09-2022 1449 hrs** | |
|---|---|---|---|
| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature) **C. Brooks** | | 15. Date Report Delivered **08-10-2022** | 16. Time Report Delivered **0918 hrs** |

The Government Paperwork Elimination Act (GPEA) of 1998 authorized Federal Agencies the use of electronic forms, electronic filing, and electronic signatures to conduct office business.

Prescribed by P5270                                         Replaces BP-S288.052





**BP-A0288**

# INCIDENT REPORT

**Dept. of Justice / Federal Bureau of Prisons**

## Part I - Incident Report

| 1. Institution: **MARION USP** | | Incident Report Number: **3660689** | |
|---|---|---|---|
| 2. Inmate's Name<br>**WOLFE, CHARLES** | 3. Register Number<br>**41808-044** | 4. Date of Incident<br>**08-09-2022** | 5. Time<br>**1205 hrs** |
| 6. Place of Incident<br>**J05-025L** | 7. Assignment<br>**CAMP EDUC** | 8. Unit<br>**J05-025L** | |
| 9. Incident<br>**108 -- POSSESSING A HAZARDOUS TOOL.** | | 10. Prohibited Act Code(s)<br>**108** | |

11. Description Of Incident

(Date: **08-09-2022**   Time: **1205 hrs**   staff became aware of incident)

**This Is a Re-Write.**
**On 08-09-2022 at 1205 pm while conducting a mass search of the camp a cell phone was found in the personal locker of inmate Wolfe, Charles # 41808-044. Specifically a silver Apple I Phone was found in a cracker box on the top shelf of the secure locker belonging to inmate Wolfe. I was able to positively identify this locker belonging to inmate Wolfe by the bottles of prescription pills with the inmates name in the locker.**

| 12. Typed Name/Signature of Reporting Employee<br>**Jeremy Downen** | | 13. Date And Time<br>**08-10-2022 1505 hrs** | |
|---|---|---|---|
| 14. Incident Report Delivered to Above Inmate By<br>(Type Name/Signature)<br>**C. Brooks** | | 15. Date Report<br>Delivered<br>**08-10-2022** | 16. Time Report<br>Delivered<br>**1525 hrs** |

The Government Paperwork Elimination Act (GPEA) of 1998 authorized Federal Agencies the use of electronic forms, electronic filing, and electronic signatures to conduct office business.

Prescribed by P5270                    Replaces BP-S288.052

| BP-A0288 | INCIDENT REPORT |
|---|---|
| | Dept. of Justice / Federal Bureau of Prisons |

| Inmate's Name | Register Number | Incident Report Number |
|---|---|---|
| WOLFE, CHARLES | 41808-044 | 3660689 |

## Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident

**Inmate Wolfe stated he did not have a phone nor has he ever used a phone at the camp. He also stated he tells several inmates not to use phones at the camp.**

18. A. It is the finding of the committee that you:

- _ Committed the Prohibited Act as charged.
- — Did not commit a Prohibited Act.
- — Committed Prohibited Act Code(s)

B. **X** The Committee is referring the Charge(s) to the DHO for further Hearing.

C. **X** The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision is based on Specific Evidence as Follows:

**Due to the severity of the IR, this will be referred to the DHO.**

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)

**If found guilty, UDC recommends loss of GCT, L/P phone, commissary & visits.**

21. Date And Time Of Action  **08-15-2022 0925 hrs**   (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)

**J. Jarrett**

_____   _____   _____
Chairman (Typed Name/Signature)   Member (Typed Name)   Member (Typed Name)

The Government Paperwork Elimination Act (GPEA) of 1998 authorized Federal Agencies the use of electronic forms, electronic filing, and electronic signatures to conduct office business.

Prescribed by P5270                                    Replaces BP-S288.052

Received 10/19/22, 1700 hrs, from Unit Secretary



### BP-A0304    DISCIPLINE HEARING OFFICER REPORT

### Dept. of Justice / Federal Bureau of Prisons

| Institution: **MARION USP** | Incident Report Number: **3660689** | |
|---|---|---|
| NAME OF INMATE: **WOLFE, CHARLES** | REG.NO.: **41808-044** | UNIT: **J05-025L** |
| Date of Incident Report: **08-10-2022** | Offense Code(s): **108** | |
| Date of Incident: **08-09-2022** | | |

Summary of Charges:

**108 -- POSSESSING A HAZARDOUS TOOL.**

I.    NOTICE OF CHARGE(S)

A.    Advanced written notice of charge (copy of Incident Report) was given to inmate on **08-10-2022**    at **1525 hrs** (by staff member) **C. Brooks**

B.    The DHO Hearing was held on    **08-24-2022**    at    **1016 hrs**

C.    The inmate was advised of the rights before the DHO by (staff member):

**J. Jarrett**    on    **08-15-2022**

and a copy of the advisement of rights form is attached.

D.    Delay in Process    **Rewrite/ FBI Declination**

II.    STAFF REPRESENTATIVE

A.    Inmate waived right to staff representative:    [Yes] _    [No] **X**

B.    Inmate requested staff representative and
**Officer Williams**    appeared.

C.    Staff Representative's Statement:
**You requested Officer Williams as a staff representative. Officer Williams appeared before the DHO and conduced the duties of a staff representative. Officer Williams confirmed he met with you prior to the hearing and all you asked of him was to be present. You confirmed at the hearing this is all you requested of your staff representative,**

D.    Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:
**NA**

E.    Staff representative **NA**    was appointed.

III.    PRESENTATION OF EVIDENCE

A.    Inmate ( ) admits    ( **X** ) denies the charge(s).

B.    Summary of Inmate Statement:
**I did not and have not had a cell phone at any point during my incarceration or August 9th which is the alleged date. My opinion it is retaliation for good faith effort by me to receive medically necessary care and the utilization of the Administrative Remedy Program and pursuit of civil rights actions complaints against Marion staff. I do not believe the officer who wrote the incident report would have lied even if they asked him too. I have hold myself and others to higher standards then to violate prohibited acts for unlawful activities. I would not cause my family any additional suffering or pain and consistently use the BOP allotted minutes. On the Morning of 8/9/2022 at 7:35 am upon hearing the staff screaming in the hallways. I stood up and quickly grabbed my mesh gym bag with my blue legal work and walked to the**

Prescribed by P5270                    Replaces BP-304(52) of Jan 88



**BP-A0304   DISCIPLINE HEARING OFFICER REPORT**

Dept. of Justice / Federal Bureau of Prisons

end of the hallway for a pat search. My locker remains unlocked 24/7. I don't have the combo memorized; it was pinned to a small tag on the left side of my locker. I use the lock to keep the door closed but not locked.

---

C. Witnesses

---

1. The inmate waived right to witnesses.  [Yes] __    [No] **X**

---

2. The following persons were called as witness at this hearing and appeared (Each witness name and statement listed below):
   **NA**

---

3. The following persons requested were not called for the reason(s) given (Each witness name and statement listed below):
   **NA**

---

4. Unavailable witnesses were requested to submit written statements and those statements received were considered (Each witness name and statement listed below):

   You requested Inmate B. Rouse #30118-076 as a witness who is housed at the Marion FPC. Since you are currently housed in the USP Marion SHU, he provided a written statement. In the statement he writes, "Since mid-January of 2022, I have worked in close proximity to Charles Wolfe. During that time, I have witnessed him assisting other inmates with their legal paperwork. On many occasions he has told me of his counsel to other inmates about not using cell phone or be in possession of a cell phone. I do not believe that the phone found in his locker or bed belonged to him or that he had been using it. Rather, I believe it was planted or hastily placed there by someone during the recent shake downs".

   You requested Inmate Mike Lentsch #41789-044, as a witness who is housed at the Marion FPC. Since you are currently housed in the USP Marion SHU, he provided a written statement. In the statement he writes, "I am writing this statement on behalf of Charles Wolfe and the claim he had a cell phone. I have never seen or heard of Charles Wolfe to have or be around any cell phone".

   You requested Inmate James Moore #14308-025, as a witness who is housed at the Marion FPC. Since you are currently housed in the USP Marion SHU, he provided a written statement. In the statement he writes, "I have known and dealt with inmate Wolfe since he got to Marion camp, and I have never seen or heard of him having a cell phone".

---

 **BP-A0304** **DISCIPLINE HEARING OFFICER REPORT**

**Dept. of Justice / Federal Bureau of Prisons**

D. Documentary Evidence. In addition to the Incident Report and
Investigation, the DHO considered the following documents:
**Incident Report -- (BP-A288)**
**Duties of Staff Representative -- (BP-A306)**
**DHO Report - Witness Statement -- (DHO-WITSTM)**
**Incident Report - Photographs -- (BOP-IRPHO)**
**Incident Report - Chain of Custody, Contraband -- (BOP-IRCCC)**
**Incident Report - FBI Declination Notification -- (BOP-IRFBI)**

E. Confidential information was used by DHO in support of his findings, but
was not revealed to the inmate. The confidential information was documented
in a separate report. The confidential information has been (confidential
informants have been) determined to be reliable because:
**NA**

---

IV.  FINDINGS OF THE DHO
**X** A. The act was committed as charged.  _ C. No prohibited act was committed:
 _ B. The following act was committed:      Expunge according to inmate
discipline PS.

---

V.  SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations
written documents, etc.)

**The DHO advised you of your rights before the Discipline Hearing Officer and you stated you
understood those rights. You confirmed you requested OFC Williams as a staff representative. You
requested three witnesses and presented no documentary evidence on your behalf.**

**The DHO reviewed your rights and noted this disciplinary infraction was served on August 10, 2022,
beyond the ordinary twenty-four (24) hour time frame as the report was reviewed for possible
prosecution and subsequently re-written to provide additional information.  The UDC hearing was
conducted within the ordinary five (5) daytime frame. The DHO could find no way in which this
delay hindered your ability to present a defense. The DHO noted you did not raise any concerns
with the delays.**

**You requested Officer Williams as a staff representative.  Officer Williams appeared before the DHO
and conduced the duties of a staff representative.  Officer Williams confirmed he met with you prior
to the hearing and all you asked of him was to be present.  You confirmed at the hearing this is all
you requested of your staff representative. The DHO also noted Staff Representative Williams did
not raise any concerns with the disciplinary process.**

**The inmate appeared before the DHO and acknowledged receipt of the incident report.  He stated
that he did not have any issues with the discipline process to this point. The DHO finds you
committed the prohibited act of Possession of a Cellular Phone, Code 108.**

**The DHO basis this finding on the reporting officers  statements in Section 11 of the incident report
which states, "This is a Re-Write. On 08-09-2022 at 1205 pm while conducting a mass search of the
camp a cell phone was found in the personal locker of inmate Wolfe, Charles # 41808-044.
Specifically, a silver Apple I Phone was found in a cracker box on the top shelf of the secure locker
belonging to inmate Wolfe.  I was able to positively identify this locker belonging to inmate Wolfe
by the bottles of prescription pills with the inmate's name in the locker".**

**You requested Inmate B. Rouse #30118-076 as a witness who is housed at the Marion FPC.  Since
you are currently housed in the USP Marion SHU, he provided a written statement. In the statement
he writes, "Since mid-January of 2022, I have worked in close proximity to Charles Wolle.  During
that time, I have witnessed him assisting other inmates with their**



**BP-A0304    DISCIPLINE HEARING OFFICER REPORT**

Dept. of Justice / Federal Bureau of Prisons

legal paperwork. On many occasions he has told me of his counsel to other inmates about not using cell phone or be in possession of a cell phone. I do not believe that the phone found in his locker or bed belonged to him or that he had been using it. Rather, I believe it was planted or hastily placed there by someone during the recent shake downs".

You requested Inmate Mike Lentsch #41789-044, as a witness who is housed at the Marion FPC. Since you are currently housed in the USP Marion SHU, he provided a written statement. In the statement he writes, "I am writing this statement on behalf of Charles Wolfe and the claim he had a cell phone. I have never seen or heard of Charles Wolfe to have or be around any cell phone".

You requested Inmate James Moore #14308-025, as a witness who is housed at the Marion FPC. Since you are currently housed in the USP Marion SHU, he provided a written statement. In the statement he writes, "I have known and dealt with inmate Wolfe since he got to Marion camp, and I have never seen or heard of him having a cell phone".

The DHO considered the witness statements but found they had no firsthand knowledge of the incident. The DHO found they had no knowledge or information to assist in your defense, only that they had never seen you with a cell phone.

The DHO considered a chain of custody form dated August 9, 2022, which lists you as the suspect, and the item as a Silver I phone.

The DHO considered seven photographs as evidence. Photographs one, two and three are of the silver I phone discovered from within your assigned wall locker. Photographs four and five are of the iPhone inside a cracker box on the shelf of your assigned locker with a piece of mail with your name on it. Photograph six is of the outside of the wall locker and photograph seven is of the wall with your assigned cell bunk number on it 05-025.

The DHO considered that cellular telephones are considered sensitive equipment. Cellular telephones are a hazardous tool. The action on the part of any inmate to possess a hazardous tool, (Cellular phone/charger) in any correctional institution seriously jeopardizes the security of the institution and poses a threat to the ability of staff to provide for the safety and security for staff, inmates and the general public as a whole. Possessing a cellular phone gives an inmate an opportunity to make completely unmonitored calls. These calls can contain threats to the general public or plans for an escape attempt or planning or participating in other illegal activity.

Upon your confinement to any Bureau of Prisons (BOP) facility, you participate in Admissions and Orientations (A&O), wherein you were advised of BOP rules and regulations and your responsibility to abide by these rules. You are also provided an A&O handbook, which further details prohibited acts. Your participation in A&O and knowledge of BOP rules and regulations further establishes your culpability.

Since you are assigned to this cell, you are responsible for keeping your living quarters free and clear of contraband. The DHO finds no evidence, nor did you provide any evidence the silver iphone discovered in your assigned wall locker belongs to anyone other than yourself.

The DHO noted during the investigative process you stated to the investigator, "I have never had a cell phone. Look at my phone records".

The DHO noted during the UDC, you stated, "I did not have a phone, nor I have ever used a phone at the camp. I have told several others not to use phones at the camp". "

During the DHO hearing you stated, "I did not and have not had a cell phone at any point during my Incarceration or August 9th which is the alleged date. My opinion it is retaliation for good faith effort by me to receive medically necessary care and the utilization of the Administrative Remedy Program and pursuit of civil rights actions complaints against



### BP-A0304    DISCIPLINE HEARING OFFICER REPORT

Dept. of Justice / Federal Bureau of Prisons

Marion staff. I do not believe the officer who wrote the incident report would have lied even if they asked him too. I have hold myself and others to higher standards then to violate prohibited acts for unlawful activities. I would not cause my family any additional suffering or pain and consistently use the BOP allotted minutes. On the Morning of 8/9/2022 at 7:35 am upon hearing the staff screaming in the hallways. I stood up and quickly grabbed my mesh gym bag with my blue legal work and walked to the end of the hallway for a pat search. My locker remains unlocked 24/7. I don't have the combo memorized; it was pinned to a small tag on the left side of my locker. I use the lock to keep the door closed but not locked".

The DHO considered your TRU phone system usage. The TRU phone reports verified your statements you utilize the prison phone system on a regular basis. The DHO advised this information on its own does not negate the fact the phone was discovered hidden within a cracker box inside of your secured wall locker.

The DHO finds that the greater weight of the evidence supports the finding that you committed the prohibited act of Code 108, Possession of a cellular phone. The DHO finds the staff members statement and observations are more credible and believable than that of yours, as the staff members observation was made strictly in the performance of his duties and has no reason to make false accusations. Lastly, the DHO determined that you had much to lose by accepting responsibility or being truthful in this matter, whereas the reporting officer is under a legal obligation to report truthful and accurate facts. Furthermore, it is your responsibility to ensure your possessions are secured within your wall locker at all times.

There for the DHO finds based on the greater weight of evidence you committed the prohibited act of Possession of a Cell Phone, Code 108. Evidence used included section 11 of the incident report, a chain of custody, and photographic evidence.

---

VI.    SANCTION OR ACTION TAKEN
108 (FREQ 1) - DIS GCT 41 DAYS,  108 (FREQ 1) - DS 14 DAYS,  108 (FREQ 1) - LP COMM 90 DAYS, 108 (FREQ 1) - LP PHONE 90 DAYS,  108 (FREQ 1) - LP VISIT 90 DAYS,  108 (FREQ 1) - MON FINE 17 DOLLARS

---

VII.   REASON FOR SANCTION OR ACTION TAKEN
Possession of a portable phone will not be tolerated in a correctional environment. It can have extremely serious repercussions for both staff and inmates, since it tends to result in further disruptive and violent behavior. Sanctions were imposed I an effort to impress on you the gravity of your actions and hopefully deter you from such actions in the future. Although not directly related to the infraction, privileges were taken to deter behavior like this in the future.

The sanction of disallowance of Good Conduct Time (Dis GCT) was imposed to emphasize the seriousness of the offense and to enforce the standard that inmates be held accountable for their actions as well as to comply with mandatory sanctioning guidelines for inmates sentenced under the Prison Litigation Reform Act (PLRA).

The sanction of disciplinary segregation (DS) was imposed to emphasize the seriousness of the offense and to enforce the standard that inmates be held accountable for their actions.

The sanction of the monetary fine was imposed to emphasize the seriousness of the offense, to enforce the standard that inmates be held accountable for their actions, and to deter similar future misconduct.

The sanctions for loss of commissary, visiting, and phone privileges were imposed to enforce the standard that inmates be held accountable for their actions but were as the DHO believes the sanctions will provide sufficient deterrence of future misconduct.



**BP-A0304**        **DISCIPLINE HEARING OFFICER REPORT**

**Dept. of Justice / Federal Bureau of Prisons**

VIII.  APPEAL RIGHTS:  **X**  The inmate has been advised of the findings, specific
evidence relied on, action and reasons for the action. The inmate has been
advised of his right to appeal this action within 20 calendar days under
the Administrative Remedy Procedure. A copy of this report has been given
to the inmate.

IX.    Discipline Hearing Officer

| Printed Name | Signature | Date |
|---|---|---|
| · **E. KELLER** | **E. KELLER** | **10-07-2022** |

DHO Report Delivered to Inmate by:

_T. MATA_        _[signature]_        _10/21/22  10:30ar_

Printed Name of Staff        Signature of Staff        Date & Time Delivered

The Government Paperwork Elimination Act (GPEA) of 1998 authorized Federal Agencies the use of
electronic forms, electronic filing, and electronic signatures to conduct office business.

Charles A. Wolfe II
41808-044
Federal Medical Center
P.O. Box 15330
Fort Worth, TX 76119

To Clerk Of Court:

Included herein:   RE: 3:21-cv-01471-SPM

Civil Rights Complaint pursuant to 28 USC § 1331

Central Office Admin Remedy Appeal, RE: 1141281

Regional Administrative Remedy Appeal, RE: 1141281

Incident report & DHO Report,  #3660689

Motion to Compel - with exhibits


RESPECTFULLY,

DATED:  01/12/23  ;   Charles Wolfe II



MAIL CLEARED
US MARSHALS

◇41808-044◇
United Sta District Ct
So District of IL
750 Missouri AVE
Clerk of Court, Rm 14
E Saint Louis, IL 62201
United States

CERTIFIED MAIL

7020 3160 0001 1693 3242

Charl
41808
Federal Medical Center
P.O. Box 15330
Fort Worth, TX 76119

Legal

RECEIVED

JAN 17 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE