IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLES WOLFE,
#41808-044,

    **Plaintiff,**    Case No. 21-cv-01471-SPM

v.

DAN SPROUL,
ELIZABETH HARBISON,
RANDALL PASS,
JOSH RICHARDSON,
OFFICER SCHNEIDER,
OFFICER HUCKLEBERRY,
CAPTAIN MOREHEAD,
OFFICERS LANCE,
OFFICER BRADLEY,
JEREMY DOWNEN,
OFFICER WILLIAMS,
LT. C. BROOKS,
E. KELLER, and
MRS. DAUN,

    **Defendants.**

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Charles Wolfe, an inmate in the custody of the Federal Bureau of Prisons and currently being held at Fort Worth Federal Medical Center, commenced this action on November 22, 2021, by filing a document titled "Notice of Intent to File Civil Rights Action Claim under *Bivens v. Six Unknown Federal Narcotics Agents.*" (Doc. 1). The Court struck the document finding that Plaintiff had not filed an operative complaint in accordance with Federal Rules of Civil Procedure 3 and 8. (Doc. 2). Plaintiff was granted leave to file a valid complaint by October 5, 2022. Plaintiff then sought four extensions, which were granted, and he filed a complaint on

Page 1 of 20

January 17, 2023. (Doc. 28).[1]

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). The Court must also consider whether any claims are improperly joined and subject to severance or dismissal. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Dorsey v. Varga,* 55 F. 4th 1094, 1108 (7th Cir. 2022) (recommending that district courts "assess whether joinder is proper under Rule 20 before considering the merits").

## THE COMPLAINT

In the Complaint, Plaintiff claims that his constitutional rights were violated while incarcerated at the United States Penitentiary in Marion, Illinois ("USP Marion"). (Doc. 28). He has named fourteen individuals as defendants and organizes his Complaint into ten separate claims.

### *Claim One*

In claim one, Plaintiff asserts that Defendants Sproul, Harbison, Pass, and Richardson acted with deliberate indifference to his acute pain and chronic illnesses from June 11, 2021, through October 4, 2022.[2] (Doc. 28, p. 9-10). He was not provided medically necessary tests, treatments, and surgical procedures due to staff shortages and financial constraints. Plaintiff asserts Sproul refused to provide him colostomy pouches and to allow his family members to provide him colostomy medical supplies. Additionally, Sproul, Harbison, Pass, and Richardson refused to place

---

[1] The Clerk is **DIRECTED** to rename the document at Doc. 28 as "Complaint."

[2] Plaintiff states that he was diagnosed with colon cancer about ten years ago, and now has a permanent colostomy. (Doc. 28, p. 10). He also has previously suffered or is currently suffering from the following medical conditions: acute abdominal pains, abdominal hernia mesh failure, umbilical hernia, a parastomal herniation into the ostomy site, acute urological pains, radiation induced stricture in the right-sided ureter, hydronephrosis, caliectasis, renal insufficiencies, stage three kidney disease, bladder abnormalities, chronic sinusitis, acute ear pains, faulty eustachian tubes, vertigo and equilibrium loss, opacification of the mastoid process, cysts in the right maxillary, acute chronic pain in right knee, unstable joint, joint space narrowing, multi-level spine disease-lumbosacral and thoracolumbar disc disorders, frequent staphylococcus and severe cellulitis, fungal infections, neuropathy, diabetes mellitus, iron deficiency, left anterior descending coronary artery disease, thyroid stimulating hormone, and T4 insufficiencies.

a medical hold in his record in retaliation for his attempts to obtain necessary healthcare, which resulted in an involuntary transfer from USP Marion on October 4, 2022. The transfer to a new facility left several medically necessary healthcare issues unresolved.

***Claim Two***

Claim two is brought against Defendant Sproul. (Doc. 28, p. 11). Plaintiff complains that from June 11, 2021, through August 9, 2022, he was held in unconstitutional conditions. He states that in June 2021 he was housed with a cellmate in a cell designed to hold only one person with a single bed. At the time, the heat index exceeded one hundred degrees and the cell had poor ventilation. From June 28, 2021, through August 9, 2022, the roof was "porous" jeopardizing the health, safety, and security of the inmates. Plaintiff asserts he was forced to live with "raccoons, skunks, bobcats, and undomesticated felines" that roamed the walkways, recreation areas, living quarters, and food service areas.

***Claim Three***

Claim three is asserted against Defendants Sproul, Harbison, Pass, and Richardson. (Doc. 28, p. 11). Plaintiff states that he was placed in "the hole" in November 2021 for twenty days in retaliation for exercising his First Amendment rights to receive medical care through the grievance process. The conditions were not conducive for him to care for himself and constituted cruel and unusual punishment under the Eighth Amendment.

***Claim Four***

Claim four is brought against Defendants Schneider and Huckleberry. (Doc. 28, p. 12). Plaintiff asserts that his approved contacts were purged, and so he was prohibited from communicating with family, friends, and attorneys for weeks. When he and a correctional counselor sought the approval of his contacts, "SIS refused to approve" the names submitted. On March 16, 2022, he was also blocked from communicating with Senator Tammy Duckworth.

Plaintiff states this conduct was cruel and unusual punishment, was performed in retaliation, and violated his right to free speech.

### Claim Five

Claim five is brought against Defendants Sproul and Morehead. (Doc. 28, p. 12-13). Plaintiff claims that on June 13, 2022, he was placed in excessive restraints, which caused increased pain and suffering, additional damage to a compromised knee, and exacerbated his gastrointestinal medical issues. On August 2, 2022, he was placed in "the hole" for a day prior to a medical appointment on August 3. He was then placed in full restrains for transportation. Plaintiff states that these actions were retaliatory and exacerbated known chronic care medical complexities.

### Claim Six

Claim six is brought against Defendants Lance, Bradley, Downen, and Sproul. (Doc. 28, p.13). Plaintiff claims that in retaliation for filing grievances, these Defendants collaborated and falsely accused him of possessing a cell phone. Their conduct was "designed to justify a transfer."

### Claim Seven

Plaintiff asserts that on August 10, 2022, Defendants Williams, Schneider, and Huckleberry confiscated his legal property to deny him access to the courts. (Doc. 28, p. 13). The Defendants acted in retaliation to prevent him from pursuing a civil rights action and other "legal efforts."

### Claim Eight

Plaintiff claims that Defendants Sproul and Daun acted with deliberate indifference and in violation of the First Step Act by referring him for a transfer to the "FTC-OKC work cadre program in Oklahoma City, OK, over 500 miles from [his] home in retaliation." (Doc. 28, p. 13). He was first scheduled to transfer on September 22, 2022. The air marshals, however, denied custody at

the airport due to his unstable medical condition, and Plaintiff was returned to USP Marion the same day. Knowing that the air marshals advised that the transfer was "not aligned with [his] medical history," Sproul and Daun still had him transferred. On October 4, 2022, Plaintiff was transferred to FTC-OKC, a facility unable to provide for his medical needs.

### Claim Nine

Plaintiff claims that on August 9, 2022, Defendant Brooks took custody of his property, which included a gray mesh gym bag, legal portfolio, stamps, a thesaurus, an identification card holder, clothing, and a knee brace. (Doc. 28, p. 14). On November 18 and December 19, 2022, Plaintiff received his knee brace, but all other property items were not returned to him. Plaintiff asserts that the confiscation of his property was done in retaliation and designed to deny him access to the courts and deny his Eighth Amendment rights.

### Claim Ten

Claim ten is brought against Defendant Keller, a disciplinary hearing official, for violation of Plaintiff's Fifth and Fourteenth Amendment rights. (Doc. 28, p. 14). Plaintiff states that Keller refused his request for a continuance of his disciplinary hearing and to call staff witnesses. Keller also did not allow him to present his complete defense and did not conduct a full investigation. Finally, Keller delayed issuing the "DHO report" for sixty days, "well beyond the 10 day normal time frame."

PRELIMINARY DISMISSALS

Plaintiff asserts allegations against Lieutenant Hendricksen in claim three, but he has not named this individual as a defendant. To be treated as a defendant in a case, the individual must be listed in the case caption as a party. Accordingly, any claims against Hendricksen are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005).

The Court further notes that in Plaintiff's Claim Ten, he states that his procedural and

substantive due process rights under the Fifth and Fourteenth Amendments were violated by Defendant Keller. (Doc. 28, p. 14). "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Dusenbery v. U.S.,* 534 U.S. 161, 167 (2002). As it is the Fifth, not the Fourteenth Amendment, which supplies the guarantee of due process to federal inmates, Plaintiff's claims brought under the Fourteenth Amendment are dismissed with prejudice.

Plaintiff also asserts in Plaintiff's Claims Four, Nine, and Ten that confiscation of his personal property and prohibiting him from communicating with individuals outside USP Marion amounted to cruel and unusual punishment in violation of the Eighth Amendment. (Doc. 28, p. 12, 13). These assertions are insufficient to state a claim under the Eighth Amendment. Prison conditions that deprive an inmate of basic human needs for food, medical care, sanitation, or physical safety have been held to violate the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *James v. Milwaukee Cnty.,* 956 F.2d 696, 699 (7th Cir. 1992). The allegations of loss of personal property and restrictions on outside communication, however, do not amount to a "serious deprivation" required for a constitutional claim. Therefore, these allegations are dismissed without prejudice. *See Smadi v. Garland,* 2023 WL 2743586, at * (S.D. Ill. March 31, 2023) ("the Court is unaware of any authority holding that restrictions on an inmate's communications with outsiders implicates Eighth Amendment concerns").

DISCUSSION

Based on Plaintiff's allegations in the Complaint, the Court redesignates the remaining allegations as follows:

**Count 1:**     First Amendment claim against Defendants for retaliating against

Plaintiff for filing grievances and initiating a civil rights lawsuit.

**Count 2:**    Eighth Amendment claim against Sproul, Harbison, Pass, and Richardson for deliberate indifference to Plaintiff's serious medical needs.

**Count 3:**    Eighth Amendment cruel and unusual punishment claim against Sproul, Harbison, Pass, and Richardson for placing Plaintiff in "the hole" for twenty days.

**Count 4:**    Eighth Amendment claim against Sproul for subjecting Plaintiff to unconstitutional conditions of confinement.

**Count 5:**    First Amendment claim against Schneider and Huckleberry for violating Plaintiff's right to free speech by preventing him from communicating with his family, friends, and Senator Duckworth.

**Count 6:**    Eighth Amendment claim against Sproul and Morehead for the use of full restraints when transporting Plaintiff to medical appointments on June 13, 2022, and August 3, 2022.

**Count 7:**    Eighth Amendment cruel and unusual punishment claim against Sproul and Morehead for placing Plaintiff in "the hole" on August 2, 2022, prior to his medical appointment.

**Count 8:**    Eighth Amendment claim against Lance, Bradley, Downen, and Sproul for planting a cell phone in Plaintiff's possession in order to orchestrate a transfer.

**Count 9:**    First Amendment claim against Williams, Schneider, and Huckleberry for denying Plaintiff access to the courts by confiscating his legal property on August 10, 2022.

**Count 10:**    Eighth Amendment claim against Sproul, Harbison, Pass, Richardson, and Daun for deliberate indifference to a serious medical need in allowing Plaintiff to transfer to a new facility.

**Count 11:**    Fifth Amendment due process claim against Keller for implementing improper disciplinary hearing procedures and denying Plaintiff good time and FSA time credits.

**Count 12:**    Eighth Amendment claim against Keller for implementing improper disciplinary hearing procedures and denying Plaintiff good time and FSA time credits.

The parties and the Court will use these designations in all future pleadings and orders, unless

otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[3] pleading standard.**

### BIVENS CLAIMS

Plaintiff does not specify under which statute he asserts his claims. Being a federal inmate, the Court assumes that he has filed this lawsuit pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). There is no Congressional authority to award damages to "plaintiffs whose constitutional rights [have been] violated by agents of the Federal Government." *Ziglar v. Abbasi,* 582 U.S. 120 (2017). In *Bivens*, however, the Supreme Court recognized an implied action for damages to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id.* Since this decision, the Supreme Court has recognized only two other instances in which an implied damages remedy under *Bivens* is available for a constitutional deprivation – a Fifth Amendment sex discrimination claim, and an Eighth Amendment claim for denial of medical care for a serious medical condition. *See Davis v. Passman,* 442 U.S. 228 (1979); *Carlson v. Green,* 446 U.S. 14 (1980). Recent cases have declined to extend a *Bivens* remedy to any other contexts and stated that further expansion of *Bivens* is a "disfavored judicial activity." *Ziglar,* 582 U.S. at 135 (declining to extend *Bivens* to Fifth Amendment due process/conditions of confinement/abuse and equal protection claims and to Fourth/Fifth Amendment strip search claims); *Egbert v. Boule*, 142 S. Ct. 1793 (2022) (no *Bivens* remedy for First Amendment retaliation claim or Fourth Amendment excessive force claim).

When presented with a proposed *Bivens* claim, a district court must undertake a two-step inquiry. *See Hernandez v. Mesa,* 140 S. Ct. 735, 741 (2020). First, a court asks whether the case

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

presents a new *Bivens* context, *i.e.*, whether it is meaningfully different from the three cases in which the Supreme Court previously implied a damages action. *Ziglar,* 582 U.S. at 138-140. Second, if a claim arises in a new context, the court must consider whether any "special factors" indicate that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Id*. If even one reason gives the court pause before extending *Bivens* into a new context, the court cannot recognize a *Bivens* remedy. *Hernandez,* 140 S. Ct. at 743.

### Count 1

Throughout the Complaint, Plaintiff asserts that Defendants retaliated against him because he filed grievances and pursued a "civil rights action claim." The Supreme Court, however, has held that there is no *Bivens* action for a federal official's retaliation for exercising a First Amendment right. *See Egbert,* 142 S. Ct. at 213. Even before *Egbert,* Courts of Appeals were reaching a similar conclusion in this, and other, First Amendment contexts. *See, e.g., Doe v. Meron*, 929 F.3d 153, 167-70 (4th Cir. 2019); *Vega v. United States*, 881 F.3d 1146 (9th Cir. 2018). *But see Smadi v. True, et al.,* 783 F. App'x 633 (7th Cir. 2019) (requiring briefing on whether a court might recognize a First Amendment claim for damages under *Bivens* prior to dismissal). And, "[n]ationwide, district courts seem[ed] to be in agreement that, post-*Abbasi,* prisoners have no right to bring a *Bivens* action for violation of the First Amendment." *Harris v. Dunbar*, No. 17-cv-536-WTL, 2018 WL 3574736, at *3 (S.D. Ind. July 25, 2018) (citations omitted). Therefore, it is now clear that "recognizing a First Amendment retaliation claim would be an extension of *Bivens* into a new context." *Sargent v. Barfield,* No. 2021 WL 2473805, at *2 (N.D. Ill. June 17, 2021).

The Court further finds special factors preclude expansion of *Bivens* to Plaintiff's First Amendment claims. As been recognized in this district, Plaintiff has other avenues of relief through the prison's administrative remedies program. *See Flournoy v. Sproul*, 2023 WL 1069293,

at *2-3 (S.D. Ill. Jan. 27, 2023) ("this alternative remedy need not match the scope of relief available under *Bivens*"). Additionally, recognizing an implied damages remedy for retaliation claims would come at substantial costs to the public and individual governmental staff. *Egbert,* 142 S. Ct at 1807. As the Supreme Court observed:

> A plaintiff can turn practically any adverse action into grounds for a retaliation claim. And, "[b]ecause an official's state of mind is easy to allege and hard to disprove, insubstantial claims that turn on [retaliatory] intent may be less amenable to summary disposition." *Crawford-El v. Britton*, 523 U.S. 574, 584-85 (1998). Even a frivolous retaliation claim "threaten[s] to set off broad-ranging discovery in which there is often no clear end to the relevant evidence." *Nieves v. Bartlett,* 139 S. Ct. 1715, 1725 (2019) (internal quotation marks omitted). "[U]ndoubtedly," then, the "prospect of personal liability" under the First Amendment would lead "to new difficulties and expense." *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988).

*Id.* Therefore, "Congress is in a better position to decide whether or not the public interest would be served by imposing a damages action." *Id.* (citations and quotations excluded). Due to these special factors counseling hesitations in the expansion of *Bivens*, Plaintiff's claims that Defendants retaliated against him for exercising his First Amendments rights are dismissed with prejudice.

### Counts 4, 8, 11, and 12

For similar reasons stated above, the Court also dismisses Counts 4, 8, 11, and 12. Plaintiff's allegations concerning his conditions of confinement, harassment by planting contraband in his possession, and an improper disciplinary hearing are not recognized claims in which an implied damages remedy is available under *Bivens* case law. Each claim presents a new *Bivens* context, and courts have found "special factors counseling hesitation," which preclude extending *Bivens* to each of these types of claims. *See Oden v. True,* No. 18-cv-600-GCS, 2020 WL 4049922 (S.D. Ill. July 20, 2020) (Eighth Amendment conditions of confinement); *Sebolt v. Tyndall,* No. 19-cv-00429-JPH-DLP, 2021 WL 4948959, (S.D. Ind. Oct. 25, 2021) (Eighth Amendment conditions of confinement); *Fiorito v. Segal,* No. 20-1559, 2022 WL 4809726, at *3 (7th Cir. Oct. 3, 2022) (procedural due process claim due to faulty disciplinary proceedings

Page 10 of 20

resulting in reduction in good-time credits); *Goree v. Serio,* 735 F. App'x 894, 895 (7th Cir. 2018) (procedural due process claim arising from administrative and disciplinary proceedings). Some of these special factors include the prison's grievance procedure available to Plaintiff and inaction on the part of Congress to provide prisoners with a statutory damages remedy for prisoner mistreatment.[4] Accordingly, Counts 4, 8, 11, and 12 are dismissed with prejudice.

### Count 2

The Court finds that Plaintiff's claims of deliberate indifference asserted against Defendants Sproul, Harbison, Richardson, and Pass in Count 2 are not, at the pleading stage, meaningfully different from *Carlson v. Green,* 443 U.S. 14 (1983), in which the Supreme Court recognized an implied damages remedy for an Eighth Amendment deliberate indifference claim. To state a claim based on deficient medical care, a plaintiff must plead that he 1) suffered from an objectively serious medical condition, and 2) an official's deliberate indifference to that condition. "A prison official acts with deliberate indifference when he knows of and disregards an excessive risk to inmate health or safety." *Cesal v. Moats,* 851 F. 3d 714, 722 (7th Cir. 2017).

Here, Plaintiff has stated a viable claim against Defendant Sproul for refusing to provide him medical supplies for his colostomy from June 11, 2021, through June 25, 2021. (Doc. 28, p. 9). At this early stage, the Court finds that the claim is akin to the one brought in *Carlson* and does not represent an explicit departure from this precedent.

Plaintiff's other allegations regarding deliberate indifference to his various medical conditions, however, are dismissed without prejudice for failure to satisfy the pleading *Twombly*

---

[4] *See Oden,* 2020 WL 4049922, at *6 ("By passing the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 *et seq.*, the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e, and the Prison Rape Elimination Act of 2003, 34 U.S.C. § 30301 *et seq.,* Congress had ample opportunity to consider the kinds of remedies appropriate to redress wrongs committed in prison. In none of these acts did Congress authorize damage remedies. The PLRA, which overhauled the prison litigation system, is particularly significant, because it 'suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment.' (quoting Abbasi, 137 S. Ct. 1843)).

pleading standard. Plaintiff claims that while at Marion, he had "medically necessary healthcare, diagnoses, tests, treatments and surgical procedures that were overdue." He was advised by Sproul, Harbison, Richardson, and Pass that such care would be "provided when time and resources permit." (Doc. 28, p. 9). These generalized allegations lack the specificity to render Plaintiff's claim plausible against each Defendant and do not give Defendants "fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (citations omitted). *See also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plaintiff provides a list of over twenty different medical conditions, many of which are objectively serious, but he does not specify which condition is at issue or what type of care, treatment, or procedure was required but then delayed or denied due to the conduct on the part of each Defendant. In fact, he does not state any factual allegations regarding his interactions or encounters with Defendants. Because Plaintiff has not provided sufficient information to state a viable Eighth Amendment claim against Defendants Harbison, Pass, and Richardson for delaying or denying him "medically necessary healthcare," Count 2 is dismissed without prejudice as to these Defendants. Count 2 survives preliminary review as to Defendant Sproul only to the extent that Plaintiff is asserting Sproul denied him colostomy supplies from June 11, 2021, through June 25, 2021.

### Counts 3 and 7

Even if the Court assumes without deciding that the claims for unconstitutional conditions of confinement may proceed post-*Abbasi* and *Egbert,* Counts 3 and 7 still do not survive Section 1915A screening.[5]  Plaintiff claims that Sproul, Harbison, Pass, and Richardson placed him in "the hole" for twenty days from November 4 through November 24, 2021, without cause. (Doc. 28, p. 11). Again, on August 2, 2022, a day prior to an outside medical procedure, Plaintiff was placed

---

[5] The Court notes that Plaintiff's allegation that placement in "the hole" amounted to unconstitutional conditions of confinement likely presents a new extension of *Bivens*. *See Oden,* 2020 WL 4049922, at *7; *Skyberg v. Marske,* No. 22-cv-591-JDP, 2022 WL 17415064 (W.D. Wisc. Dec. 5, 2022).

in "the hole" by Sproul and Morehead without any justification. (*Id.* at p. 12). Both experiences, exacerbated his "known chronic care medical complexities." He states that conditions in "the hole" are not conducive for providing self-care and was cruel and unusual punishment.

Plaintiff has set forth insufficient allegations to state a claim for a constitutional deprivation. The Eighth Amendment prohibits prison conditions that amount to cruel and unusual punishment. The amendment reaches "beyond barbarous physical punishment" to prohibit "'the unnecessary and wanton infliction of pain.'" *Harris v. Fleming,* 839 F.2d 1232, 1234 (7th Cir. 1988) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346-47, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). Other than stating he could not provide self-care, Plaintiff has not described in anyway the conditions he experienced while in "the hole." He does not have a constitutional right to choose where he is housed at USP Marion, and it is not clear what conditions caused a constitutional deprivation.

To the extent Plaintiff is claiming that Defendants acted with deliberate indifference to a serious medical need for placing him in "the hole," such claim also fails. Again, he has not pled with sufficient specificity how placing him in "the hole" put him at serious risk of harm or described the conduct on the part of each Defendant that constituted deliberate indifference. Accordingly, Counts 3 and 7 are dismissed without prejudice.

### Count 5

In violation of his First Amendment free speech rights, Plaintiff claims that his contacts were "purged precluding the ability to communicate with family, friends, attorneys, and others by telephone, electronic messaging or mail for weeks." He also was unable to communicate with Senator Tammy Duckworth. He brings these claims against Special Services Investigators Schneider and Huckleberry, who refused to approve any contacts for weeks.

Although it had been questioned in this Circuit whether relief for First Amendment free

speech violations was foreclosed by *Bivens, see Smadi v. True,* 783 F. App'x 633, 634 (7th Cir. 2019), the Supreme Court's guidance in *Egbert* narrowing the scope *Bivens* claims has provided clarity. Plaintiff's free speech claim, "share virtually nothing in common with *Bivens, Davis,* and *Carlson,*" and thus, presents a new *Bivens* context. *Clark v. True,* No. 20-cv-00049-JPG, 2021 WL 3860461, at *2 (S.D. Ill. Aug. 30, 2021). As many courts have found, there are inadequate grounds for expanding *Bivens* to free speech claims. *See Id.* at *3 (granting motion to dismiss First Amendment claim for violation of free speech when the plaintiff's electronic messaging and computer privileges were suspended) ("Courts across the country have taken the same position on this issue. The Supreme Court has not extended Bivens to a claim arising under the First Amendment") (citations omitted). Thus, Count 5 is dismissed with prejudice.

**Count 6**

Plaintiff asserts that on June 13 and August 3, 2022, Sproul and Morehead used "belly and hand restraints, with a martin box" when he was transported for a medical appointment. (Doc. 28, p. 12). Plaintiff states that these excessive restraints had not previously been used on him when he was transported to other medical appointments and were used contrary to protocol and without justification. The use of full restraints caused him increased pain and suffering, additional damage to his knee, and exacerbated his gastrointestinal medical issues.

Count 6 is dismissed. To the extent Plaintiff is alleging excessive force for the misuse of restraints, the allegations present a new context for a *Bivens* claim. The Supreme Court has not extended *Bivens* to claims against federal prison officials for the use of excessive force under the Eighth Amendment. *See Ajaj v. Fozzard,* No. 14-cv-JPG, 2023 WL 2989654, at *4 (S.D. Ill. Apr. 18, 2023) (citing *Silva v. United States,* 45 F. 4th 1134, 1137 (10th Cir. 2022)). *See also Alsop v. Fed. Bureau of Prisons,* No. 22-1933, 2022 WL 16734497, at *3 (3d Cir. Nov. 7, 2022) (allegations of excessive force "are not a basis for relief under *Bivens*"); *Egbert,* 142 St. Ct. 1804 (no *Bivens*

cause of action for excessive force under the Fourth Amendment). Additionally, a special factor exists counseling hesitation in allowing the claim to go forward. The Federal Bureau of Prisons through the Administrative Remedy Program provides inmates, including Plaintiff, with an "alternative remedial structure for complaints about the conditions of their confinement, including an officer's use of excessive force." *Ajaj,* 2023 WL 2989654, at \*6 (citing *Egbert,* 142 S. Ct. at 1806-07). As Judge Gilbert of this district recently observed in granting a motion to dismiss an Eighth Amendment excessive force claim brought under *Bivens*:

> The Supreme Court in *Egbert* made clear that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure. If that structure exists, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action…An alternative remedial structure forecloses a *Bivens* claim even it does not provide complete relief.

*Id.* (internal quotations and citations omitted). As the claim for excessive force presents a new context, and a special factor exists precluding expansion, Count 6 is dismissed with prejudice as to Plaintiff's claim of excessive force for the use of restraints.

To the extent Plaintiff is asserting that Defendants acted with deliberate indifference to a serious medical need, he also has failed to state a claim. While the Court can plausibly infer that Sproul and Morehead knew Plaintiff had various medical conditions, he does not plead sufficient facts to support the contention that they acted with deliberate indifference. There is nothing in the Complaint suggesting that Plaintiff communicated to Defendants that the restraints were causing him injury or pain or that Defendants disregarded a medical permit or orders from a medical provider in directing that he be placed in full restraints. Deliberate indifference requires for Defendants to have known and then disregarded a risk to Plaintiff's safety. Because Plaintiff has failed to plead Defendants had actual knowledge of harm, Count 6 is dismissed without prejudice to the extent Plaintiff is claiming Sproul and Morehead acted with deliberate indifference to a

serious medical need in using full restraints.

**Count 9**

Plaintiff asserts that Williams and Schneider confiscated his legal property with the intention of preventing his pursuit of a "civil rights action claim and all other legal efforts." (Doc. 28, p. 13).

Again, the Court does not find that a denial of access to courts claim is cognizable under *Bivens. See Kaufmann v. Bowers,* No. 20-cv-120-RJD, 2021 WL 5140582 (S.D. Ill. Nov. 4, 2021); *Kluball v. Bell,* No. 20-cv-01272-SLD, 2022 WL 782734 (C.D. Ill. Mar. 14, 2022). *See also Vega v. United States,* 881 F. 3d 1146, 1153 (9th Cir. 2019) (the Supreme Court has not "expanded *Bivens* in the context of a prisoner's First Amendment access to court"). However, even if it were, Plaintiff has failed to state a claim. Plaintiff does not plead that conduct on part of Defendants actually hindered his ability pursue a nonfrivolous claim, only that their intention was to impede legal efforts. *See Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (A plaintiff must connect the defendants' conduct with his "inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions"). Accordingly, there is no indication he was denied access to the courts, and Count 9 is dismissed with prejudice.

**Count 10**

Plaintiff alleges that Sproul, Harbison, Pass, and Richardson refused to place him on a medical hold, which would prevent him from being transferred to another facility, even though Plaintiff had follow-up consultations and future procedures and treatments scheduled. (Doc. 28, p. 10). Sproul and Daun then referred Plaintiff for a transfer. They attempted to transfer Plaintiff on September 22, 2022, but the air marshals denied "custody transfer" due to his medical conditions. Even though the air marshals advised that the transfer "was not aligned with [his] medical history," Sproul and Daun had him transferred on October 4, 2022, to a facility that was unable to provide

Page 16 of 20

for his medical needs. (*Id.* at p. 13). Plaintiff states that his transfer from Marion "left several medically necessary healthcare issues unresolved." (*Id.* at p. 10).

Count 10 will be dismissed as to Harbison, Pass, and Richardson. Plaintiff has no constitutional right to be housed at a certain federal facility and failure on the part of Harbison, Pass, and Richardson not to place him on a medical hold, standing alone, does not state a claim for deliberate indifference. Although Plaintiff may have preferred to continue treatment with his providers at and around Marion, he does not allege that Harbison, Pass, and Richardson were aware of and disregarded a serious risk to his health that would occur if he transferred to another facility.

Count 10, however, will be allowed to proceed against Sproul and Daun. Plaintiff states that these Defendants knew that he should not travel with his medical conditions and that they were aware that the facility to which he was transferring would be unable to provide him the medical treatment he required. They did not, however, prevent his transfer, and rather, referred him for a transfer. Whether this claim fits squarely within the confines of *Carlson* or presents new context is not clear at this stage. The issue of whether this claim is now foreclosed by the United States Supreme Court's decisions in *Ziglar* or *Egbert* can be addressed, with the benefit of briefing, in a motion filed pursuant to Federal Rule of Civil Procedure 12 or 56. For now, Count 10 shall proceed against Sproul and Daun.

## PENDING MOTIONS

Plaintiff has filed two motions requesting the Court to Compel Marion to provide medical records and administrative files. (Doc. 29, 30). Both motions are **DENIED.** Discovery in this case has not yet started, as Defendants have not been served and the Court has not entered a trial practice schedule. Once a schedule has been entered, Plaintiff can seek the requested documents from Defendants through a request for production of documents pursuant to Federal Rule of Civil Procedure 34. In light of the Court ruling on these motions, the Motion for Status and Expedited

Ruling is **DENIED as moot**. (Doc. 31). The Clerk of Court will be directed to send Plaintiff a copy of the docket sheet.

**DISPOSITION**

Pursuant to Section 1915A, the Complaint survives preliminary review. **COUNT 2** will proceed in part against Sproul to the extent Sproul denied Plaintiff colostomy supplies from June 11, 2021 through June 25, 2021. The remaining allegations of deliberate indifference in **COUNT 2** are **DISMISSED without prejudice**. **COUNT 10** will proceed against Sproul and Daun and is **DISMISSED without prejudice** as to Harbison, Pass, and Richardson. **COUNTS 1, 4, 5, 8, 9, 11,** and **12** are **DISMISSED with prejudice. COUNTS 3** and **7** are **DISMISSED without prejudice** and **COUNT 6** is **DISMISSED in part with prejudice** and **in part without prejudice** as set forth above. As there are no surviving claims against Defendants Harbison, Pass, Richardson, Schneider, Huckleberry, Morehead, Lance, Bradley, Downen, Williams, Brooks, and Keller, the Clerk is **DIRECTED** to terminate them as parties in this case.

The Motions to Compel are **DENIED.** (Doc. 29, 30). The Motion for Status is **DENIED as moot.** (Doc. 31). The Clerk of Court is **DIRECTED** to send Plaintiff a copy of the docket sheet and to correct the docket as provided in footnote 1. The Clerk also **SHALL** enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court is further **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants Sproul and Daun; the Clerk shall issue the completed summons. The United States Marshals **SHALL** serve Defendants Sproul and Duan pursuant to Federal Rule of Civil Procedure 4(e). All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

Pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to

Page 18 of 20

or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though his application to proceed without payment of fees was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 28, 2023**

_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.