# UNITED STATES DISTRICT COURT

for the
Southern District of Illinois

| | |
|---|---|
| Charles A. Wolfe II, | ) |
| Plaintiff, | ) Case Number: 21-cv-01471-SPM |
| | ) |
| | ) *(Clerk's Office will provide)* |
| *Plaintiff(s)/Petitioner(s)* | ) **AMENDED COMPLAINT** |
| v. | ) ☐ CIVIL RIGHTS COMPLAINT |
| Dan Sproul, | ) pursuant to 42 U.S.C. §1983 (State Prisoner) |
| Elizabeth Harbison, | ) ☒ CIVIL RIGHTS COMPLAINT |
| Randall Pass, | ) pursuant to 28 U.S.C. §1331 (Federal Prisoner) |
| Josh Richardson, | ) ☐ CIVIL COMPLAINT |
| MRS. Daun, | ) pursuant to the Federal Tort Claims Act, 28 U.S.C. |
| *Defendant(s)/Respondent(s)* | ) §§1346, 2671-2680, or other law |

SIS Officer Schneider, SIS Officer Huckleberry, Unit Officer G. Williams, Defendants.

I.    **JURISDICTION:** June 11, 2021 through October 04, 2022, I was assigned to the Federal Prison Camp, Marion, IL 62959

**Plaintiff:**

A.    Plaintiff's mailing address, register number, and present place of confinement. October 12, 2023 to current:
Charles A. Wolfe II,    41808-044
FMC Butner
P.O. Box 1600
Butner, NC 27059

**Defendant #1:**

B.    Defendant __Dan Sproul__ is employed as
(a)       (Name of First Defendant)
__Warden__
(b)       (Position/Title)

with __USP Marion and Federal Prison Camp, Marion, IL__
(c)       (Employer's Name and Address)

__4500 Prison Road, Marion, IL 62959    ;    P.O. Box 2000__

At the time the claim(s) alleged this complaint arose, was Defendant #1 employed by the state, local, or federal government?    ☒ Yes    ☐ No

If your answer is YES, briefly explain:
Warden USP Marion and Federal Prison camp, Marion, IL

Rev. 10/3/19

1

**Defendant #2:**

C.    Defendant ___Elizabeth Harbison_____is employed as

(Name of Second Defendant)

___Health Services Administrator_____
(Position/Title)

with __USP Marion and FPC Marion_____
(Employer's Name and Address)

__4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000___

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or _federal government?_    ☒ Yes    ☐ No

If you answer is YES, briefly explain:
Health Services Administrator - USP & FPC Marion, IL

**Additional Defendant(s) (if any):**

D.    Using the outline set forth above, identify any additional Defendant(s).

#3- Defendant:    Randall Pass        is employed as

Acting Clinical Director

with    USP and FPC Marion

4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000

At the time the claim(s) alleged in this complaint arose, Defendant #3 was employed by the federal government. YES

Randall Pass was the Clinical Director USP & FPC Marion

Defendant #4:

E.    Defendant    Josh Richardson       is employed as a

Family Nurse Practitioner  /  Healthcare provider

with USP and FPC Marion

Rev. 10/3/19

2

4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000

At the time the claim(s) alleged in this complaint arose, Defendant #4 was employed by the federal government. YES

FNP Josh Richardson is a Healthcare provider / mid-level practitioner with USP Marion and Federal Prison Camp, Marion, IL

Defendant #5:

F. Defendant Mrs. Daun is employed as the Case Management Coordinator with USP Marion and Federal Prison Camp, Marion, IL

4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000

At the time of the claim(s) alleged in this complaint arose, Defendant #5 was employed by the federal government. YES

Mrs. Daun was the Case Manager Coordinator(CMC), USP Marion, IL & FPC Marion, IL

Defendant #6:

G. Defendant SIS Officer Schneider is employed as a Special Investigative Services Officer with USP Marion and Federal Prison Camp, Marion, IL

4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000

At the time the claim(s) alleged arose, Defendant #6 was employed by the federal government. YES

Officer Schneider was a Special Investigative Services Officer with USP Marion and Federal Prison Camp, Marion, IL

Defendant #7:

H. Defendant SIS Officer Huckleberry is employed as a Special Investigative Services Officer with USP marion and Federal Prison Camp, Marion, IL

4500 Prison Road, Marion, IL 62959 ; P.O. Box 2000

At the time of the claim(s) alleged arose, Defendant #7 was empoyed by the federal government. YES

Officer Huckleberry was a Special Investigative Services Officer with USP Marion and federal Prison Camp, Marion, IL

Defendant #8:

I. Defendant Officer G. Williams is employed as the Federal Prison Camp daytime

3

Unit Officer, Marion, IL

4500 Prison Road, Marion, IL 62959  ;  P.O. Box 2000

At the time the claim(s) alleged in this complaint arose, Defendant #8 was employed by the federal government.  YES

Officer G. Williams was the Federal Prison Camp daytime Unit Officer, Marion, IL

4

## II.   PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?   ☐Yes ☒No

B.   If your answer to "A" is YES, describe each lawsuit in the space below.  If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline.  **List ALL lawsuits in any jurisdiction and indicate the court where they were filed to the best of your ability**, including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)).  FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

1.   Parties to previous lawsuits:
Plaintiff(s):

Defendant(s):

2.   Court (if federal court, name of the district; if state court, name of the county):

3.   Docket number:

4.   Name of Judge to whom case was assigned:

5.   Type of case (for example: Was it a habeas corpus or civil rights action?):

6.   Disposition of case (for example: Was the case dismissed?  Was it appealed?  Is it still pending?):

Rev. 10/3/19

5

7.    Approximate date of filing lawsuit:

8.    Approximate date of disposition:

9.    Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?"

III.    **GRIEVANCE PROCEDURE**

A.    Is there a prisoner grievance procedure in the institution? ☒ Yes    ☐ No

B.    Did you present the facts relating to your complaint in the prisoner grievance procedure?    ☒ Yes    ☐ No

C.    If your answer is YES,
1.    What steps did you take?    When available, I utilized the Marion's Administrative Remedy Program in good faith with do diligence

2.    What was the result?    VARIED. The majority of the good faith attempts were either unanswered or otherwise unsuccessful

D.    If your answer is NO, explain why not.

E.    If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?    ☐ Yes    ☐ No

F.    If your answer is YES,
1.    What steps did you take?

Rev. 10/3/19

6

2.    What was the result?

G.    If your answer is NO, explain why not.

H.    Attach copies of your request for an administrative remedy and any response you received. If you cannot do so, explain why not:

On August 10, 2022, the substantial majority of my Administrative Remedy filings were confiscated in a retaliatory action designed to impede and limit this Civil Rights Action and to deny access to the courts in all other pending matters.

When available a conservative total of 40 grievances were pursued over an 18 month period. These included Marion's Health Services; retaliation; and the conditions of confinement.

Marion's Administrative Remedy procedure does not adhere to the Purpose and Scope of the FBOP Admin Remedy Program, P1330.18, and was challenged and exhausted in a detailed Administrative Remedy filing. Access to Marion's grievance process limits inmates to one outstanding complaint at a time, delaying the ability to seek Formal Admin Remedy. Marion frequently fails to respond timely, offers extraneous responses, rejects submission without proper cause and sometimes refuses to respond alltogether in an effort to stifle or deter inmates, making the Admin Remedy process unavailable. However, I improvised, was resourceful and undeterred in the filing of numerous attempts that apply to the claims raised in this action.

CLAIM THREE: This event transpired on August 10, 2022, so the grievance filings were not part of the retaliatory confiscation and are included herein. 1146846

CLAIM FOUR: Included within the January 12, 2023 complaint mailing were copies of disciplinary charges, disciplinary hearing, as well as Administrative Remedy filings, exhibits and supporting documents that will corroborate my claim of retaliation and of a false allegation.

CONCLUSION: It is manifestly clear that the FBOP Admin Remedy Program is a sham as a matter of course and in its written and/or unwritten policy.

• A prime example is the attempted appeal of the false allegation of cell phone possession.

• The DHO report was withheld from 08/24/22-10/21/22, 58 days, well beyond the 10 day requirement.

• When the DHO report, documents and copies were received the appeal was filed promptly and timely.

Rev. 10/3/19

• Jurisdiction was soundly established in AUG'22 with a letter & 2 SENSITIVE Admin Remedy filings to NC in efforts to obtain the DHO & UDC, but was rejected by NC claiming lack of jurisdiction since FTC-OK transfer.

7

H. CONTINUED:

- The Central Office Appeal was timely filed by Plaintiff claiming the Central Office retains jurisdiction over the entire Federal Bureau of Prisons and included exhibits to support efforts to receive reports before the transfer to FTC-OK City work cadre program.
- The Central Office rejected appeal directing Plaintiff to submit to the SC Regional Office.
- The appeal was promptly refiled to SC Regional, but rejected claiming untimely because incident was 08/09/22.
- Plaintiff resent appeal to Central Office, but it was rejected stating concur with rationale of SC Regional.

These facts support Plaintiff's claim that special factors are warranted because the avenues of relief are not available through the FBOP Admin Remedy Program, PS 1330.18.

DATED: April 01, 2024   ;   Respectfully,

Charles Wolfe II

8

## IV.    STATEMENT OF CLAIM

A.    State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated. Do not include legal arguments or citations. If you wish to present legal arguments or citations, file a separate memorandum of law. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

CLAIM ONE: June 11, 2021 through October 04, 2022, Elizabeth Harbison, Randall Pass, and Josh Richardson (hereinafter "Marion's Health Services Team"), and Dan Sproul. Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs.

1) Elementary principles of the cruel and unusual punishment clause establish the BOP's obligation to provide Medically Necessary Healthcare. Reckless endangerment for Plaintiff's frequent, sometimes excruciating and unbearable pains, medical complexities and Medically Necessary Healthcare was cruel and unusual punishment. SEE Affidavit in Support of Complaint; Urology, Abdominal/Gastrointestinal and Otolaryngology/ENT 1 - 41.

2) June 11, 2021 through June 25, 2021, Elizabeth Harbison, Randall Pass , Josh Richardson and Dan Sproul refused to provide chronic care colostomy pouches and refused to allow/authorize my family to provide the colostomy medical supplies. SEE Affidavit in Support of Complaint: COLOSTOMY SUPPLIES 42-52.

CLAIM TWO: 09/22/22 - 10/04/22, Dan Sproul and MRS. Daun.

Eighth Amendment Claim for deliberate indifference to serious medical needs.

Sproul and Daun knew that FTC-OK City work cadre program transfer would be unable to provide Plaintiff with the Medically Necessary healthcare required. However, they did not prevent the transfer but instead orchestrated a second transfer to FTC-OK City knowing the Air Marshals denied the custody transfer for medical, while also knowing the facility was not within the 500 drive miles from home, so did not adhere to the statutory language of Public Law 115-391, First Step Act.

Rev. 10/3/19

9

CLAIM THREE: Eighth Amendment cruel and unusual punishment violations.

On August 10, 2022, Unit Officer Williams, SIS Officer Schneider and SIS Officer Huckleberry accessed my locked legal locker located in the modified law library and confiscated the entire content.

The contents of my legal locker consisted of:

· Current and past Court documents. Hindered ability to continue legal eforts in active cases.

· Current and past Remedy Grievance submissions, "1331" research materials.

· Transcripts, exhibits, etc. for active court cases.

· An abundance of medical records.

· All of my active "2255" and "3582" filings, motions, research & court documents.

· Four years of extensive research materials and work product.

After the confiscation of the contents of my legal locker, the entire contents were promptly disposed of putting my active court cases in jeopardy.

All attempts to recover the contents of legal, medical and others have failed.

Court documents can be replaced at a cost of .50 per page and Medical records can be reproduced at a cost of .10 per page, but Plaintiff is unable to pay fees for the voluminous documents confiscated. Fifth Amendment Due Process Violation Claim.

Plaintiff has made FOIA requests for a small portion of the confiscated material available through FOIA in an attempt to recover a portion of the confiscated materials. The FOIA requests are still pending.

CLAIM FOUR:   False cell phone allegation;

As a retaliatory action for my good faith efforts to receive Medically Necessary Healthcare, my utilization of the FBOP Administrative Remedy Program, and the filing of a Civil Rights Action claim against Warden Dan Sproul and select staff members. On 08/09/22, I was falsely accused of and charged with possessing a cell phone.

RELIEF SOUGHT: Restoral of 41 days Good Conduct Time and removal from my record.

SEE AFFIDAVIT IN SUPPORT OF COMPLAINT: FALSE ALLEGATION: 62 - 70

10

## V.    REQUEST FOR RELIEF

State exactly what you want this court to do for you. If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255. Copies of these forms are available from the clerk's office.

### PRAYER

Plaintiff demands judgment against defendants:

A. For the sum of 3,900,000 for compensatory damages to Plaintiff for all the damages Plaintiff has suffered from the unlawful, unreasonable and coercive acts of defendants.

B. Enjoin the defendants, their officers, agents, employees, subordinates, successors in office, and all those acting in concert or participation with them to take whatever actions will ensure lawful conditions of confinement are afforded to inmates at the (CONT.)

## VI.    JURY DEMAND *(check one box below)*

The plaintiff ☒ does ☐ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

| Signed on: | APRIL 01, 2024 | | *Charles Wolfe II* |
|---|---|---|---|
| | (date) | | Signature of Plaintiff |
| | Old N. Carolina HWY 75 | | Charles A. Wolfe II |
| | Street Address | | Printed Name |
| | Butner, NC 27059 | | 41808-044 |
| | City, State, Zip | | Prisoner Register Number |

_____
Signature of Attorney (if any)

Rev. 10/3/19

11

V.    REQUEST FOR RELIEF    (CONTINUED):

correctional facilities.

   C. PUNITIVE DAMAGES:  11,700,000

   D. CLAIM THREE:  The contents confiscated were invaluable and either costly to recreate or otherwise irreplaceable. So I am requesting this Honorable Court to order the replacement of the replaceable content and the recreation of the contents that are able to be recreated.

   E. I am requesting this Honorable Court award judgment for the Federal Bureau of Prisons to reinstate the 41 days of Good Time Credits and expunge the incident from my prison record.

   Plaintiff requests this Honorable Court grant to Plaintiff all other relief that is just and proper in the means.

Respectfully submitted this 1st Day of April 2024,

*Charles Wolfe II*

## CERTIFICATE OF COMPLIANCE

   I, Charles A. Wolfe II, certify that a true and correct copy is mailed this 1st day of April 2024, utilizing the institutional legal mail system, with postage fees prepaid and properly addressed.

Respectfully submitted this 1st day of April 2024,

*Charles Wolfe II*

12

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

Charles A. Wolfe II,                    )
    Plaintiff,                          )
  v.                                      ) Case No. 21-cv-01471-SPM
Dan Sproul, et al,                      )
    Defendants.                         )

## AFFIDAVIT IN SUPPORT OF COMPLAINT UNDER 28 USC § 1331

I, Charles A. Wolfe II, declare:

My name is Charles A. Wolfe II. I am over 18 years of age. I am currently incarcerated at FMC Butner, NC. I am fully competent to present this Affidavit and I have personal knowledge of the facts stated in this Affidavit. To my knowledge, all the facts stated herein are true and correct. I am the Plaintiff in Case No. 21-cv-01471-SPM. I present this Affidavit in support of myself, Charles A. Wolfe II claiming Civil Rights and Constitutional Rights violations.

### UROLOGY:

1. The deliberate indifference of Dan Sproul, Elizabeth Harbison, Randall Pass and Josh Richardson to my Urological Medically Necessary Care is responsible for my terminal medical diagnosis by allowing the unchecked progression of my metastatic adenocarcinoma solid mass colonic primary.

2. During my 16 months at the Federal Prison Camp, Marion, IL, 3-4 grievances were filed regarding Urological Medically Necessary Care and past due ureter stent removal, as well as several electronic requests. Responses included when time and resources permit.

3. During my 06/21/21 - 10/04/22(16 month) stay at FPC Marion, the right-side ureter stent was DUE to be removed and replaced 3 times. If the exchanges were timely the metastatic adenocarcinoma would have been visualized earlier as a lesion or tumor and not allowed to progress to the current MASS extending from the Distal Urethra to the Apex of my Prostate.

4. In JUN'2019, due to a radiation induced stricture in my right-side ureter causing Hydronephrosis in my right kidney, a ureter stent was placed.

5. Ureter stents are designed and DUE to be replaced in 6 months to prevent formation

1

of deposits, kidney stones, or encrustation.

6. On 05/18/20, following the cystoscope, the right-sided ureter stent was replaced.

7. On 06/12/20, a CT Scan displayed Hydronephrosis correlated with stent malfunction.

8. A Urology consult was scheduled for OCT'2020, but did not happen before transfer.

9. During my 7 months at FCC Oakdale, IA, Stage 3 chronic kidney disease was diagnosed. Urology and all other Medically Necessary Care consults, treatments and procedures were documented in the Bureau Electronic Medical Records(BEMR) system, but did not transpire.

10. On 06/11/21, during my intake processing at Marion, IL, FNP Josh Richardson acknowledged multiple Medically Necessary Care consults, treatments and procedures in BEMR that were OVERDUE and not delivered, including ureter stent replacement.

11. On 08/31/21, 2½ months later, the CT Scan confirmed right-sided stent malfunction, Hydronephrosis and Caliecstasis in my right kidney.

12. From 2019 - 2022, multiple Blood Chemistry lab results displayed renal insufficiencies.

13. Another 8 months elapsed before a Urological consult was scheduled for 05/04/22 at Mercy Urological in Paducah, KY, but was canceled by Mercy on 05/03/22 due to Marion's failure to transmit requested background medical records and information.

14. Mercy Urological mailed medical records to this Honorable Court at my request, following the receipt of my letter of authorization, that coincide and confirm the facts referenced herein related to Mercy Urological, Paducah, KY.

15. On 06/22/22, 7 weeks later, I arrived at a scheduled consult, but was informed the consult was again canceled due to Marion's failure to transmit medical records.

16. Fortunately, I hand carried Urological medical records allowing the consult to be conducted as a walk-in.

17. FNP Christina Thweatt reviewed my medical history and recommended a CT Scan and lab work. At my request the order was written as STAT and Officer Williams called Marion for approval for the tests STAT.

18. FNP Thweatt requested my return in 2 weeks(July 06) if possible, to review the CT Scan and lab results and to schedule the Urological Surgical intervention.

2

19. Marion was again deliberately indifferent to Medically Necessary Care and delayed my return to Mercy Urological until 08/30/22, 10 weeks later.

20. On 08/30/22, Mercy Urological reviewed the results with me and scheduled the right-side ureter exchange and Cystoscopy for 09/20/22, 3 weeks later.

21. Marion again refused to deliver Medically Necessary Care and I was transferred to FTC-OK City work cadre on 10/04/22, 2 weeks after the surgery was scheduled for.

22. On 10/06/22, Dr. Hardy(FTC-OK) acknowledged past due stent replacement along with other Medically Necessary Care that was not delivered timely or adequately.

23. On 10/13/22, Dr. Traci Carney, Clinical Director, FTC-OK, acknowledged multiple Medically Necessary Care issues not delivered at Marion that were documented in BEMR and elevated me to CARE3 Level to force my expedited transfer as Marion and I knew FTC-OK City was a transfer center and not equipped to deliver my Medical Care.

24. On 12/21/22, at FMC Ft. Worth, Dr. Todd Young, MD, Urology, confirmed the past due ureter stent exchange, encrustation, hematuria, dysuria and recommended Shockwave Lithotripsy and stent removal and replacement.

25. On 05/05/23, during the right-side ureter exchange, the Cystoscopy visualized a mass in my Urethra. The biopsies Pathology findings were Adenocarcinoma - Colonic. Federal Prison Camp Marion's deliberate indifference and cruel and unusual punishment is responsible for the unchecked progression of metastatic adenocarcinoma mass.

### ABDOMINAL/GASTROINTESTINAL:

26. On 02/28/20, constant abdominal pain with episodes escalating to severe and excruciating, unbearable pains commenced.

27. On 06/12/20, a CT Scan identified hernia mesh graft material failure and a parastomal herniation of a portion of the mesh/graft material into the ostomy site.

28. On 01/06/21, Dr. Patrick Savoy, MD, General Surgeon, recognized hernias and hernia mesh failure. He recommended a Colonoscopy/Pouchoscopy and CT Scan urgent.

29. On 06/11/21, FNP Josh Richardson & 06/23/21 Dr. Randall Pass acknowledged hernias and hernia mesh failure.

30. On 08/31/21, $2\frac{1}{2}$ months later, a CT Scan confirmed hernias and hernia mesh failure.

31. On 09/14/21, Dr. Clay DeMattei, MD, General Surgeon, conducted a Pouchoscopy and

3

reviewed the 08/31/21 CT Scan advising myself and Dr. Pass that the surgical intervention was beyond his expertise or any other surgeon in So. Illinois.

32. Dr. DeMattei recommended Dr. Mutch, Chief of section of Colon/Rectal Surgery BJC.

33. On 01/20/22, 4 months later, Dr. Matthew Mutch(my previous surgeon) recommended a CT Scan STAT and a follow-up with a Minimally Invasive Surgeon(MIS) at Barnes.

34. The 01/20/22 CT Scan confirmed hernias, mesh displacement and mesh migration.

35. On 06/13/22, 5 months later, Dr. Sara Holden, MD, MIS, Barnes, recommended minimally invasive, possible open, excision of current mesh, placement of new mesh with hernias repaired, with possible relocation of ostomy, abdominal wall reconstruct.

36. FNP Richardson & Dr. Pass acknowledged Dr. Holden's assessment and recommendation, but refused to deliver before my 10/04/22 transfer, 4 months later.

The deliberate indifference to the constant pain with episodes escalating to severe and excruciating, sometimes unbearable, was cruel and unusual punishment, violating my Eighth Amendment Rights to Medical Aid.

### OTOLARYNOLOGY/ENT:

37. On 06/11/21 FNP Josh Richardson & 06/23/21 Dr. Pass, acknowledged Eustachian Tube disorders, sinusitis, middle ear infections and frequent ear pains.

38. On 08/31/21, 2½ months later, a CT Scan of Paranasal Sinuses confirmed eustachian tubes disorder, opacification of mastoid process and cysts in maxillary sinuses.

39. In late April 2022, 8 months later, Dr. Barry Rosenblum, MD, ENT, recommended surgical intervention; Eustachian Tubes balloon dilation, balloon septoplasty and tympanostomy with placement of ventilation tube, with a 3 month follow-up.

40. On 08/03/22, Dr. Rosenblum conducted a left-side only Eustachian Tube balloon dilation as Marion denied approval to conduct the right-side simultaneously.

41. Marion refused to deliver the surgeon's recommendation of the follow-up.

The deliberate indifference to the pain, suffering and additional permanent hearing losses was cruel and unusual punishment violating my Eight Amendment Right.

### COLOSTOMY SUPPLIES:

42. On 06/11/21, Josh Richardson recognized my permanent colostomy, but advised that neither USP Marion or the Federal Prison Camp had colostomy pouches in stock

4

because they had not had an adult in custody with a colostomy in a while.

43. I requested to have my family deliver from Saint Louis an unopened box of ten to allow time for Marion to obtain colostomy pouches, but was denied by Richardson who explained that would violate the Federal Bureau of Prisons(FBOP) policy.

44. I advised Richardson that my colostomy maintenance included changing pouches every 3 days and that the current pouch was due to be changed because FTC-OKC, OK was out of colostomy pouches when I departed.

45. Alternatively, at the same time, I requested that Marion obtain colostomy pouches from a local medical supply location in Marion or Carbondale, but Richardson said Marion was not able to.

46. On Day Two, 06/12/21, my existing pouch became compromised to gas emissions, a known precursor to being completely compromised.

47. On Day Three, 06/13/21, my existing pouch became completely compromised to fecal matter, leaking from the seal. Having a permanent colostomy for $8\frac{1}{2}$ years, since NOV. 8, 2012, I knew this serious medical issue was untenable.

48. Everyday and at every opportunity, I notified Health Services staff and duty officers of the emergent medical condition.

49. I was forced to live in a 7' x 10' room equipped with toilet paper and a wash cloth only covering my stoma in a futile attempt to contain and control the fecal matter as stomal output is unpredictable and frequent.

50. Every morning the nurses continued to inform me that they did not have replacement pouches to provide for Plaintiff's emergent medical necessity.

51. On 06/23/21, during a Clinical Encounter with Dr. Randall Pass, I reminded him of my still desperate need for colostomy pouches.

52. On Friday morning, 06/25/21, day 15, Josh Richardson arrived with one colostomy pouch informing me that staff went to a local medical supply outlet and a bought a box of 10. Richardson custom cut one to size explaining he would bring more to the camp as the quarantine period was over.

5

## CONDITIONS OF CONFINEMENT:

53. From 06/11/21 - 06/28/21, Michael Poteete and I were placed in a 7' x 10' cell that was architecturally designed for one person only, with one concrete bunk, forcing one to sleep on the floor next to the integrated commode/sink appliance. The heat index regularly exceed 100°, the air ventilation system was not operating and the window air flow was non-existent due to the weather and the window facing an enclosed courtyard within a 4-sided, two story building structure, restricting any potential airflow. There was no duress alarm or other available communication with the duty officer that was not stationed on the floor and very rarely provided any supervision.

## RETALIATORY ACTIONS:

November 04, 2021 through November 24, 2021, by Dan Sproul, Elizabeth Harbison, Randall Pass, Josh Richardson and Lt. Hendricksen. Undocumented, unwarranted, 20-day placement in the hole for exercising my First Amendment Rights and Eighth Amendment Rights to receive Medically Necessary care.

54. On 11/04/21, Officer G. Williams informed me that I was directed to go to the USP Marion and that I would be staying there for a while.

55. After arrival Lt. Hendricksen told me that Marion has 1300 inmates, they are short staffed and the medical is doing the best they can.

56. Though requested, SIS Lt. Mitchell, duty officers, Health services staff and Mrs. Daun refused to provide written notification on why I was placed in the "hole".

57. It is required per FBOP policy to provide written explanation within 24 hours of a violation or if a valid penal accusation is being investigated.This did not happen because there was no validity for the retaliatory action.

57. Mrs. Daun said I need to keep you here until you understand why you are here because I don't want to have to put you right back in. It was clear that it was an effort to deter my good faith efforts to receive Medically Necessary Healthcare.

58. Counselor J. Jarrett came to the "hole' and told me that SIS refused to explain why I was in the "hole", so he did not know why either.

59. In FEB'22, SIS purged all of my Trulinc contacts preventing me from communicating with family, friends and all others. Additionally SIS changed the settings so all contacts would have to be manually approved.

6

60. Counselor J. Jarrett and Case Manager Polley both contacted SIS to encourage them to reapprove my contacts to allow normal access to outside communications.

61. On about 03/16/22, SIS blocked my Trulinc access to communicate with Senator Tammy Duckworth, IL. That communication remains blocked as of today.

<u>FALSE ALLEGATION OF POSSESSING A CELL PHONE:</u>

62. In about APR'22, at the behest of Counselor J. Jarrett and Richard Gross, I wrote a Letter of Support for Richard(Ricky) after SIS directed CO Johns(Now Lt.) to plant a cell phone in Ricky's locker in retaliation for him assisting his staff warehouse bosses with the semi-annual inventory.

63. With support from Counselor Jarrett, Ricky's boss(Tammy Hottes), myself and others, Ricky successfully defended the false allegation after spending 30 days in the "hole".

64. At this time I informed Counselor Jarrett that my letter of support may cause SIS to retaliate similarly against me. I stated that if they try, you know it is false. Dennis Pashia, Ricky's closest friend, chose not to write a Letter of Support, citing fear of retaliation by SIS.

65. On 08/09/22, an orchestrated plan to fabricate a false allegation was executed during a FIVE plus hour mass search of the housing unit. Five hours after this began, my name was called by officers and I was escorted to the USP.

66. Upon arrival, Lt. Hendricksen told me a cell phone was found in my locker. I reacted by forcefully stating that was not true!

67. On 08/15/22, Counselor J. Jarrett came to the "hole" for the UDC and told me that Lt. Hendricksen said I accused him(Jarrett) of planting the phone. I forcefully, loudly, and demonstrably told Jarrett that was a blatant lie! After Jarrett settled me down somewhat, he advised he knew I did not have a cell phone.

68. On 08/24/22, after the introduction to Ms. E. Keller in Kansas, I asked for a continuance of the hearing to have my requested staff members(Chaplain's Holem and Harmon, Counselor Jarrett, Case Manager Polley and Lt. Johns) to be present. E. Keller denied several requests for a continuance. Keller advised it was untenable for her to write or type my detailed defense, so again I requested a continuance,

7

to be able to prepare my defense in a written cognizable format that could be transmitted electronically.

69. The loss of 41 days Good Conduct Time is deprivation of a liberty interest and was retaliation promulgated by the exercise of my First Amendment right to free speech and my Eighth Amendment Right to Medical Aid, as well as the pursuit of the current Civil Rights Complaint that was known by Marion by DEC'21, nine months prior to the false allegations and resulting disciplinary actions.

70. On August 24, 2022, DHO E. Keller violated my constitutional rights implementing improper disciplinary hearing procedures.

71. On June 13, 2022 & August 03, 2022, Dan Sproul and Captain Morehead violated my Eighth Amendment Right order excessive force and restraints when transporting Plaintiff to medical appointments.

72. On August 02, 2022, Dan Sproul and Captain Morehead violated my Eight Amendment cruel and unusual punishment actions by placing me in the "hole" in the early afternoon for an August 03, 2022 medical procedure.

## DECLARATION

I declare under penalty of perjury that the foregoing information and allegations stated above are true and correct to the best of my knowledge.

Executed on April 01, 2024[2],                Charles Wolfe II

## CERTIFICATE OF COMPLIANCE

I certify that a true and correct copy is mailed utilizing the institutional mail system, properly addressed, first class postage prepaid, on this 1st day of April 2024.              Charles Wolfe II

---

[2]. PURSUANT TO THE PRISON MAILBOX RULE, A PRO-SE PRISONER'S PLEADINGS ARE DEEMED TO HAVE BEEN FILED ON THE DATE THE PRISONER SUBMITS THE PLEADING TO THE PRISON AUTHORITIES FOR MAILING. (CASUY v. CAIN, 450 F.3d 601, 604 (5th Cir. 2006)(CITING HOUSTON v. LACK, 487 U.S. 266, (1988)).

8

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

RE: 1146846

REQUEST FOR ADMINISTRATIVE REMEDY
DUPLICATE COPY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Wolfe II, Charles A. | 41808-044 | San Antonio | FMC Fort Worth |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST:** This grievance is focused on the OBSTRUCTION OF JUSTICE perpretrated by Camp Unit Officer G. Williams and SIS Officers Schneider & Huckleberry on 08/10/22. Between 1500-1530 hrs, Williams, Schneider and Huckleberry, directed all inmates to clear out the North End of the TV, Hobbycraft, Trulinc and designated Modified Law Library areas in preparation for their covert operation. After they thought all witnesses were removed, all 3 entered the designated Modified Law Library with malice of forethought, accessing my secured legal locker, removing 3 well organized Accordion Legal files, that were well marked and easily identifiable as critical components of my 4 years of legal documents pertaining to my 3 active cases. Officer Williams was keenly aware of the specific location and critical nature of this legal property as during routine walk throughs he had accessed in my presence. This was targeted action with the specific intent, designed to prevent my access to the Courts, prevent my pursuit of the Civil Rights Action Claim and retaliation for the good faith utilization of the FBOP Admin Remedy Program. Unbeknownst to the 3 perpretrators initially, food service workers were in the dining facility in clear sight of the table used for this action. After Williams recognized the workers were watching, he waved them out of the windows, but the covert action was already exposed. During Schneider & Huckleberry's rummaging through my legal property, CM Rushing entered the area. Shortly, another inmate entered the side door by the loading dock and witnessed Schneider and Huckleberry rifling through my legal property as Williams and Rushing stood by watching. After completion of their nefarious activities, my legal property was placed in trash bags and hauled away by the SIS Officers in their Government truck. Weeks later, my Unit Team advised that SIS disposed of this legal property. Over the last 4 years, in excess of 4000 hours were constructively utilized on legal research in accumulating the contents of this confiscated legal property. These documents were invaluable and either costly to re-create or otherwise irreplaceable.

I am requesting that Williams, Schneider & Huckleberry be advised they are individually and collectively liable for violating my Constitutional Rights and will be held responsible until all of the confiscated legal property is returned.

| 10/26/22     DATE | Respectfully, | _Charles A. Wolfe II_     SIGNATURE OF REQUESTER |
|---|---|---|

**Part B- RESPONSE**

| DATE | WARDEN OR REGIONAL DIRECTOR |
|---|---|

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**THIRD COPY: RETURN TO INMATE**

CASE NUMBER: _____

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT: _____

| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |
|---|---|

USP LVN

BP-229(13)
APRIL 1982

U.S. Department of Justice

Federal Bureau of Prisons

*REMEDY ID# UNKN*

B. Harris 12/14/2022

RE: 1146846

Regional Administrative Remedy Appeal

Type or use ball–point pen. If attachments are needed, submit four copies. One copy of the completed BP–DIR–9 including any attachments must be submitted with this appeal.

| From: Wolfe II, Charles A. | 41808-044 | San Antonio | FMC Fort Worth |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL:** This Regional Appeal is proper pursuant to P1330.18 § 542.18, If the IM does not receive a response within the time allotted for reply, including extension, the IM may consider the absence a denial at that level. This Regional Appeal is focused on ~~the discrete actions individuals in their efforts~~ the OBSTRUCTION OF JUSTICE perpetrated by Camp Unit Officer G. Williams and SIS Officers Schneider & Huckleberry on 08/10/22.

Between 1500-1530 hrs, Williams, Schneider & Huckleberry, directed all inmates to clear out the North End of the TV, Hobbycraft, Trulinc and designated Modified Law Library areas in preparation for their covert operation. After they thought all witnesses were removed, all 3 entered the designated Modified Law Library with malice of forethought, accessing my secured legal locker, removing 3 well organized Accordion LEGAL Files, that were well marked and easily identifiable as critical components of my 4 years of legal documents pertaining to my 3 active cases. Officer Williams was keenly aware of the specific location and critical nature of this legal property as during routine walk throughs he had accessed in my presence. This was targeted action with the specific intent, designed to prevent my access to the Courts, prevent my pursuit of the Civil Rights Action Claim and retaliation for the good faith utilization of the FBOP Admin Remedy Program. Unbeknownst to the 3 perpetrators initially, food service workers were in the dining facility in clear sight of the table used for this action. After Williams recognized the workers were watching, he waved them out of the windows, but the covert action was already exposed. During Schneider & Huckleberry's rummaging through my legal property, CM Rushing entered the area. Shortly, another inmate entered the side door by the loading dock and witnessed Schneider & Huckleberry rifling through my legal property as Williams and Rushing stood by watching. After completion of their nefarious activities, my legal property was placed in trash bags and hauled away by the SIS Officers in their Government truck. Weeks later, my Unit Team advised that SIS disposed of this legal property.

Over the last 4 years, in excess of 4000 hrs were constructively utilized on legal research in accumulating the contents of this confiscated legal property. These documents were invaluable and either costly to re-create or otherwise irreplaceable.

I am requesting that Williams, Schneider & Huckleberry be advised they are individually and collectively liable for violating my Constitutional Rights and will be held responsible until all of the confiscated legal property is returned.

| DECEMBER 19, 2022 | RESPECTFULLY, | Charles Wolfe II |
|---|---|---|
| DATE | | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**

|  |  |
|---|---|
| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                     CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: _____

_____     _____     _____
USP LVN   DATE     Previous editions not usable     SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
APRIL 1982

U.S. Department of Justice RE: 1146846    DATED: 1/22/23    **Central Office Administrative Remedy Appeal** — MAR

Federal Bureau of Prisons    Ther12—    1-22-23 Respectfully, Charles Wolfe II - OBSTRUCTION

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

| From: Wolfe II, Charles A. | 41808-044 | San Antonio | FMC Fort Worth |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL:** This Central Office Appeal is proper due to a faulty rejection notice received 01/19/23, dated 01/05/23. The Regional Appeal was properly filed pursuant to P1330.18 § 542.18, If the IM does not receive a response within the time allotted for reply, including extension, the IM may consider the absence a denial at that level. RE: 1146846

This appeal is squarely focused on the OBSTRUCTION OF JUSTICE perpetrated by Camp Unit Officer G. Williams and SIS Officers Schneider and Huckleberry on 08/10/22.

Between 1500-1530 hrs, Williams, Schneider & Huckleberry, directed all inmates to clear out the North End of the TV, Hobbycraft, Trulincs and designated, Modified Law Library areas in preparation for their covert operation. After they thought all witnesses were removed, all 3 entered the designated Modified Law Library with malice of forethought, accessing my secured legal locker, removing 3 well organized accordion LEGAL Files, that were well marked and easily identifiable as critical components of my 4 years of legal documents pertaining to my 3 active cases. Officer Williams was keenly aware of the specific location and critical nature of this legal property as during routine walk throughs he had accessed in my presence. This was targeted action with the specific intent, designed to prevent my access to the courts, prevent my pursuit of the Civil Rights Action Claim and retaliation for the good faith utilization of the FBOP Admin Remedy Program. Unbeknownst to the 3 perpetrators initially, food service workers were in the dining facility in clear sight of the table used for this action. After Williams recognized the workers were watching, he waved them out of the windows, but the covert action was already exposed. During Schneider & Huckleberry's rummaging through my legal property, CM Rushing entered the area. Shortly another inmate entered the side door by the loading dock and witnessed Schneider & Huckleberry rifling through my legal property as Williams and Rushing stood by watching. After completion of their nefarious activities, my legal property was placed in trash bags and hauled away by the SIS Officers in their Government truck. Weeks later, my Unit Team advised that SIS disposed of this legal property. Over the last 4 years, in excess of 4000 hrs were constructively utilized on legal research in accumulating the contents of this confiscated legal property. These documents were invaluable and either costly to re-create or otherwise irreplaceable. I request all 3 be advised they are liable for violating my Constitutional Rights.    Charles Wolfe II    SIGNATURE OF REQUESTER

**Part B—RESPONSE**

| | | |
|---|---|---|
| DATE | | GENERAL COUNSEL |

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _____

Part C-RECEIPT    CASE NUMBER: _____

| Return to: | | | |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

| DATE | SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL | BP-231(13) APRIL 1982 |
|---|---|---|

USP LVN

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JANUARY 5, 2023


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTH CENTRAL REGIONAL OFFICE

TO  : CHARLES WOLFE, 41808-044
      FORT WORTH ADMINISTRATIVE FMC   UNT: SAN   QTR: S12-019L
      3150 HORTON ROAD
      FORT WORTH,  TX 76119



FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 1146846-R1      REGIONAL APPEAL
DATE RECEIVED   : JANUARY 5, 2023
SUBJECT 1       : PERSONAL LEGAL MATERIALS AND LAW BOOKS
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REJECT REASON 2: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                 WRONG LEVEL.  YOU SHOULD HAVE FILED AT THE
                 INSTITUTION,  REGIONAL OFFICE, OR  CENTRAL
                 OFFICE LEVEL.

REMARKS         : SENTRY DOES NOT SHOW A BP-9 WAS SUBMITTED FOR THIS
                  REMEDY. YOU MUST FILE TO THE REGION THAT YOU ARE
                  CURRENTLY IN (SOUTH CENTRAL REGION).

Received 01/19/23; 1700 hrs; in San Antonio Unit from Officer Mijares

Charles A. Wolfe II, 41808-044
FMC Butner
P.O. Box 1600
Butner, NC 27059

Clerk of Court
So. Dist. IL - E. S+L Division

CONTENTS HEREIN

1) Amended Complaint - 12 pages

2) Affidavit in Support ~ 8 pages

3) Remedy ID: 1146846; Institution; Regional; Central; Rejection-faulty (4 pages)

04/01/24                              Charles Wolfe II





Charles A. Wolfe II
41808-044
FMC Butner
P.O. Box 1600
Butner, NC 27059



U.S. POSTAGE PAID
FCM LG ENV
BUTNER, NC 27509
APR 02, 2024

$0.00
R2309Y155299-06

62201

Retail

UNITED STATES
POSTAL SERVICE ®

RDC 99

MAIL CLEARED
US MARSHALS

⇔41808-044⇔
United Sta District Ct
So District of IL
750 Missouri AVE
Clerk of Court, Rm 14

RECEIVED

APR 03 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

FEDERAL MEDICAL CENTER
P.O. BOX 1600
BUTNER, NORTH CAROLINA 27509

DATE:

SPECIAL/LEGAL MAIL

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has been neither opened or inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer enclosed correspondence for forwarding to another addressee, please return the enclosed to the above address.