IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLES WOLFE,
#41808-044,

        Plaintiff,

v.

DAN SPROUL,
ELIZABETH HARBISON,
RANDALL PASS,
JOSH RICHARDSON,
MRS. DAUN,
SCHNEIDER,
HUCKLEBERRY, and
WILLIAMS,

        Defendants.

Case No. 21-cv-01471-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    Although this case has hardly progressed, it has a lengthy history. Plaintiff Charles Wolfe, an inmate in the custody of the Federal Bureau of Prisons and currently incarcerated at Butner Federal Medical Center, commenced this action on November 22, 2021, by filing a document entitled "Notice of Intent to File Civil Rights Action Claim under *Bivens v. Six Unknown Federal Narcotics Agents.*" (Doc. 1). The Court struck the document finding that Plaintiff had not filed an operative complaint in accordance with Federal Rules of Civil Procedure 3 and 8. (Doc. 2). Plaintiff was granted leave to file a valid complaint by October 5, 2022. Plaintiff then sought four extensions, which were granted, and he filed the Complaint on January 17, 2023. (Doc. 28). After the Court conducted a merit review of the Complaint and served Defendants Sproul and Daun, Defendants filed a Motion to Dismiss. (Doc. 47). Plaintiff missed the deadline to respond, and a few days later, Plaintiff filed a Motion for Extension of Time to Amend. (Doc. 48). Plaintiff was

given until October 17, 2023, to file an amended complaint or a response in opposition to the Motion to Dismiss. Plaintiff then filed a motion requesting a stay of the case or in the alternative a voluntary dismissal. (Doc. 50). The Court dismissed the case on October 31, 2023. (Doc. 53).

In November and December of 2023, Plaintiff filed requests to reopen the case and requested time to amend. (Doc. 54, 55, 57). The motions were granted, the case reopened, the Motion to Dismiss filed by Defendants reinstated, and Plaintiff was given until February 19, 2024, to file an amended complaint or a response in opposition to the Motion to Dismiss. (Doc. 58). Plaintiff was granted two extensions, and he filed the First Amended Complaint on April 8, 2024. (Doc. 64).

The First Amended Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A. Any portion of the First Amended Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). The Court must also consider whether any claims are improperly joined and subject to severance or dismissal. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Dorsey v. Varga,* 55 F. 4th 1094, 1108 (7th Cir. 2022) (recommending that district courts "assess whether joinder is proper under Rule 20 before considering the merits").

## THE FIRST AMENDED COMPLAINT

In the First Amended Complaint, Plaintiff claims that his constitutional rights were violated while incarcerated at the United States Penitentiary in Marion, Illinois (USP Marion) from June 11, 2021, through October 4, 2022. (Doc. 64). He states that he was provided inadequate health care for his serious medical conditions and alleges other misconduct by staff at USP Marion. Plaintiff asserts that his property was confiscated, he was falsely accused of possessing a cell phone, he was retaliated against for requesting medical care, and he was held in unconstitutional conditions.

*Urological Conditions - Adenocarcinoma*

Prior to his transfer to USP Marion, Plaintiff had a ureteral stent implanted in June of 2019 to treat hydronephrosis in his right kidney. (Doc. 64, p. 13). The stent was to be replaced within six months to prevent the formation of deposits, kidney stones, or incrustation. (*Id.* at p. 13-14). The stent was not replaced, however, until May 18, 2020. (*Id.* at p. 14). The following month, a CT scan displayed hydronephrosis correlated with stent malfunction. Plaintiff was scheduled for a urology consultation in October, but the appointment never occurred. (*Id.*).

While at Federal Correctional Institution Oakdale (FCI Oakdale) Plaintiff was diagnosed with stage three chronic kidney disease. (Doc. 64, p. 14). Plaintiff asserts that he did not receive the consultations, treatments, and procedures that were prescribed and recorded in his medical records while at FCI Oakdale. He was transferred to USP Marion on June 11, 2021. (*Id.*).

During the intake process at USP Marion, Nurse Practitioner Josh Richardson noted that prescribed appointments and treatments for Plaintiff's stage three kidney disease had not been performed and were overdue. (Doc. 64, p. 14). Richardson also noted that Plaintiff was overdue for a stent replacement. (*Id.*). A CT scan was taken on August 31, 2021, which again confirmed stent malfunction, hydronephrosis, and caliectasis in his right kidney. Eight months passed before Plaintiff was finally scheduled for a urology consultation at Mercy Urological in Paduca, Kentucky, on May 4, 2022. This appointment, however, was canceled because USP Marion had failed to transmit Plaintiff's medical records and information to Mercy Urological. (*Id.*).

The appointment was rescheduled for June 22, 2022. (Doc. 64, p. 14). When Plaintiff arrived at the facility, he was informed that the appointment was again canceled because USP Marion had not send the proper medical records prior to the appointment. Plaintiff states that he fortunately had brought hard copies of his medical records with him and so he was able to see a health care provider. The nurse practitioner did a CT scan and lab work. Plaintiff was to return in

two weeks to review the results. (*Id.*).

Plaintiff did not return to Mercy Urological until August 30, 2022. (Doc. 64, p. 15). Ten weeks after his initial consultation. After reviewing Plaintiff's diagnostic results, Mercy Urological scheduled a ureteral stent exchange and cystoscopy for September 20, 2022. USP Marion did not schedule the procedure, and Plaintiff was transferred to Federal Transfer Center Oklahoma City (FTC Oklahoma City) on October 4, 2022. (*Id.*).

At FTC Oklahoma City, Plaintiff was treated by Dr. Traci Carney. (Doc. 64, p.15). Dr. Carney acknowledged that Plaintiff was passed due for necessary care, including a stent replacement, and that he was not given medically necessary care at USP Marion. Dr. Carney elevated Plaintiff to "Care Level 3" to expedite Plaintiff's transfer to a facility that was equipped to treat his medical conditions. At some point, Plaintiff was transferred to Federal Medical Center Fort Worth. Plaintiff was treated by Dr. Todd Young, who confirmed that a ureteral stent exchange was passed due, and that Plaintiff had developed "encrustation, hematuria, dysuria." Dr. Young recommended "shock-wave lithotripsy and stent removal and replacement." (*Id.*).

On May 5, 2023, during the ureteral exchange, a mass was discovered in Plaintiff's urethra. (Doc. 64, p. 15). The mass was diagnosed as adenocarcinoma. Plaintiff asserts that because he did not receive timely and necessary medical care at USP Marion, the adenocarcinoma mass went undiagnosed and was able to progress. (*Id.*).

***Abdominal Conditions***

Prior to his transfer to USP Marion, on June 12, 2020, after complaining of abdominal pain, a CT scan revealed that Plaintiff had hernia mesh failure. (Doc. 64, p. 15). On January 6, 2021, Plaintiff was seen by a general surgeon, Dr. Savor, who recommended a colonoscopy/pouchoscopy and CT scan.

After Plaintiff's transfer to USP Marion, Dr. Pass and Nurse Practitioner Richardson

acknowledged the hernia mesh failure. (*Id.*). A CT scan was not taken until August, and in September, a general surgeon, Dr. Clay DeMattei conducted a pouchoscopy. (*Id.* at p. 15-16). Dr. DeMattei informed Plaintiff and Dr. Pass that the type of surgical intervention needed was beyond his expertise. (*Id.*). Plaintiff then had an appointment with Dr. Mutch, a colon and rectal surgeon at Barnes-Jewish Hospital, who referred Plaintiff to a minimally invasive surgeon at the hospital. Plaintiff was later seen by Dr. Sara Holden. Dr. Holden recommended "minimally invasive, possible open, excision of current mesh, placement of new mesh with hernias repaired, with possible relocation of ostomy, abdominal wall reconstruct." Plaintiff states that Dr. Pass and Richardson knew of this recommendation, but they refused to have the procedure scheduled before Plaintiff's transfer on October 4, 2022. (*Id.*).

*Otolaryngology*

Plaintiff also suffers from Eustachian tube disorder, sinusitis, middle ear infections, and frequent ear pain. (Doc. 64, p. 16). On August 31, 2021, a CT scan confirmed that Plaintiff had eustachian tube disorder, opacification of mastoid process, and cysts in the maxillary sinuses. The following year, in April 2022, Plaintiff was seen by an ENT, Dr. Barry Rosenblum, who recommended surgical intervention with a three-month follow-up appointment. On August 3, 2022, Dr. Rosenblum performed a Eustachian tube balloon dilation on the left side only. USP Marion denied approval for the procedure to be conduced on the right side simultaneously. (*Id.*). Plaintiff also did not have a follow-up appointment, as recommended. Because of the inadequate care, Plaintiff suffered pain and permanent hearing loss. (*Id.*).

*Colostomy Supplies*

Plaintiff alleges that during the intake process at USP Marion on June 11, 2021, Richardson advised Plaintiff that neither USP Marion nor the federal prison camp had colostomy pouches in stock because it had been a while since the facility had housed an individual with a colostomy.

(Doc. 64, p. 17). Plaintiff told Richardson that he needs to change his pouch every three days and that his current pouch was due to be changed because his previous facility, FTC Oklahoma City, was also out of colostomy pouches when he departed. Plaintiff asked if his family, who resided in St. Louis, could deliver an unopened box of ten pouches to allow time for USP Marion to obtain colostomy supplies. Richardson denied the request due to policy of the Federal Bureau of Prisons. Plaintiff also suggested purchasing pouches from the local medical supply store. Richardson said he "was not able to." (*Id.*).

By June 13, Plaintiff's pouch had deteriorated, and fecal matter was leaking. Plaintiff continued to notify health services staff and duty officers of his condition. (Doc. 64, p. 17). Each morning, the nurses would inform Plaintiff that they did not have replacement pouches. Plaintiff had to cover his stoma with toilet paper and a washcloth in an attempt to prevent the output from running everywhere. On June 23, Plaintiff saw Dr. Pass and reminded him that he was in desperate need of colostomy pouches. On June 25, Richardson arrived at Plaintiff's cell with one pouch. Richardson said that staff went to the local medical supply outlet and bought a box of ten pouches. Richardson explained he would be bringing more, as the quarantine period had ended. (*Id.*).

**Conditions of Confinement**

Plaintiff states that from June 11, 2021, through June 28, 2021, he was housed in a small cell with a cellmate that was designed for a single person. (Doc. 64, p. 18). There was only one bunk bed, and Plaintiff was forced to sleep on the floor. (*Id.*).

**Retaliatory Actions**

Plaintiff alleges that from November 4, 2021, until November 24, 2021, he was placed in "the hole" for exercising his "First Amendment rights and Eighth Amendment rights to receive medical care." (Doc. 64, p. 18). Plaintiff states that he was not provided any type of written notice that he had violated institutional rules or was under investigation. He asserts that he was placed in

the hole in order to deter his "good faith efforts to receive medically necessary healthcare." (*Id.*).

In February 2022, Special Investigative Services (SIS), removed all of Plaintiff's Trulinc contacts from his contact list, preventing him from communicating with family, friends, and others. (Doc. 64, p. 18). Additionally, SIS changed the procedures so that all of Plaintiff's contacts would have to be manually approved. (*Id.*). In March, SIS blocked Plaintiff's ability to communicate with Senator Tammy Duckworth. (*Id.* at p. 19). Plaintiff states that he is still unable to send communications to Senator Duckworth. (*Id.*).

In August 2022, a mass search was conducted in Plaintiff's housing unit. (Doc. 64, p. 19). Following the search, Plaintiff was falsely accused of hiding a cell phone in his locker. Plaintiff claims that he was not allowed to properly prepare for his defense prior to the disciplinary hearing. Keller, who conducted the hearing, denied several of his requests for a continuance. Following a disciplinary hearing, Plaintiff lost forty-one days of good time credits. (*Id.*).

Plaintiff states that on June 13, 2022, and August 3, 2022, Warden Sproul and Captain Morehead subjected him to excessive force by ordering that restraints be used when transporting Plaintiff to and from medical appointments. (Doc. 64, p. 20).

Plaintiff also alleges that on August 2, 2022, Warden Sproul and Captain Morehead subjected him to cruel and unusual punishment by placing him in the hole, prior to a medical procedure the following day, on August 3, 2022. (Doc. 64, p. 20).

*Transfer*

Plaintiff asserts that Warden Sproul and Case Management Coordinator Daun knew that FTC Oklahoma City would be unable to provide Plaintiff with necessary medical care for serious medical conditions, but on October 4, 2022, they transferred him anyways. (Doc. 64, p. 9). Before Plaintiff's transfer, Sproul and Daun had unsuccessfully attempted to transfer Plaintiff in September, but the air marshals denied custody of Plaintiff due to his ill health. Plaintiff also asserts

that the transfer violated the First Step Act, as FTC Oklahoma City was not within 500 miles of his home.

**PRELIMINARY DISMISSALS**

Plaintiff indicates that he is bringing his claims pursuant to 28 U.S.C. § 1331. (Doc. 64, p. 1). Plaintiff seeks compensatory and punitive damages. He also requests for the Court to:

> Enjoin the defendants, their officers, agents, employees, subordinates, successors in office, and all those acting in concert or participation with them to take whatever actions will ensure lawful conditions of confinement are afforded to inmates at the correctional facilities.

(*Id.* at p. 11).

The Court first dismisses Plaintiff's claim for injunctive relief as moot. Plaintiff has been transferred from USP Marion and is no longer subjected to the same unconstitutional conduct and conditions as alleged in the First Amended Complaint. Furthermore, because Plaintiff is suffering from several serious illnesses and receiving treatment for cancer, it is highly unlikely that Plaintiff will be returning to USP Marion and again exposed to the same illegal conduct. *See Lehn v. Holmes,* 364 F.3d 862, 871 (7th Cir.2004); *see also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir.1996). The claim for injunctive relief is also dismissed because Plaintiff cannot assert claims for relief on behalf of other inmates. *See Massey v. Helman*, 196 F. 3d 727, 739-40 (7th Cir. 1999) (a litigant "cannot assert the legal rights of a third party"). Plaintiff is only entitled to assert his own rights.

Next, to the extent Plaintiff is seeking monetary damages, the Court dismisses Plaintiff's claims regarding: (1) retaliatory conduct on the part of Defendants; (2) confiscation of his property on August 10, 2022; (3) being falsely accused of and charged with possession of a cell phone, and the implementation of improper procedures during the subsequent disciplinary hearing on August 24, 2022; (4) the conditions of his confinement in June of 2021; (5) the use of restraints during

transport to and from medical appointments; and (6) the deletion of names from Plaintiff's approved contact list. Plaintiff asserted similar allegations in the Complaint, and they were dismissed. (Doc. 32).[1] Reasserting these claims here in the First Amended Complaint has not cured the pleading deficiencies.

There is no Congressional authority to award damages to "plaintiffs whose constitutional rights [have been] violated by agents of the Federal government." *Ziglar v. Abbasi*, 582 U.S. 120 (2017). The Supreme Court has recognized an implied action for damages to compensate persons injured by federal officers only in a limited number of established contexts. *See Bivens, Six Unknown Named Agents,* 403 F. U.S. 388 (1971); *Egbert v. Boule,* 142 S. Ct. 1793 (2022). For the reasons stated in the previous merit review order, Plaintiff cannot proceed under *Bivens* and related case law on claims for retaliation, unconstitutional conditions of confinement, free speech violations, the use of excessive force, harassment, denial of access to the courts, and procedural due process violations. These claims would present a new extension of *Bivens,* and special factors exist counseling against the expansion of *Bivens*. (*See* Doc. 32, p. 8-16). Accordingly, these claims are again dismissed.

To the extent Plaintiff is claiming that his placement in "the hole" for almost three weeks in November 2021 and overnight in August 2022 violated his rights under the Eighth Amendment, such claims are also dismissed.[2] (Doc. 32, p. 18, 20). Again, Plaintiff has failed to state a claim against Harbison, Pass, Richardson, Sproul, Morehead, and Hendrickson for cruel and unusual punishment. He does not describe his living environment while in the hole, and as the Court previously observed, "it is not clear what conditions caused a constitutional deprivation." (*Id.* at p. 13). Furthermore, even if Plaintiff had pled sufficient facts to establish an Eighth Amendment

---

[1] In the first Merit Review Order, the Court designated these claims as Counts 1, 4, 5, 6, 8, 9, 11, and 12. (Doc. 32, p. 6-7).
[2] In the first Merit Review Order, the Court designated these claims as Counts 3 and 7. (Doc. 32, p. 7).

claim for his conditions while in the hole, he would be barred from prosecuting this claim. Plaintiff's claim of cruel and unusual punishment for his time spent in the hole presents a new *Bivens* context and special factors exist to preclude the expansion of *Bivens* to this type of claim, which include "Congress's unwillingness to provide a damages remedy in this context, and giving appropriate deference to prison administrators." *See Oden v. True,* No. 18-cv-600-GCS, 2020 WL 4049922, at *2-7 (S.D. Ill. July 20, 2020); *Skyberg v. Marske,* No. 22-cv-591-JDP, 2022 WL 17415064 (W.D. Wisc. Dec. 5, 2022).

Finally, the Court dismisses Plaintiff's claim brought under the First Step Act. Plaintiff states that he was transferred to FTC-Oklahoma in violation of the First Step Act because the facility is not within 500 miles of his home. (Doc. 64, p. 9). Contrary to Plaintiff's assertion, the provision of the First Step Act he is referring to is not mandatory. The statute states that subject to certain considerations, including "the concerns of the Bureau of Prisons," and "to the extent practicable," a prisoner shall be placed in a facility that is within 500 driving miles of his primary residence. 18 U.S.C. §3621(b). Additionally, as many other district courts have found, the First Step Act does not provide "a private cause of action. *See, e.g., Cook v. Peters,* No. 23 CV 2211, 2024 WL 778134, at *2 (N.D. Ohio Feb. 26, 2024); *Azzara v. McFarland,* No. 17 Civ. 6902, 2019 WL 13246808, at *3 (S.D. N.Y. Mar. 29, 2019) ("Congress was perfectly capable of passing a law establishing a damages remedy to enforce the First Step Act. It did not.").

## DISCUSSION

Based on Plaintiff's allegations in the First Amended Complaint, the Court redesignates the remaining allegations as follows:

**Count 1:** Eighth Amendment deliberate indifference claim against Harbison, Pass, Richardson, and Sproul for failing to provide Plaintiff colostomy supplies from June 11, 2021, through June 25, 2021.

**Count 2:** Eighth Amendment deliberate indifference claim against Harbison,

|  |  |
|---|---|
|  | Pass, Richardson, and Sproul for delaying and/or denying care for Plaintiff's urological conditions. |
| **Count 3:** | Eighth Amendment deliberate indifference claim against Harbison, Pass, Richardson, and Sproul for delaying and/or denying care for Plaintiff's hernia mesh failure. |
| **Count 4:** | Eighth Amendment deliberate indifference claim against Harbison, Pass, Richardson, and Sproul for delaying and/or denying care for Plaintiff's otolaryngology conditions. |
| **Count 5:** | Eighth Amendment claim against Sproul and Daun for deliberate indifference to Plaintiff's serious medical needs in allowing him to transfer from USP Marion to FTC-Oklahoma. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[3] pleading standard.**

### Counts 1, 2, 3, 4, and 5

The Court finds that Plaintiff's claims of deliberate indifference to his serious medical needs asserted against Defendants Sproul, Harbison, Pass, Richardson, and Daun are not, at the pleading stage, meaningfully different from *Carlson v. Green,* 443 U.S. 14 (1983), in which the Supreme Court recognized an implied damages remedy for an Eighth Amendment deliberate indifference claim. To state a claim based on deficient medical care, a plaintiff must plead that he 1) suffered from an objectively serious medical condition, and 2) that the defendant actually knew of and disregarded a serious risk of harm. *See e.g., Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "A prison official acts with deliberate indifference when he knows of and disregards an excessive risk to inmate health or safety." *Cesal v. Moats,* 851 F. 3d 714, 722 (7th Cir. 2017).

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### Count 1

Here, Plaintiff has stated a claim against Richardson and Pass for denying Plaintiff colostomy supplies. Plaintiff states that he spoke to both Defendants about his need for colostomy pouches, but he continued to go without replacement pouches for two weeks. *See Williams v. Erickson,* 962 F. Supp. 2d 1038, 1042 (N.D. Ill. Aug. 21, 2013) (citing *Ferebee v. Cejas,* 161 F.3d 2 (4th Cir.1998) (unpublished); *Wellman v. Faulkner*, 715 F.2d 269, 274 (7th Cir.1983)).

Count 1 is dismissed, however, as to Sproul and Harbison. Plaintiff claims that Harbison and Sproul, along with Richardson and Pass, "refused to provide chronic care colostomy pouches." (Doc. 64, p. 9). Other than this conclusory statement, he does not provide any factual allegations supporting the inference that Sproul, the warden ad USP Marion, and Harbison, the health services administrator, knew that Plaintiff was in need of pouches and then failed to act.

### Count 2

Count 2 will proceed against Richardson. Plaintiff states that during the intake process on June 11, 2021, Richardson acknowledged that Plaintiff was in need of a stent replacement, but the procedure was not performed during his time at USP Marion, and he was not even seen by a urologist until June 22, 2022, over a year after Plaintiff's interaction with Richardson. This is sufficient to state a claim. *See Pyles v. Fahim,* 771 F. 3d 403, 412 (7th Cir. 2014).

Count 2 is dismissed as to Harbison, Pass, and Sproul. Plaintiff does not describe any act or omission on the part of these Defendants in relation to providing care for his urological conditions. It is not sufficient to make the conclusory statement that Harbison, Pass, and Sproul are responsible for Plaintiff's "terminal medical diagnosis by allowing the unchecked progression of [his] metastatic adenocarcinoma solid mass colonic primary." (Doc. 64, p. 13). *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to adequately state a claim).

### Counts 3 and 4

Counts 3 and 4 will proceed against Richardson and Pass. Plaintiff has sufficiently described their personal involvement in his medical care and that they were aware of his hernias, hernia mesh failure, and otolaryngology issues. As to these medical conditions, Plaintiff claims that needed appoints and care were delayed. He also did not receive the recommended surgery for his hernia mesh displacement and migration while at USP Marion, and he did not receive recommended procedures and care for his ear and sinus conditions.

Counts 3 and 4 are dismissed against Harbison and Sproul. Plaintiff does not provide any factual details from which the Court can plausibly infer that Sproul and Harbison acted with deliberate indifference with regards to Plaintiff's hernia and otolaryngology conditions. Nor can Harbison and Sproul be held liable simply because they were in supervisory positions. *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) ("a defendant cannot be liable under *Bivens* on the basis of respondeat superior or supervisory liability, rather, there must be individual participation and involvement by the defendant").

### Count 5

Plaintiff alleges that Sproul and Daun knew that FTC-Oklahoma would not be able to provide him with the medical care that he required but orchestrated his transfer anyways. (Doc. 64, p. 9). Additionally, they had him transferred even after the air marshals denied "custody transfer" due to his medical conditions. Throughout the First Amended Complaint, Plaintiff describes how he was transferred despite having procedures and appointments scheduled with outside providers. (*See* Doc. 64, p. 15-17). Thus, the transfer contributed to a delay in receiving necessary care.

For the same reasons stated in the previous merit review order (Doc. 32, p. 17), Count 5 survives preliminary review.

**PENDING MOTIONS**

Because Plaintiff has filed an amended complaint, the pending motion to dismiss is **DENIED as moot.** (Doc. 47). *See Johnson v. Dossey,* 515 F. 3d 778, 780 (7th Cir. 2008) ("When an amended complaint is filed, the prior pleading is withdrawn and the amended pleading is controlling.").

**DISPOSITION**

Pursuant to Section 1915A, the First Amended Complaint survives preliminary review. **COUNT 1** will proceed against Pass and Richardson and is **DISMISSED without prejudice** as to Harbison and Sproul. **COUNT 2** will proceed against Richardson and is **DISMISSED without prejudice** as to Harbison, Sproul, and Richardson. **COUNT 3** will proceed against Pass and Richardson and is **DISMISSED without prejudice** as to Harbison and Sproul. **COUNT 4** will proceed against Pass and Richardson and is **DISMISSED without prejudice** as to Harbison and Sproul. **COUNT 5** will proceed against Sproul and Daun. All claims against Harbison, Schneider, Huckleberry, and Williams are **DISMISSED**, and they shall be **TERMINATED** as parties on the docket.

The Clerk of Court is further **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants Pass and Richardson; the Clerk shall issue the completed summons. The United States Marshals **SHALL** serve Defendants Pass and Richardson pursuant to Federal Rule of Civil Procedure 4(e). All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

Pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the First Amended

Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the First Amended Complaint, and this Memorandum and Order.

All Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though his application to proceed without payment of fees was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: July 12, 2024**

                                                               *s/Stephen P. McGlynn*
                                                            **STEPHEN P. MCGLYNN**
                                                            **United States District Judge**