IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHARLES A. WOLFE, II,**<br><br>　　　　　　　　　**Plaintiff,**<br><br>v.<br><br>**DAN SPROUL,**<br>**RANDALL PASS,**<br>**JOSH RICHARDSON, and**<br>**MRS. DAUN,**<br><br>　　　　　　　　　**Defendants.** | Case No. 21-cv-01471-SPM |

### MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion to dismiss for failure to state a claim filed by Defendants Sproul, Pass, Richardson, and Daun. (Doc. 80). For the following reasons, the motion is denied.

Plaintiff Charles Wolfe, proceeding pro se, initiated this case while in the custody of the Federal Bureau of Prisons (BOP). Plaintiff asserts that while he was at the United States Penitentiary in Marion, Illinois (USP Marion), Defendants failed to provide constitutionally adequate treatment for his serious medical conditions. Following a merit review of the First Amendment Complaint pursuant to 28 U.S.C. §1915A, Plaintiff is litigating the following *Bivens* claims:

**Count 1:**　Eighth Amendment deliberate indifference claim against Pass and Richardson for failing to provide Plaintiff colostomy supplies from June 11, 2021, through June 25, 2021.

**Count 2:**　Eighth Amendment deliberate indifference claim against Richardson for delaying and/or denying care for Plaintiff's urological conditions.

      **Count 3:**      Eighth Amendment deliberate indifference claim against Pass and Richardson for delaying and/or denying care for Plaintiff's hernia mesh failure.

      **Count 4:**      Eighth Amendment deliberate indifference claim against Pass and Richardson for delaying and/or denying care for Plaintiff's otolaryngology conditions.

      **Count 5:**      Eighth Amendment claim against Sproul and Daun for deliberate indifference to Plaintiff's serious medical needs in allowing him to transfer from USP Marion to FTC-Oklahoma.

(Doc. 64, 65).

On November 12, 2024, Defendants filed the motion that is currently before the Court – a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or in the alternative, Defendants seek reconsideration of the Court's merit review order pursuant to Federal Rule of Civil Procedure 54(b) or 59(e). (Doc. 80). Because Plaintiff was undergoing several medical procedures at the time, the Court found good cause to extend his response deadline. (Docs. 82, 83). Plaintiff's response in opposition to the motion to dismiss was due March 6, 2025. Plaintiff, however, did not file a response. On March 6, 2025, he filed a motion seeking court recruited counsel. On July 15, 2025, Plaintiff filed a supplement to his motion for court recruited counsel. Plaintiff has not filed a response brief or sought additional time to do so.

## ALLEGATIONS

In the First Amended Complaint, Plaintiff alleges that on June 11, 2021, he was transferred from Federal Correctional Institution Oakdale (FCI Oakdale) to USP Marion. (Doc. 64). At the time of his arrival, Plaintiff asserts that he was suffering from several medical conditions, including stage three chronic kidney disease, hernia mesh failure, and the following otolaryngology issues - Eustachian tube disorder, sinusitis, middle ear infections, and frequent ear pain. Plaintiff also has an ostomy, which requires regular care. Plaintiff claims that he was denied adequate medical

treatment and care for these conditions during his time at USP Marion.

### *Colostomy Supplies*

Upon his arrival at USP Marion, Plaintiff claims that he was informed by Defendant Nurse Practitioner Richardson that USP Marion did not have colostomy pouches in stock. Plaintiff told Richardson that he needed to change his colostomy pouch every three days and that the current pouch was due to be changed because his previous facility had also been out of pouches at the time of his transfer. Plaintiff asked if his family could deliver him ten pouches to allow time for USP Marion to obtain colostomy supplies. Richardson denied his request. Plaintiff also suggested that Richardson purchase colostomy pouches from a local medical supply store, and Richardson said that he "was not able to." (Doc. 64, p. 17). By June 13, 2021, Plaintiff asserts that his pouch had deteriorated, and fecal matter was leaking. Plaintiff continued to notify health services staff and duty officers of his condition. Plaintiff had to cover his stoma with toilet paper and a washcloth to prevent the output from running everywhere. On June 23, Plaintiff saw Defendant Dr. Pass and reminded him that he was in desperate need of colostomy pouches. Plaintiff states that he did not receive a new pouch from Richardson until June 25, 2021.

### *Urological Conditions - Adenocarcinoma*

At the time of his transfer to USP Marion, Plaintiff claims that he had stage three chronic kidney disease and needed treatments and procedures that had not been performed while he was at FCI Oakdale. During the intake process at USP Marion, Plaintiff asserts that Defendant Nurse Practitioner Richardson noted that prescribed appointments and treatments had not been performed and were overdue, including a ureteral stent replacement. Plaintiff, however, did not have an appointment for a urology consultation until June 22, 2022, the following year. He claims that his next follow-up appointment was over two months later, on August 30, 2022, despite being told at

the June 22 appointment that he should return in two weeks to review lab results. Plaintiff was scheduled for a ureteral stent exchange and cystoscopy, but he was transferred to Federal Transfer Center Oklahoma City (FTC Oklahoma City) without these procedures being performed. At FTC Oklahoma City, Plaintiff alleges that the treating physician determined that he was passed due for necessary care and elevated Plaintiff to "Care Level 3" to expedite his transfer to a facility that was equipped to treat his medical conditions. Plaintiff was transferred to Federal Medical Center Fort Worth, where he was diagnosed with having developed "encrustation, hematuria, dysuria." (Doc. 64, p. 15). During a ureteral exchange on May 5, 2023, a mass was discovered in Plaintiff's urethra. The mass was diagnosed as adenocarcinoma. Plaintiff asserts that because he did not receive timely and necessary medical care at USP Marion, the adenocarcinoma mass went undiagnosed and was able to progress.

*Abdominal Conditions*

Plaintiff also claims that when he arrived at USP Marion, he was suffering from hernia mesh failure. Defendants Dr. Pass and Nurse Practitioner Richardson were aware of the hernia mesh failure but failed to schedule him for the recommended surgical intervention in which the surgeon would remove and replace the mesh, repair the hernia, and possibly relocate his ostomy and reconstruct his abdominal wall. (Doc. 64, p. 16).

*Otolaryngology*

In addition to his urological and abdominal conditions, Plaintiff alleges that he suffers from Eustachian tube disorder, sinusitis, middle ear infections, and frequent ear pain. In August 2021, after he was transferred to USP Marion, a CT scan confirmed that Plaintiff had eustachian tube disorder, opacification of mastoid process, and cysts in the maxillary sinuses. It was not until the following year, in April 2022, that Plaintiff was seen by an ENT, who recommended surgical

intervention with a three-month follow-up appointment. On August 3, 2022, the ENT performed a Eustachian tube balloon dilation on the left side only. USP Marion denied approval for the procedure to be conducted on the right side simultaneously. Plaintiff also did not have a follow-up appointment, as recommended. Because of the inadequate care, Plaintiff asserts that he experiences pain and permanent hearing loss.

*Transfer*

Plaintiff asserts that Defendants Warden Sproul and Case Management Coordinator Daun knew that FTC Oklahoma City would be unable to provide Plaintiff with necessary medical care for his serious medical conditions, but on October 4, 2022, they transferred him anyways. (Doc. 64, p. 9). Before Plaintiff's transfer, Sproul and Daun had unsuccessfully attempted to transfer Plaintiff in September, but the air marshals denied custody of Plaintiff due to his ill health.

## MOTION TO DISMISS

District courts differ on the effect of a Section 1915A merit review on a subsequent motion to dismiss. A few courts have held that because Section 1915A merit review and Rule 12(b)(6) apply the same standard – whether the plaintiff has failed to state a claim upon which relief may be granted – a Section 1915A merit review forecloses a motion to dismiss. *See Gilbert v. Hughes,* No. 24-cv-01394-GCS, 2025 WL 1918033, at *2 (S.D. Ill. 2025); *Pawelkowski v. Pittman,* No. 21-cv-00882-SMY, 2023 WL 5289237, at * (S.D. Ill. 2023); *Al-Owhali v. Fed. Bureau of Prisons,* No. 21-cv-01399-SMY (S.D. Ill. 2023); *Williams v. Luking,* No. 21-cv-00448-GCS, 2022 WL 1692430, at *3-4 (S.D. Ill. 2022); *Eisenberg v. Godinez,* No. 16-cv-534-NJR-DGW, 2017 WL 11920612, at *2 (S.D. Ill. 2017). These courts reason that as the court has already evaluated the sufficiency of the complaint under Section 1915A, what a defendant is essentially asking for in filing a Rule 12(b)(6) motion to dismiss is for the court to reconsider the merit review order. *See*

*Gilbert,* 2025 WL 1918033, at *2; *Pawelkowski,* 2023 WL 5289237, at *2; *Williams,* 2022 WL 1692430, at *4.

Other district courts disagree and have concluded that Section 1915A "does not prevent further scrutiny to determine whether the complaint fails to state a claim." *Morales v. Hanks,* No. 23-cv-00522-SM-TSM, 2024 WL 5445726, at * (D.N.H. 2024) (citing *Harris v. Ruthenberg,* 62 F. Supp. 3d 793, 801 (N.D. Ill. 2014)). *See also White v. Ogbeide,* No. 22 C 2023, 2023 WL 6388303, at *1 (N.D. Ill. 2023); *Abouhalima v. C.O. Lotz,* No. 21-cv-00029-JPH-MG, 2022 WL 22889714, at *1 n. 1 (S.D. Ind. 2022); *Plato v. Huyvaert,* No. 19-cv-04254-SEB-TAB, 2021 WL 1165180, at *3 (S.D. Ind. 2021). These courts observe that 28 U.S.C §1915(e) provides that a court may dismiss a case "at any time" if the complaint fails to state a claim, and "unlike a §1915A screening, a 12(b)(6) motion to dismiss…allows for 'adversarial development of the issues.'" *Abouhalima,* 2022 WL 22889714, at *1 n. 1 (quoting *Harris,* 62 F. Supp. 3d at 801)).

In this case, given the developing nature of *Bivens* case law, the Court benefits from an "adversarial development of the issues" and reexamination of the First Amended Complaint. Additionally, at this time, there is no statutory language or Seventh Circuit or Supreme Court case law clearly establishing that a Section 1915A merit review conducted by a court is a substitute for a later motion to dismiss filed by a defendant. Therefore, the Court finds that the Section 1915A merit review order does not preclude the Court from proceeding on the merits of Defendants' motion to dismiss.

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is to decide the adequacy of the complaint. *Gibson v. City of Chi*., 910 F.2d 1510, 1520 (7th Cir. 1990). The federal system of notice pleading requires only that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV.

P. 8(a)(2). However, the allegations must be "more than labels and conclusions." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Twombly,* 550 U.S. at 555. See also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson,* 910 F.2d at 1520. A complaint "should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sanders v. Melvin,* 25 F.4th 475, 483 (7th Cir. 2022) (internal quotations and citations omitted).

Before the Court's consideration is the question of whether *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), provides Plaintiff with a vehicle for bringing Eighth Amendment claims for deliberate indifference to his serious medical needs against federal officials. As this Court has previously recounted (*see* Doc. 32), there is no Congressional authority to award damages to "plaintiffs whose constitutional rights [have been] violated by agents of the Federal Government." *Ziglar v. Abbasi,* 582 U.S. 120 (2017). In *Bivens*, however,

the Supreme Court recognized an implied action for damages to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id.* Since the *Bivens* decision, the Supreme Court has recognized only two other instances in which an implied damages remedy is available for a constitutional deprivation against federal officials – a Fifth Amendment sex discrimination claim, and an Eighth Amendment claim for denial of medical care for a serious medical condition. *See Davis v. Passman,* 442 U.S. 228 (1979); *Carlson v. Green,* 446 U.S. 14 (1980). Recent cases have declined to extend a *Bivens* remedy to any other contexts and stated that further expansion of *Bivens* is a "disfavored judicial activity." *Abbasi,* 582 U.S. at 135 (declining to extend *Bivens* to Fifth Amendment due process/conditions of confinement/abuse and equal protection claims and to Fourth/Fifth Amendment strip search claims); *Egbert v. Boule*, 142 S. Ct. 1793 (2022) (no *Bivens* remedy for First Amendment retaliation claim or Fourth Amendment excessive force claim).

When presented with a proposed *Bivens* claim, a district court must undertake a two-step inquiry. *See Hernandez v. Mesa,* 140 S. Ct. 735, 741 (2020). First, a court asks whether the case presents a new *Bivens* context, *i.e.*, whether it is meaningfully different from the three cases in which the Supreme Court previously implied a damages action. *Abbasi,* 582 U.S. at 138-140. Second, if a claim arises in a new context, the court must consider whether any "special factors" indicate that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Id.* If even one reason gives the court pause before extending *Bivens* into a new context, the court cannot recognize a *Bivens* remedy. *Hernandez,* 140 S. Ct. at 743.

Based on the recent decisions by the Seventh Circuit Court of Appeals in *Brooks v. Richardson*, 131 F. 4th 613 (7th Cir. 2025) and *Watkins v. Mohan*, 144 F. 4th 926 (7th Cir. 2025),

the Court disagrees with Defendants' assertion that Plaintiff's claims in Counts 1, 2, 3, 4, and 5 are meaningfully different from those presented in *Carlson*. (Doc. 80, p. 7). In *Carlson,* the plaintiff brought the case on "behalf of the estate of her deceased son Joseph Jones, Jr., alleging that he suffered personal injuries from which he died because the [defendants], federal prison officials, violated his" constitutional rights. *Carlson,* 446 U.S. at 16. Specifically, the plaintiff claimed that Jones, who was a federal inmate at the federal penitentiary in Terre Haute, Indiana, suffered from chronic asthma. *See Green v. Carlson,* 581 F. 2d 669, 671 (7th Cir. 1978). After being hospitalized for eight days due to his asthmatic condition and returning to the Terre Haute penitentiary, Jones was not "given proper medication and did not receive the steroid treatments ordered by the physician" at the hospital. *Id.* About a month following his hospitalization, Jones experienced an asthma attack and was taken to the infirmary. "Although he was in serious condition for some eight hours, no doctor saw him because none was on duty and none was called in." *Id.* Eventually, a respirator, known to be inoperative, was used on Jones, and a medication that was contraindicated for someone suffering from an asthma attack was administered. Jones suffered a respiratory arrest and was taken to a nearby hospital, where he was pronounced dead on arrival. *Id.* The Supreme Court summarized the facts and claims in the case as follows:

> [R]espondent alleged that petitioners, being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of Jones' chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital. The complaint further alleges that Jones' death resulted from these acts and omissions, that petitioners were deliberately indifferent to Jones' serious medical needs, and that their indifference was in part attributable to racial prejudice.

*Carlson,* 446 U.S. at 16 n. 1.

Defendants argue that Plaintiff's case implicates the treatment of chronic long-term conditions and BOP's systemic administration of prison healthcare – both of which are not present in *Carlson.* They characterize *Carlson* as involving a "fatal and short-lived medical emergency" in which defendants were alleged to have failed or refused to "provide needed care in emergent circumstances." (Doc. 80, p. 8). "It is not the case, however, that any degree of variation will preclude a *Bivens* remedy." *Watkins,* 144 F. 4th at 935. And Defendants' distinctions are not quite accurate.

While it is true that the facts in *Carlson* culminated in a medical emergency, the claims in both *Carlson* and this case "arise from the denial of medical care of [] pre-existing, chronic condition[s] of which the defendants were aware." *Green v. Ross,* No. 20-cv-50357, 2023 WL 3455320, at *3 (N.D. Ill. 2023) (finding no new context under *Bivens* where an incarcerated plaintiff pled that the defendants denied him antiretroviral medication to treat his HIV infection, causing the plaintiff to develop AIDS). The Seventh Circuit has found this distinction, emergent versus non-emergent medical conditions, does not create a meaningful difference. *See Watkins,* 144 F. 4th at 936. Furthermore, the Seventh Circuit has observed that *Carlson* did not only involve claims regarding the mishandling of an emergency medical situation. The plaintiff in *Carlson* "alleged that the defendants mismanaged the prisoner's asthma throughout his incarceration…thus [*Carlson*] also dealt with management of a chronic, non-emergent medical condition requiring continuous, periodic treatment over many months, as well as all the administrative decision that such treatment necessarily entails." *Id.* The ruling in *Carlson,* therefore, was not limited to a "short-lived medical emergency." (Doc. 80, p. 8). As for other differences between this case and *Carlson*, such as the "duration of [Plaintiff's] poor care or the gravity of the condition: this seems more pertinent to the merits than to determining the scope of the holding in *Carlson.*" *Brooks,* 131 F.

4th at 615.

The Court rejects the argument that Plaintiff's claims present a new context because they involve questions of BOP resource allocation and systemic management of care by BOP medical providers and staff that were not at issue in *Carlson*. "All medical resources (whether at a hospital or within a prison) are constrained and must be paid for" and managed, and therefore, resource allocation and medical care management are typically somehow involved in all deliberate indifference claims. *Brooks,* 131 F. 4th at 615-16; *Watkins,* 144 F. 4th at 936 ("*Carlson* recognized, the reality that in prison, medical care is not hermetically sealed off from non-medical decision-making*)*. And while BOP policies may be implicated by Plaintiff's assertions,[1] he, "like the plaintiff in *Carlson,* is challenging the discrete acts and omissions of particular medical and correctional personnel who treated him or made decisions about his care." *Watkins,* 144 4th at 935-36. Whether Defendants were acting in accordance with a BOP policy may be revealed following discovery and further factual development, and again, is an issue more appropriately addressed on the merits.

Even Plaintiff's claim in Count 5, regarding the decision to transfer him to a facility that allegedly could not provide him adequate medical care for his various conditions and before recommended procedures were performed, falls within *Carlson.* The claim is premised on whether Defendants Sproul and Daun were deliberately indifferent to Plaintiff's serious medical needs by directing or allowing him to be transferred, effectively denying him medical care. In *Carlson,* part of the plaintiff's claim was that the defendants violated Jones' Eighth Amendment right by not transferring him against the advice of doctors. The Seventh Circuit has specified that based on

---

[1] The only time a BOP policy is specifically mentioned in the First Amended Complaint is in reference to Plaintiff's allegation that he was denied colostomy pouches. Plaintiff asserts that Defendant Richardson informed him that USP Marion did not have any colostomy pouches "in stock" and that Plaintiff's family could not send him pouches because that would violate BOP policy. (Doc. 64, p. 17).

these assertions *Carlson* "involved allegations about prison assignment and transfer in the context of medical care." *Watkins,* 144 F. 4th at 936 n. 5. Accordingly, Plaintiff's allegations that Sproul and Daun failed "to delay his transfer to another facility are no more disruptive or intrusive than what *Carlson* itself already approved." *Id.* at 936.

For these reasons, the Court finds that Plaintiff's theory that staff at USP Marion provided constitutionally deficient medical care in violation of the Eighth Amendment is the same presented in *Carlson.* And because Plaintiff's claims "are not brought under a new context, the Court need not engage with whether there are 'special factors' counseling hesitation' in allowing his claims to go forward." *Green,* 2023 WL 3455320, at *4 (quoting *Abbasi,* 582 U.S. at 136). The motion to dismiss is denied.

## DISPOSITION

For the reasons stated above, the Motion to Dismiss is **DENIED**. (Doc. 80). Defendants shall answer the First Amended Complaint in accordance with Federal Rule of Civil Procedure 12(a)(4) and Administrative Order 244.

**IT IS SO ORDERED.**

DATED:   September 2, 2025

                                                       *s/Stephen P. McGlynn*
                                                      **STEPHEN P. MCGLYNN**
                                                      **United States District Judge**